UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| TALENTSCALE, INC., | Case No. 2:26-cv-1973 |
| Plaintiff, | |
| v. | |
| SCOTT BEALE, AVIATION CAPITAL PARTNERS, LLC, AVIATION CAPITAL PARTNERS II, LLC, FAST BIRD, LLC, GH EQUIPMENT, LLC, and AERODROME PROPERTIES, LLC, | |
| Defendants. | |

## COMPLAINT

Plaintiff Talentscale, Inc. ("Plaintiff" or "Talentscale") files this action against Defendants Scott Beale ("Beale"), Aviation Capital Partners, LLC ("ACP"), Aviation Capital Partners II, LLC ("ACP II"), Fast Bird, LLC ("Fast Bird"), GH Equipment, LLC ("GH Equipment"), and Aerodrome Properties, LLC ("Aerodrome"), and alleges as follows:

## INTRODUCTION

1.     Talentscale is a judgment creditor and this action is necessary to set aside fraudulent transfers of assets to the Defendants. Talentscale holds a $1,142,467 federal judgment (the "Judgment") against non-party Aery

Aviation, LLC ("Aery"), entered on October 9, 2024, in the United States District Court for the Eastern District of Virginia. Since entry of the Judgment, Aery has paid Talentscale nothing.

2.      While refusing to pay Talentscale, Aery transferred $9,867,423 of its assets to Defendant Scott Beale and to the entities Beale owns or controls, namely ACP, ACP II, Fast Bird, GH Equipment, and Aerodrome. Aery made those transfers through 51 transactions identified chronologically in Chart 1 below and summarized by recipient in Chart 2.

3.      Beale stood on both sides of the fraudulent transfers. He is Aery's majority and controlling member. He owns or controls each entity Defendant. He participated in, directed, approved, or benefited from the transactions through which Aery transferred cash to Beale and the entity Defendants. At deposition, Beale was asked what prevented him from instructing Aery's CFO to prioritize payment of the Judgment. Beale testified, "It's not that I couldn't, I just wouldn't."

4.      Aery had the means to pay. From 2022 through 2024, Aery reported $151,105,474 in gross income and $28,316,525 in gross profit. In 2023, Aery made cash tax distributions totaling $830,810 to Beale and two other members. In May 2025, less than three weeks before Aery's counsel told a federal court that Aery "just doesn't have it" with respect to paying the Judgment, Aery and Cogent Bank increased Aery's credit limit by $3,000,000,

from \$15,000,000 to \$18,000,000. Aery's counsel did not inform the court of that increase while simultaneously claiming that Aery could not pay a Judgment that was less than half the amount of the increase. Aery's nonpayment of the Judgment was a deliberate choice, not the product of an inability to pay.

5.      The transfers are avoidable under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.105 and 726.106. Beale's conversion of distributions from Aery into Florida real property is also avoidable under Fla. Stat. § 222.30.

6.      Talentscale seeks money judgments against Beale and each entity Defendant, an order avoiding and setting aside the transfers, equitable liens and constructive trusts on the Florida residences acquired with Aery funds and on the aircraft and hangar acquired with Aery funds, an injunction restraining further dissipation, and the other relief set forth herein.

## **PARTIES**

7.      Plaintiff is a Nevada corporation with its principal place of business in Nevada. Talentscale is therefore a citizen of Nevada.

8.      Defendant Scott Beale is a natural person residing at 127 Gulfport Court, Marco Island, Florida 34145. Beale is a citizen of Florida.

9.      Defendant ACP is a Delaware limited liability company. Its sole member is Beale, a citizen of Florida. ACP is therefore a citizen of Florida.

3

10. Defendant ACP II is an Ohio limited liability company. Its members are Beale, a citizen of Florida, and Paul Rubis, a citizen of Virginia. ACP II is therefore a citizen of Florida and Virginia.

11. Defendant Fast Bird is a Delaware limited liability company. Its members are Beale, a citizen of Florida, and Rubis, a citizen of Virginia. Fast Bird is therefore a citizen of Florida and Virginia.

12. Defendant GH Equipment is a Delaware limited liability company. Its sole member is non-party Aery. Aery's members are Beale, a citizen of Florida, and Leslie Steven Walton, Joshua Walton, and Robert Dynan, each a citizen of Virginia. GH Equipment is therefore a citizen of Florida and Virginia.

13. Defendant Aerodrome is a Virginia limited liability company. Its members are Beale, a citizen of Florida, and Leslie Steven Walton, Joshua Walton, and Robert Dynan, each a citizen of Virginia. Aerodrome is therefore a citizen of Florida and Virginia.

14. Non-party Aery is a Virginia limited liability company and the debtor on the federal judgment underlying this action.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Talentscale is a citizen of Nevada. Defendants are citizens of Florida and Virginia. Complete diversity exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4

16. This Court has personal jurisdiction over Beale because he is domiciled in this District.

17. This Court has personal jurisdiction over each entity Defendant under Fla. Stat. § 48.193. Each entity Defendant received or retained Aery funds through transactions directed, controlled, approved, or benefited by Beale, a Florida resident. ACP and ACP II are subject to jurisdiction because Beale owns or controls them, participated in their lease arrangements with Aery, and caused or benefited from Aery's payments to them. Fast Bird is subject to jurisdiction because Beale owns a 50% interest, participated in the Aery-to-Fast-Bird sale-leaseback, and benefited from Aery's post-judgment payments to Fast Bird. GH Equipment is subject to jurisdiction because Aery, under Beale's control, used Aery funds to acquire aircraft titled to GH Equipment while Aery remained the operator of those aircraft. Aerodrome is subject to jurisdiction because Beale owns a 25% interest, Aery guaranteed and funded the hangar facility Aerodrome owns, and Aery paid rent to Aerodrome while Talentscale's Judgment remained unpaid. Each entity Defendant could reasonably anticipate being haled into court in Florida on claims arising from those Florida-directed insider transfers.

18. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2). Beale resides in this District. A substantial part of the events giving rise to these

5

claims occurred in this District. A substantial part of the property at issue, including the two Florida residences described below, is located in this District.

19.    Aery is not a required party under Fed. R. Civ. P. 19(a). Complete relief may be accorded among the existing parties because Talentscale seeks money judgments, equitable liens, constructive trusts, and injunctive relief against the transferees and against the individual who directed the transfers, not against Aery. The October 9, 2024 Judgment already fixes Aery's liability to Talentscale and the amount of Talentscale's claim. Disposition of this action in Aery's absence will not impair any legally protected interest of Aery and will not subject any Defendant to a substantial risk of multiple or inconsistent obligations.

20.    All conditions precedent to this action have been satisfied, excused, or waived.

<b><u>FACTS COMMON TO ALL ALLEGATIONS</u></b>

**Aery owes a debt to Talentscale that was reduced to judgment**

21.    On October 9, 2024, the United States District Court for the Eastern District of Virginia entered final judgment in favor of Talentscale and against Aery in the amount of $1,142,467 (the "Judgment"). The Judgment confirmed an arbitration award arising from Aery's unpaid invoices for staffing services Talentscale provided from January 30, 2021 through December 10, 2022. The Judgment is final and no appeal was taken.

6

22.     Talentscale's right to payment, and thus its status as a creditor under Fla. Stat. § 726.102(5), arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

23.     Aery has not paid a dollar on the Judgment. Talentscale domesticated the Judgment in the Middle District of Florida and has actively pursued collection. Talentscale has served more than 80 subpoenas and numerous writs of garnishment, taken depositions, and litigated motions in multiple venues.

24.     Aery's nonpayment of the Judgment is deliberate. On May 23, 2025, at a federal garnishment hearing, Aery's counsel represented that Aery "just doesn't have it," referring to the ability to pay the Judgment. At that time, Aery had recently obtained a $3,000,000 increase in its credit facility. Four days later, on May 27, 2025, Aery wired $200,000 to Fast Bird, a Beale-controlled insider entity. See Chart 1, Transfer 50.

**Beale used insider entities to hold assets outside Aery**

25.     Aery is a member-managed limited liability company. Beale owns a 55% controlling interest. The remaining members are Leslie Steven Walton, Aery's Chief Executive Officer, who owns 30%, Joshua Walton, who owns 10%, and Robert Dynan, who owns 5%. Beale testified that he holds the majority

interest in Aery and acknowledged directing or knowing of the insider payments at issue.

26. Beale owns or controls each entity Defendant. Beale owns 100% of ACP. He owns 50% of ACP II, with Rubis owning the remaining 50%. He owns 50% of Fast Bird, with Rubis owning the remaining 50%. He owns a 25% interest in Aerodrome, with the other three Aery members each owning 25%. Aery wholly owns GH Equipment, and Beale controls Aery.

27. Beale uses this network of insider entities to hold assets on which Aery's operations depend. The aircraft Aery operates are titled to ACP, ACP II, Fast Bird, or GH Equipment. The hangar from which Aery operates is titled to Aerodrome. Aery bears the operational costs associated with those assets, including maintenance, insurance, crewing, fuel, and engine programs. Title, appreciation, and residual value remain with the entity Defendants and their members.

28. Beale and the entity Defendants benefit by receiving assets funded by Aery while Aery bears most of the associated liabilities. The result is a substantial increase in assets and wealth held by Defendants while creditors that provided services necessary to Aery's operations, including Talentscale, remain unpaid.

8

29.     Each entity Defendant is an "insider" of Aery within the meaning of Fla. Stat. § 726.102(8). The specific basis for each Defendant's insider status is set forth below.

**Scott Beale**

30.     Beale is Aery's 55% controlling member and an insider of Aery under Fla. Stat. § 726.102(8) as a person in control of the debtor. As Aery's majority owner, Beale controlled Aery and separately owned, controlled, or held a beneficial interest in the entity Defendants that received Aery's cash. Beale participated in, directed, approved, or benefited from the transactions at issue in this Complaint.

31.     Aery transferred $2,818,611 to Beale or for his benefit through the ten transfers identified in Chart 1.

32.     Two of those transfers were direct cash distributions to Beale. Aery transferred $143,000 to Beale on January 19, 2021, and $1,650,000 on March 12, 2021.

33.     Three were Bill.com distributions to Beale in the amounts of $150,000, $199,900, and $426,023, made between February 2022 and July 2023.

34.     One was Aery's payment of $184,334 toward Beale's Virginia personal income tax liability.

9

35.    Three were later cash wires to Beale in the amounts of $25,000 on August 30, 2024, $25,000 on September 30, 2024, and $10,353 on February 28, 2025.

36.    The tenth transfer was Aery's payment of $5,000 on November 5, 2024, routed through Aerodrome's *1683 account.

37.    Beale incurred no obligation to repay Aery for any of these amounts. He was already receiving a W-2 salary and substantial distributions from Aery during the same period.

38.    Beale has previously been adjudicated liable for actual fraud. Following a jury verdict in 2014, the United States District Court for the Eastern District of Virginia entered judgment against Beale for $500,000 in compensatory damages and $100,000 in punitive damages in *Flight Test Aviation, Inc. v. Beale*, No. 1:13-cv-00145-AJT-JFA. The bankruptcy court later determined that judgment was nondischargeable in Beale's personal bankruptcy case. *In re Beale*, No. 13-16983 (Bankr. N.D. Ohio). In 2015, the same district court entered a charging order against Beale's interest in ACP, the same ACP that is a Defendant here. Beale has therefore known for years that creditors may reach interests in insider entities and distributions from those entities.

**Aviation Capital Partners, LLC**

39.     ACP is Beale's wholly owned aircraft-leasing entity. It has no employees, no operations independent of Beale, and no income other than the payments it receives from Aery. Aery operates the aircraft titled to ACP. ACP does not conduct flight operations, maintenance, crewing, or aircraft placement. Because Beale owns and controls both Aery and ACP, each transfer from Aery to ACP was, in substance, a transfer directed by Beale to an entity he wholly owned and controlled. ACP is an insider of Aery under Fla. Stat. § 726.102(8) as an affiliate controlled by the person who controls the debtor.

40.     Aery transferred $356,545 to ACP through the five wires identified in Chart 1.

41.     The July 1, 2021 dry lease for Raytheon 390 N330AC set rent at $25,000 per month. ACP did not own N330AC on the lease date and did not acquire title until 35 days later.

42.     The first ACP wire, in the amount of $11,500, was made on March 3, 2021, approximately four months before the lease.

43.     In 2022, Aery wired ACP lump-sum payments of $150,000 and $125,000. Neither amount corresponded to the $25,000 monthly rent obligation stated in the lease.

11

44.    ACP transferred N330AC out of ACP on June 3, 2023. More than six months later, on December 14, 2023, Aery wired ACP an additional $45,000 for purported lease obligations relating to an aircraft ACP no longer owned.

**Aviation Capital Partners II, LLC**

45.    ACP II is a Beale-controlled entity formed on September 28, 2023, during Talentscale's arbitration and approximately one year before entry of the Judgment.

46.    ACP II's only purported asset is a Cirrus SF-50 Vision Jet (N324JR). Its only purported business is leasing that aircraft to Aery.

47.    On November 1, 2023, 34 days after its formation, ACP II and Aery executed a dry lease requiring monthly rent of $45,000. ACP II did not acquire title to the aircraft until six days later. Beale signed for ACP II while controlling Aery on the other side of the transaction.

48.    ACP II is an insider of Aery under Fla. Stat. § 726.102(8) as an affiliate under common ownership and control through Beale.

49.    Aery transferred $875,750 to ACP II through the 16 wires identified in Chart 1.

50.    The first wire, in the amount of $200,000, was made on November 15, 2023, 14 days after execution of the lease and before any rent had accrued. The wire exceeded four months of rent under the lease.

12

51. The remaining 15 wires were monthly transfers of approximately $45,000 made between March 2024 and June 2025.

52. The October 1, 2024 wire was sent eight days before entry of the Judgment. Nine additional wires were made after entry of the Judgment, during the same period in which Aery's counsel represented to a federal court that Aery "just doesn't have it."

**Fast Bird, LLC**

53. Fast Bird's members are Beale (50%) and Rubis (50%). Beale was the Aery insider who participated in and benefited from Fast Bird's dealings with Aery. Fast Bird is an insider of Aery under Fla. Stat. § 726.102(8) as a Beale-affiliated entity.

54. On July 19, 2023, Aery transferred title to its 1990 Gulfstream G-IV (N307EW) to Fast Bird. Aery performs its principal United States Navy work using that aircraft.

55. Independent Bank financed the transaction with an $8,000,000 loan to Fast Bird secured by a first-priority lien on the aircraft.

56. Aery routed a $600,000 lease deposit through escrow to Independent Bank to fund Fast Bird's required $400,000 reserve. Aery thereby funded the collateral that supported Fast Bird's loan.

13

57.    Under an August 1, 2023 lease, Aery agreed to pay Fast Bird $132,000 per month for 60 months, or $7,920,000 in the aggregate, for use of the same aircraft while bearing all operating costs.

58.    Beale had a personal financial motive. In June 2022, he pledged his entire Fast Bird interest to Prudent Capital III, LP as collateral for a $2,229,388 demand note owed by Fast Bird and personally guaranteed that obligation. The July 2023 transaction increased Fast Bird's asset base and creditworthiness while Beale remained exposed on that guaranty.

59.    Aery wired Fast Bird $38,448 on March 31, 2025, and $200,000 on May 27, 2025. Aery made the $200,000 transfer four days after its counsel told a federal court that Aery "just doesn't have it."

**GH Equipment, LLC**

60.    GH Equipment is wholly owned by Aery. Aery is controlled by Beale. GH Equipment has no employees, conducts no flight operations, and generates no income from operating aircraft. Aery operates the aircraft titled to GH Equipment. According to Aery's own related-party memoranda prepared for its independent auditor, GH Equipment was created to acquire aircraft "from incumbent in order to avoid Aery" being named as the acquirer. GH Equipment is an insider of Aery under Fla. Stat. § 726.102(8) as an affiliate wholly owned by Aery and controlled through Beale.

61.    Between June 25, 2021, and October 19, 2021, Aery wired $4,784,495 to Insured Aircraft Title Service ("IATS"), acting as escrow agent for aircraft purchases titled to GH Equipment, through the six transfers identified for GH Equipment in Chart 1. Aery's Bank of America records confirm one of those wires. Aery's books reflect the remaining five through its Cogent operating account.

**Aerodrome Properties, LLC**

62.    Aerodrome's members are Beale, Leslie Steven Walton, Joshua Walton, and Robert Dynan, the same four individuals who own Aery, each holding a 25% interest. Aerodrome holds title to the 60,000-square-foot hangar located at 1009 Providence Boulevard, Newport News, Virginia. Aerodrome is an insider of Aery under Fla. Stat. § 726.102(8) as an affiliate under common ownership and control through Beale and the other Aery members.

63.    Aery, not Aerodrome, held the project out as its own. In a September 22, 2021 press release, Aery announced "Aery's" new global headquarters and a more than $15 million investment. At the groundbreaking ceremony, speakers described the project as the largest private investment in the airport's history and attributed it to Aery. Aery guaranteed approximately $12,600,000 in Capital Bank construction loans. Approval of the ground lease was conditioned on Aery providing that guaranty. Aery's auditor classified Aerodrome as a Variable Interest Entity consolidated with Aery.

15

64. Aery transferred $793,572 to or for Aerodrome through the 12 transfers identified for Aerodrome in Chart 1.

65. Of that amount, $296,120 was paid to Aerodrome's contractor, W.M. Jordan.

66. The transfers also included a $50,000 Capital Bank loan commitment fee.

67. The transfers also included rent and related payments to the *1683 account between August 2024 and December 2024 totaling $447,451.

68. Upon completion of the hangar in early 2023, Aery began paying Aerodrome $80,000 per month for the facility. Aery had publicly identified the facility as its headquarters and had funded it with its own cash and credit.

69. Aerodrome has no income other than rent. The rent corresponds to debt service on the Capital Bank loans plus a margin.

**Aery repeatedly promised to pay Talentscale, then transferred money to insider entities instead**

70. Talentscale, a veteran-owned business, provided Aery with a 96-person skilled workforce for 102 weeks from January 30, 2021, through December 10, 2022. Aery did not remain current on the weekly invoices. The unpaid balance was already substantial by March 2021 and reached approximately $1,215,000 by January 13, 2022.

71. On May 25, 2022, Beale emailed Talentscale as follows: "I want to emphasize that Aery Aviation is committed to Talent Scale and retirement of the outstanding invoices."

72. On December 8, 2022, Aery's Vice President of Finance emailed Talentscale as follows: "I would like to commit to chipping away at the balance starting end December, if that is workable from your end. These next couple weeks are hard pressed, and I do not see financing coming through until, as mentioned, near Christmas if all goes well with the lenders we are working with."

73. Talentscale later discovered that Aery maintained substantial credit facilities dating back to 2021 that exceeded the amount necessary to pay the invoices owed to Talentscale.

74. Throughout this period, Aery represented that payment depended on future receipts, financing events, or aircraft-related transactions. Talentscale later discovered that Aery had sufficient credit available to pay Talentscale, in whole or in part, at virtually all material times.

75. On January 4, 2023, Aery's Vice President of Finance emailed Talentscale as follows: "Happy new year. You are on our list for sure . . . I know Bob and I are aligned on working down the balance."

76. On February 1, 2023, Aery's Vice President of Finance emailed Talentscale as follows: "I checked with accounting, it's payroll week and they

17

do not believe we can free that up. I am hopeful next week or if we get some receipts in from one of our programs before week-end, that we could pay it."

77. On February 8, 2023, Aery's Chief Executive Officer sent Talentscale a letter stating in part: "This letter confirms Aery Aviation, LLC's outstanding balance and serves as a written commitment to satisfying all debts owed to Talentscale, Inc. . . . Please rest assured, you are our top priority and first-in-line vendor."

78. Aery has not made a payment to Talentscale since 2022.

79. At deposition, Walton confirmed that the February 8, 2023 letter "was a commitment to follow through on the payment of AP," referring to Aery's accounts payable to Talentscale.

80. Aery has not honored that commitment.

81. Aery's current CFO, Sean Boyd, served as Aery's designated Rule 30(b)(6) witness at his October 6, 2025 deposition. Boyd testified as follows:

Q. So what has been done to effectuate a payment being made on the debt?

A. I don't understand the question.

82. Boyd further testified:

Q. Do you need Cogent's permission or not to make a payment on the Talentscale judgment?

A. I don't know.

18

83.    At the same deposition, Boyd confirmed that Aery held approximately $529,000 in its bank account. Boyd nevertheless testified as follows:

"Q. Well, why is the judgment going to the bottom of the list in terms of priority… why hasn't it been paid at all?

A. It just hasn't reached the priority, I suppose."

84.    At his November 10, 2025 deposition, Beale was asked what prevented him from instructing Aery's CFO to prioritize payment of the Judgment. Beale testified: "It's not that I couldn't, I just wouldn't."

85.    These admissions show that Aery continued making payments to insider entities while making no payment on Talentscale's debt or the Judgment.

**Defendants knowingly received fraudulent transfers**

86.    Between January 19, 2021, and June 2, 2025, Aery transferred $9,867,423 from its operating accounts to Beale and to entities Beale owns or controls through the 51 transfers identified chronologically in Chart 1 and summarized by recipient in Chart 2. During the same period, Aery paid Talentscale nothing on the debt or the Judgment. As alleged below, the transfers were made with actual intent to hinder, delay, or defraud creditors, or were otherwise avoidable under Florida law.

**Chart 1. Chronological Transfers from Aery to the Defendants**

**(January 2021 to June 2025)**

| # | Date | Amount | Source | Recipient | Description |
|---|------|--------|--------|-----------|-------------|
| 1 | 1/19/2021 | $143,000.00 | BoA x8049 | Scott Beale | Member distribution to Beale, 12 days after the Talentscale staffing agreement was signed |
| 2 | 2/5/2021 | $12,500.00 | BoA x8049 | W.M. Jordan (for Aerodrome) | Hangar construction payment |
| 3 | 3/3/2021 | $11,500.00 | BoA x8049 | ACP | Wire to Beale-owned ACP |
| 4 | 3/12/2021 | $1,650,000.00 | Truist x9959 | Scott Beale | Member distribution, Fedwire OBI "MEMBER DISTRIBUTION," one day after $3,343,422.15 inbound from the Pakistan Air Force and four days after Talentscale invoices became overdue |
| 5 | 4/16/2021 | $184,334.00 | BoA x8049 | VA Dept. of Taxation (for Beale) | Beale personal income tax paid by Aery |
| 6 | 5/3/2021 | $39,984.29 | BoA x8049 | W.M. Jordan (for Aerodrome) | Hangar construction payment |
| 7 | 6/25/2021 | $1,000,000.00 | BoA x8049 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |

20

| # | Date | Amount | Source | Recipient | Description |
|---|------|--------|--------|-----------|-------------|
| 8 | 7/20/2021 | $80,419.34 | Bill.com | W.M. Jordan (for Aerodrome) | Hangar payment, invoice 20-114-03 |
| 9 | 7/28/2021 | $50,000.00 | BoA x8049 | Capital Bank (for Aerodrome) | Aerodrome loan commitment fee |
| 10 | 8/23/2021 | $280,135.63 | Cogent Op. 10032 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |
| 11 | 8/27/2021 | $76,648.87 | Bill.com | W.M. Jordan (for Aerodrome) | Hangar construction payment |
| 12 | 9/17/2021 | $1,098,357.01 | Cogent Op. 10032 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |
| 13 | 9/23/2021 | $906,003.32 | Cogent Op. 10032 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |
| 14 | 10/1/2021 | $1,000,000.00 | Cogent Op. 10032 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |
| 15 | 10/19/2021 | $500,000.00 | Cogent Op. 10032 | IATS escrow (for GH Equipment) | Aircraft purchase titled to GH Equipment |
| 16 | 10/26/2021 | $12,400.54 | BoA x8049 | W.M. Jordan (for Aerodrome) | Hangar construction payment |
| 17 | 1/13/2022 | $74,167.65 | Bill.com | W.M. Jordan (for Aerodrome) | Same day Talentscale's unpaid balance reached approximately $1,215,000 |

21

| # | Date | Amount | Source | Recipient | Description |
|---|------|--------|--------|-----------|-------------|
| 18 | 2/4/2022 | $150,000.00 | Bill.com (Cogent) | Scott Beale | Distribution, conf. P22062701-3062861 |
| 19 | 3/4/2022 | $199,900.00 | Bill.com (Cogent) | Scott Beale | Distribution, conf. P22030401-2865984 |
| 20 | 6/1/2022 | $25,045.00 | Cogent x0213 | ACP | Wire to Beale-owned ACP |
| 21 | 6/15/2022 | $150,000.00 | Cogent x0213 | ACP | Wire to ACP, conf. P22061501-0252407 |
| 22 | 11/14/2022 | $125,000.00 | Cogent x0213 | ACP | Wire to Beale-owned ACP |
| 23 | 7/20/2023 | $426,023.90 | Bill.com (Cogent) | Scott Beale | Distribution, conf. P23072101-0566669, memo "Multiple," 71 days before Beale closed on 8334 Rimini Way, Naples, Florida |
| 24 | 11/15/2023 | $200,000.00 | Cogent x0213 | ACP II | Pre-judgment wire 14 days after lease execution, before any rent had accrued |
| 25 | 12/14/2023 | $45,000.00 | BoA x8049 | ACP | Wire six months after ACP transferred Raytheon 390 N330AC out of ACP on 6/3/2023 |
| 26 | 3/29/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire |
| 27 | 5/31/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire |
| 28 | 7/1/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire |
| 29 | 8/1/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire |
| 30 | 8/30/2024 | $25,000.00 | Cogent x0213 | Scott Beale | Wire to Beale individually |

22

| # | Date | Amount | Source | Recipient | Description |
|---|------|--------|--------|-----------|-------------|
| 31 | 8/30/2024 | $80,742.22 | Cogent x0213 | Aerodrome (*1683) | August rent |
| 32 | 9/3/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire |
| 33 | 9/30/2024 | $25,000.00 | Cogent x0213 | Scott Beale | Wire to Beale individually |
| 34 | 9/30/2024 | $82,866.30 | Cogent x0213 | Aerodrome (*1683) | September rent |
| 35 | 10/1/2024 | $45,000.00 | Cogent x0213 | ACP II | Monthly wire eight days before entry of the Judgment |
| 36 | 10/31/2024 | $78,400.00 | Cogent x0213 | Aerodrome (*1683) | October rent ("PHF HQ") |
| 37 | 11/4/2024 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 38 | 11/5/2024 | $5,000.00 | Cogent x0213 | Davis Law (for Beale) | Beale's personal defense-counsel fee, routed through Aerodrome's *1683 account |
| 39 | 11/27/2024 | $77,442.99 | Cogent x0213 | Aerodrome (*1683) | December rent |
| 40 | 12/2/2024 | $128,000.00 | Cogent x0213 | Aerodrome (*1683) | Transfer to the *1683 account ("temp transfer") |
| 41 | 12/3/2024 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 42 | 12/30/2024 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 43 | 2/5/2025 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 44 | 2/12/2025 | $45,750.00 | Cogent x0213 | ACP II | Post-judgment wire |
| 45 | 2/28/2025 | $10,353.71 | Cogent x0213 | Scott Beale | Wire to Beale individually |

23

| # | Date | Amount | Source | Recipient | Description |
|---|------|--------|--------|-----------|-------------|
| 46 | 3/4/2025 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 47 | 3/31/2025 | $38,448.53 | Cogent x0213 | Fast Bird, LLC | Partial lease payment under the August 2023 N307EW lease |
| 48 | 4/1/2025 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 49 | 5/6/2025 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| 50 | 5/27/2025 | $200,000.00 | Cogent x0213 | Fast Bird, LLC | Wire four days after Aery's counsel told the federal court at the May 23, 2025 garnishment hearing that Aery "just doesn't have it" |
| 51 | 6/2/2025 | $45,000.00 | Cogent x0213 | ACP II | Post-judgment monthly wire |
| | **TOTAL** | **$9,867,423.30** | | | **51 transfers** |

## Chart 2. Fraudulent Transfers Tallied by Recipient

| # | Recipient Category | Subtotal | Transfers | Notes |
|---|--------------------|----------|-----------|-------|
| I | GH Equipment, LLC (aircraft titled to GH Equipment) | $4,784,495.96 | 6 | Six IATS escrow wires, 6/25/2021 through 10/19/2021 |
| II | Scott Beale (distributions and personal-benefit payments) | $2,818,611.61 | 10 | Cash distributions, Bill.com distributions, Virginia income tax, and Beale's defense-counsel fee |
| III | Aviation Capital Partners II, LLC (50% Beale) | $875,750.00 | 16 | $200,000 pre-judgment wire plus 15 monthly wires, |

| # | Recipient Category | Subtotal | Transfers | Notes |
|---|---|---|---|---|
| | | | | 11/15/2023 through 6/2/2025 |
| IV | Aerodrome Properties, LLC (Beale and three Aery members, 25% each) | $793,572.20 | 12 | $296,120.69 in W.M. Jordan construction payments, a $50,000 commitment fee, and the Aug. through Dec. 2024 rent stream to the *1683 account |
| V | Aviation Capital Partners, LLC (100% Beale) | $356,545.00 | 5 | Wires 3/3/2021 through 12/14/2023 |
| VI | Fast Bird, LLC (50% Beale) | $238,448.53 | 2 | N307EW lease payments 3/31/2025 and 5/27/2025 |
| | TOTAL | $9,867,423.30 | 51 | |

87. Not one of the insider transfers identified in Chart 1 was preceded by a demand letter, a lawsuit, or a judgment. By contrast, Talentscale was required to arbitrate, obtain a federal judgment, domesticate the Judgment in Florida, serve subpoenas, obtain an order compelling a Fact Information Sheet, conduct depositions, serve writs of garnishment, and litigate garnishment proceedings. To date, Talentscale has collected nothing. Instead of paying Talentscale, whose invoices were already past due by March 2021, Aery routinely transferred funds to insiders, beginning with the $1,650,000 distribution paid to Beale on March 12, 2021.

88. Each transfer identified in Chart 1 is a "transfer" within the meaning of Fla. Stat. § 726.102(14). As Aery's controlling member, Beale had authority over and responsibility for the insider-payment structure. Aery made the transfers at Beale's direction, with his approval, with his knowledge, or for his direct or indirect benefit.

**Aery could have paid the Judgment, but instead transferred assets to insiders**

89. Aery's federal tax returns for 2022 through 2024 reflect gross receipts of $151,105,474 and gross profit of $28,316,525. During the same period, Aery paid nothing on the Judgment.

90. In 2023 alone, Aery distributed at least $830,810 in cash to its members. Aery distributed $480,995 to Beale, $262,361 to Leslie Steven Walton, and $87,453 to Joshua Walton. Boyd, Aery's designated Rule 30(b)(6) representative, confirmed those amounts under oath.

91. On November 26, 2024, approximately seven weeks after entry of the Judgment, Aery received a deposit of $1,142,980 into its Cogent operating account. That amount was within $513 of the Judgment principal.

92. Aery swept those funds to its credit facility rather than apply them to the Judgment.

93. Aery maintained a Capital Bank account containing $3,106,949 for most of 2025. Aery has not identified any request for authorization from

26

Capital Bank, Prudent Capital, Cogent Bank, or any secured creditor to apply any portion of those funds to the Judgment.

94. At Boyd's October 2025 deposition, Aery held approximately $529,000 in its Cogent Bank account. None of those funds were applied to the Judgment.

95. At her September 22, 2025 deposition, Cogent Bank's witness testified as follows:

> "Q. I am asking does Cogent have a requirement that Aery pay its own bills?
>
> A. I still don't really understand the question."

96. Dating back to 2021, Aery maintained a Cogent Bank credit facility that included revolving and term components. In May 2025, while resisting execution pursuant to a writ of garnishment, Aery and Cogent Bank increased the facility from $15,000,000 to $18,000,000. Aery did not disclose the increase to the court. Instead, Aery's counsel represented that Aery "just doesn't have it," despite the additional $3,000,000 in available credit.

97. GH Equipment was a co-maker on the May 2025 documents reflecting the increased credit facility, and Beale executed a guaranty. Despite the increased borrowing capacity, Aery did not pay Talentscale and continued making payments to insiders.

98.    Aery has not identified any written conflict-review protocol, independent valuation process, member vote, or written consent approving the July 2023 Fast Bird sale-leaseback, the November 2023 ACP II lease, the Aerodrome guaranty and contributions, or the GH Equipment acquisitions. Walton testified that Aery had no formal policy governing related-party transactions.

99.    Walton testified that Aery delegated payment responsibility to its Chief Financial Officer, Sean Boyd, a non-member. Boyd testified that Aery allocated no available credit to the Judgment and that payment of the Judgment had not reached payment priority.

100.    Aery's treatment of a similarly situated non-insider creditor reflects the same pattern.

101.    On August 18, 2023, Entegee, Inc., an aerospace staffing firm whose services to Aery were materially similar to Talentscale's, served Aery with a demand for $1,716,198.29 in unpaid invoices.

102.    On October 5, 2023, Aery executed a Settlement Agreement and Promissory Note acknowledging the debt. Boyd signed the agreement on Aery's behalf.

103.    Aery paid the $100,000 down payment and one $50,000 installment, then defaulted.

104. Entegee sued Aery on July 3, 2025, in the Eastern District of Virginia.

105. From November 2023 through August 2025, Aery owed Entegee approximately $75,000 per month under the settlement.

106. During the same period, Aery continued making or prioritizing payments to Fast Bird, ACP II, and Aerodrome, including the transfers reflected in Chart 1.

107. Aery prioritized insider-affiliated obligations while defaulting on a similarly situated non-insider trade creditor. Aery was not paying its debts generally as they became due.

108. Aery's gross receipts, gross profit, member distributions, available credit, post-judgment deposits, and continued insider payments show that Aery's nonpayment of the Judgment resulted from payment priority, not inability to pay. Aery chose to direct funds to Beale and the entity Defendants while paying Talentscale nothing.

**Beale converted Aery funds into Florida real property**

109. Beale used the distributions and personal-benefit payments identified in Chart 1, in part, to acquire and improve two Florida residences and to convert nonexempt cash into property he intended to qualify as exempt under Florida law.

29

110. On April 12, 2022, Beale acquired 127 Gulfport Court, Marco Island, Florida, by warranty deed recorded on April 18, 2022, for $1,250,000. Beale later constructed a custom residence on the property at a cost of approximately $950,000. The acquisition and construction were funded, in material part, with distributions and personal-benefit payments Aery transferred to or for Beale, including the $1,650,000 distribution on March 12, 2021, and the subsequent Bill.com distributions identified in Chart 1.

111. On September 29, 2023, 71 days after Aery's $426,023 Bill.com distribution to Beale, Beale acquired an undivided interest in 8334 Rimini Way, Naples, Florida. He took title as a tenant in common with Christine Renee Lannon. The total purchase price was $550,000.

112. In a sworn Personal Financial Statement dated November 3, 2022, Beale identified Gates Mills, Ohio as his homestead and listed 127 Gulfport Court, Marco Island, Florida as other real estate. Talentscale alleges that any equitable lien or constructive trust attaches, at a minimum, to funds traceable into the Marco Island and Naples properties during any period in which Beale represented that his homestead was outside Florida.

113. In the same November 3, 2022 Personal Financial Statement, Beale reported a net worth of $78,212,840 and valued his Aery interest at $55,000,000.

30

114. During the same period that Talentscale's invoices, and later the Judgment, remained unpaid, Beale received substantial income and distributions from Aery and the insider Defendants, including the transfers identified in Chart 1.

115. Aery received no ownership interest in 127 Gulfport Court, no ownership interest in Beale's share of 8334 Rimini Way, and no obligation from Beale to repay the distributions used to acquire or improve those properties.

116. A debtor generally not paying its debts as they become due is presumed insolvent. Aery failed to pay liquidated trade debts owed to Talentscale, Entegee, and others as those debts matured. Aery is therefore presumed insolvent throughout the relevant period.

**The statutory badges of fraud support avoidance of the transfers**

117. The badges of fraud identified in Fla. Stat. § 726.105(2) are present as follows.

118. Insider, § 726.105(2)(a). Every transfer identified in Chart 1 was made to an insider of Aery. The transferees were Beale, entities Beale owns or controls (ACP, ACP II, and Fast Bird), an entity wholly owned by Aery (GH Equipment), or an entity owned by the same four individuals who own Aery (Aerodrome). See Fla. Stat. § 726.102(8).

119. Retention of control, § 726.105(2)(b). Aery continued operating aircraft it had purchased, funded, transferred, or leased back even though title

or residual value was placed in GH Equipment, Fast Bird, ACP, or ACP II. Aery continued operating from the hangar it funded and guaranteed even though title was placed in Aerodrome. Beale retained possession or control of the distributions he received and of the Florida residences acquired or improved with those funds. Beale also stood on both sides of the insider arrangements through his control of Aery and his ownership or control of the entity Defendants.

120. Concealment, § 726.105(2)(c). The Bill.com distributions to Beale were recorded under the memo "Multiple" and routed through Aery's operating accounts rather than being identified as owner distributions. Fast Bird denied in its March 11, 2025 subpoena response that it had any debt owed to Aery or any financing arrangement with Aery. Aery had in fact transferred title to N307EW to Fast Bird, funded Fast Bird's required reserve under Independent Bank's $8,000,000 loan, and made payments under the resulting lease. These facts support the inference that the transactions were not fully disclosed to creditors.

121. Suit or threat of suit, § 726.105(2)(d). Many of the transfers occurred after the events giving rise to Talentscale's claim. The $1,650,000 distribution to Beale on March 12, 2021 followed Talentscale's overdue invoices by four days. The January 13, 2022 payment to W.M. Jordan occurred on the same day Talentscale's unpaid balance reached approximately $1,215,000. The

transfers made between 2023 and 2025 occurred during or after the arbitration. The October 1, 2024 ACP II transfer preceded entry of the Judgment by eight days. Nine ACP II transfers and the May 27, 2025 Fast Bird transfer occurred after entry of the Judgment.

122. Transfer of substantially all assets, § 726.105(2)(e). Talentscale does not allege that every transfer identified in Chart 1 involved substantially all of Aery's assets. Aery nevertheless used approximately $4.78 million to acquire aircraft titled to GH Equipment rather than to Aery and transferred title to a Gulfstream G-IV used in Aery's operations to Fast Bird before leasing the aircraft back. These transactions support the inference that Aery placed significant operating assets outside the debtor.

123. Absconding, § 726.105(2)(f). Talentscale does not principally rely on absconding as a badge of fraud.

124. Removal or concealment of assets, § 726.105(2)(g). Aery's related-party memorandum states that GH Equipment was created to acquire aircraft so as to "avoid Aery" being named as the acquirer. Aircraft purchased with Aery funds were therefore titled outside Aery's name. The Bill.com memo "Multiple," Fast Bird's March 11, 2025 discovery response, and the insider-transfer structure further support this badge.

125. Value of consideration, § 726.105(2)(h). Aery received no reasonably equivalent value for the cash distributions and personal-benefit

33

payments made to or for Beale. Aery has not identified an independent market process, independent valuation, conflict-review protocol, or written member approval demonstrating that the ACP, ACP II, Fast Bird, GH Equipment, or Aerodrome transactions were negotiated at arm's length. Several transfers also did not correspond to the stated lease terms.

126. Insolvency, § 726.105(2)(i). Aery was not paying its debts as they became due within the meaning of Fla. Stat. § 726.103(2). Aery defaulted on obligations owed to Talentscale, Entegee, and other non-insider creditors while continuing to make insider payments. Beale testified that Aery had been insolvent during the six to 12 months preceding his November 10, 2025 deposition.

127. Temporal proximity to debt, § 726.105(2)(j). The $1,650,000 distribution to Beale followed Talentscale's overdue invoices by four days. The $426,023 distribution to Beale preceded the Naples acquisition by 71 days. The $200,000 Fast Bird transfer followed Aery's "just doesn't have it" representation by four days. Within ten days of that representation, Aery transferred $245,000 to insiders. Eighteen days earlier, Aery had increased its Cogent facility to $18,000,000.

128. Transfer to a lienor, § 726.105(2)(k). Talentscale does not rely on this badge as a principal badge applicable to every transfer. The Fast Bird sale-

leaseback and related financing nevertheless provide additional evidence of actual intent.

**Florida law governs the transfers and the claims are timely**

129.   Florida law governs the transfers alleged in Counts I through XIX. Beale, who controlled Aery and directed the transfers, is and was a Florida resident. The Judgment is domesticated in Florida. The principal exempt-asset conversions occurred in Florida, and the post-judgment proceedings in which Aery's representatives made the relevant statements occurred in Florida.

130.   Talentscale's actual fraudulent transfer claims under Fla. Stat. § 726.105(1)(a) are timely as to transfers made within four years before the filing of this Complaint and, as to earlier transfers, within one year after Talentscale discovered or reasonably could have discovered the fraudulent nature of the transfers.

131.   Talentscale pleads its constructive fraudulent transfer claims under Fla. Stat. §§ 726.105(1)(b) and 726.106(1) only as to transfers made or obligations incurred within four years before the filing of this Complaint. Talentscale does not plead Fla. Stat. § 726.106(2) as a standalone insider-preference claim.

**Defendants concealed the transfers and delayed their discovery**

132.   During its efforts to enforce the Judgment, Talentscale pursued discovery through subpoenas, writs of garnishment, depositions, motions to

compel, and related collection proceedings. Aery and the Defendants served objections, withheld responsive documents, and failed to disclose the existence and nature of the 2021 and 2022 insider transfers. Talentscale did not discover those transfers until 2025, when third-party subpoena recipients produced records revealing the transfers. Talentscale could not reasonably have discovered the fraudulent nature of those transfers earlier through the exercise of due diligence.

133.   Defendants concealed the earlier transfers in multiple ways. Aery misrepresented its governance protocols to its auditor in February 2023. Fast Bird falsely denied in its March 11, 2025 discovery response that it had any debt or financing arrangement with Aery. The Bill.com distributions to Beale were recorded under the memo "Multiple" rather than being identified as owner distributions.

## COUNT I
## ACTUAL FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(a)
### (Against Defendant Scott Beale)

134.   Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

135.   Aery transferred $2,818,611 to or for Beale through the ten transfers identified for Beale in Chart 1 and summarized in Chart 2, Category II.

136. Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for Beale is a transfer within the meaning of Fla. Stat. § 726.102(14).

137. Beale is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as a person in control of the debtor. Beale is Aery's 55% controlling member and participated in, approved, knew of, or benefited from the transfers to or for him.

138. Aery made each transfer to or for Beale with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

139. The badges most directly applicable to the transfers to or for Beale include Beale's insider status, Aery's retention of operational use and control of assets purchased, funded, or transferred with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

140. Additional evidence of actual intent includes Beale's prior actual-fraud judgment, the 2015 charging order against his ACP interest, Aery's post-judgment transfers to insiders while Aery's counsel represented that Aery "just

37

doesn't have it," and Beale's testimony that he would not instruct Aery's CFO to prioritize payment of the Judgment.

141. Talentscale is entitled to avoid each transfer to or for Beale under Fla. Stat. § 726.108(1)(a), recover a money judgment against Beale under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers Beale received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

**COUNT II**
**ACTUAL FRAUDULENT TRANSFER**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Aviation Capital Partners, LLC)**

142. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

143. Aery transferred $356,545 to ACP through the five transfers identified for ACP in Chart 1 and summarized in Chart 2, Category V.

144. Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for ACP is a transfer within the meaning of Fla. Stat. § 726.102(14).

145. ACP is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery and owns and controls ACP.

146. Aery made each transfer to or for ACP with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

147. The badges most directly applicable to the transfers to or for ACP include ACP's insider status, Aery's retention of operational use and control of assets purchased, funded, or transferred with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

148. Beale's interest in ACP has previously been subject to a creditor's charging order. On February 20, 2015, in *Flight Test Aviation, Inc. v. Beale*, No. 1:13-cv-00145-AJT-JFA (E.D. Va.), the court made the 2014 fraud judgment against Beale a lien on his transferable interest in ACP and directed ACP to pay to the judgment creditor any distributions or proceeds otherwise payable to Beale.

149. Talentscale is entitled to avoid each transfer to or for ACP under Fla. Stat. § 726.108(1)(a), recover a money judgment against ACP under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers ACP received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

39

## COUNT III
## ACTUAL FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(a)
### (Against Defendant Aviation Capital Partners II, LLC)

150. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

151. Aery transferred $875,750 to ACP II through the sixteen transfers identified for ACP II in Chart 1 and summarized in Chart 2, Category III.

152. Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for ACP II is a transfer within the meaning of Fla. Stat. § 726.102(14).

153. ACP II is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery and owns 50% of ACP II. Beale participated in the ACP II lease arrangement while serving as Aery's controlling member, and Aery thereafter made the payments identified in Chart 1.

154. Aery made each transfer to or for ACP II with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

155. The badges most directly applicable to the transfers to or for ACP II include ACP II's insider status, Aery's retention of operational use and

40

control of assets purchased, funded, or transferred with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

156.   ACP II was formed during Talentscale's arbitration. Thirty-four days later, ACP II executed a lease with Aery. Aery then transferred $200,000 to ACP II before any rent had accrued under the lease, followed by monthly transfers before and after entry of the Judgment. Those facts, together with Beale's ownership and control of both entities, support the inference that the ACP II transfers were made with actual intent to hinder, delay, or defraud Talentscale.

157.   Talentscale is entitled to avoid each transfer to or for ACP II under Fla. Stat. § 726.108(1)(a), recover a money judgment against ACP II under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers ACP II received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

**COUNT IV**
**ACTUAL FRAUDULENT TRANSFER**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Fast Bird, LLC)**

158.   Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

41

159.    Aery transferred $238,448 in cash to Fast Bird through the two post-Judgment transfers identified for Fast Bird in Chart 1 and summarized in Chart 2, Category VI. Aery also transferred title to its 1990 Gulfstream G-IV, N307EW, to Fast Bird on July 19, 2023, while Aery's $600,000 lease deposit funded the reserve required for Independent Bank's $8,000,000 loan to Fast Bird secured by the aircraft.

160.    Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for Fast Bird is a transfer within the meaning of Fla. Stat. § 726.102(14).

161.    Fast Bird is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery, owns 50% of Fast Bird, and participated in, approved, knew of, or benefited from the sale-leaseback and subsequent payments.

162.    Aery made each transfer to or for Fast Bird with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

163.    The badges most directly applicable to the transfers to or for Fast Bird include Fast Bird's insider status, Aery's retention of operational use and control of assets purchased, funded, or transferred with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in

42

relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

164. On May 27, 2025, Aery transferred $200,000 to Fast Bird four days after Aery's counsel represented to a federal court that Aery "just doesn't have it." Fast Bird is a Beale-affiliated entity, and Beale knew of or participated in Fast Bird's dealings with Aery. On March 11, 2025, Fast Bird denied in a discovery response that it had any debt owed to Aery or any financing arrangement with Aery, despite the July 2023 transfer of N307EW, the reserve funded by Aery in connection with Independent Bank's loan, and Aery's resulting payments to Fast Bird. These facts support the inference that the Fast Bird transfers were made with actual intent to hinder, delay, or defraud Talentscale.

165. Talentscale is entitled to avoid each transfer to or for Fast Bird under Fla. Stat. § 726.108(1)(a), recover a money judgment against Fast Bird under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers Fast Bird received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

## COUNT V
## ACTUAL FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(a)
### (Against Defendant GH Equipment, LLC)

166. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

167. Aery transferred $4,784,495 for the benefit of GH Equipment through the six transfers identified for GH Equipment in Chart 1 and summarized in Chart 2, Category I. Aery paid those amounts to Insured Aircraft Title Service as escrow agent for aircraft purchases titled to GH Equipment rather than to Aery.

168. Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for GH Equipment is a transfer within the meaning of Fla. Stat. § 726.102(14).

169. GH Equipment is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate. Aery wholly owns GH Equipment. Beale controls Aery and, through that control and the governing management arrangements, controls GH Equipment.

170. Aery made each transfer to or for GH Equipment with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

171. The badges most directly applicable to the transfers to or for GH Equipment include GH Equipment's insider status, Aery's retention of operational use and control of assets purchased or funded with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

172. Aery's related-party memorandum prepared for its independent auditor states that GH Equipment was created to acquire aircraft "from incumbent in order to avoid Aery" being named as the acquirer. Aery nevertheless funded the aircraft purchases while the aircraft were titled to GH Equipment rather than to Aery. These facts further support the inference that the transfers were made with actual intent to hinder, delay, or defraud creditors.

173. Talentscale is entitled to avoid each transfer to or for GH Equipment under Fla. Stat. § 726.108(1)(a), recover a money judgment against GH Equipment under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers GH Equipment received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

## COUNT VI
## ACTUAL FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(a)
### (Against Defendant Aerodrome Properties, LLC)

174.   Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

175.   Aery transferred $793,572 to or for the benefit of Aerodrome through the 12 transfers identified for Aerodrome in Chart 1 and summarized in Chart 2, Category IV. Those transfers include payments to W.M. Jordan, a $50,000 Capital Bank loan commitment fee, and rent and related transfers to Aerodrome's account between August 2024 and December 2024 totaling $447,451. Each transfer funded or paid for the hangar facility located at 1009 Providence Boulevard, Newport News, Virginia, which Aery occupies but does not own.

176.   Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5). Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Each transfer to or for Aerodrome is a transfer within the meaning of Fla. Stat. § 726.102(14).

177.   Aerodrome is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery and owns a 25% interest in Aerodrome. The same four-member ownership group controls both Aery and Aerodrome.

46

178. Aery made each transfer to or for Aerodrome with actual intent to hinder, delay, or defraud Talentscale within the meaning of Fla. Stat. § 726.105(1)(a). Actual intent is supported by the badges of fraud alleged above.

179. The badges most directly applicable to the transfers to or for Aerodrome include Aerodrome's insider status, Aery's retention of operational use and control of assets purchased or funded with Aery funds, the lack of reasonably equivalent value Aery received, the timing of the transfers in relation to Talentscale's past-due invoices and the Judgment, and Aery's contemporaneous failure to pay non-insider creditors.

180. In its September 22, 2021 press release, Aery announced the hangar as "Aery's" new global headquarters. Aery guaranteed the construction debt. Aery's auditor classified Aerodrome as a Variable Interest Entity consolidated with Aery. Aery funded and occupied the hangar while title remained in Aerodrome.

181. Talentscale is entitled to avoid each transfer to or for Aerodrome under Fla. Stat. § 726.108(1)(a), recover a money judgment against Aerodrome under Fla. Stat. §§ 726.108(1)(b) and 726.109(2) for the value of the transfers Aerodrome received or for whose benefit they were made, and obtain all ancillary relief authorized by Fla. Stat. § 726.108.

47

## COUNT VII
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(b)
### (Against Defendant Scott Beale, In the Alternative)

182.   Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

183.   Talentscale pleads this Count only as to transfers to or for Beale made within four years before the filing of this Complaint. Those transfers include the $426,023 Bill.com distribution on July 20, 2023, the $25,000 transfer on August 30, 2024, the $25,000 transfer on September 30, 2024, the $5,000 Davis Law payment on November 5, 2024, and the $10,353 transfer on February 28, 2025, totaling $491,377.

184.   Aery received no reasonably equivalent value for the transfers to or for Beale. The cash distributions and personal-benefit payments were made in addition to Beale's W-2 compensation, were not compensation for any identified service, and were not made on account of any antecedent obligation owed to Beale.

185.   At the time of each transfer, Aery was engaged in or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, believed it would incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

48

186. At the time of the transfers, Aery had already defaulted on obligations owed to Talentscale, later defaulted on its settlement obligations to Entegee, and continued making payments to insiders while non-insider creditors remained unpaid.

187. Talentscale is entitled to avoid the constructive fraudulent transfers to or for Beale under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Beale under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT VIII
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(b)
### (Against Defendant Aviation Capital Partners,
### LLC, In the Alternative)

188. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

189. Talentscale pleads this Count only as to transfers to ACP made within four years before the filing of this Complaint. Those transfers include the $150,000 transfer on June 15, 2022, the $125,000 transfer on November 14, 2022, and the $45,000 transfer on December 14, 2023, totaling $320,000. Earlier ACP transfers are pleaded under the actual fraudulent transfer count and as evidence of the overall insider-payment scheme.

190. Aery received no reasonably equivalent value for the transfers to ACP. The amounts and timing of the transfers did not correspond to the stated

monthly rent obligation. The December 14, 2023 transfer occurred after ACP had transferred ownership of the aircraft. Beale controlled Aery and owned ACP.

191.   At the time of each transfer, Aery was engaged in or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, believed it would incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

192.   At the time of the transfers, Aery had already defaulted on obligations owed to Talentscale, later defaulted on its settlement obligations to Entegee, and continued making payments to insiders while non-insider creditors remained unpaid.

193.   Talentscale is entitled to avoid the constructive fraudulent transfers to or for ACP under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against ACP under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT IX
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(b)
### (Against Defendant Aviation Capital
### Partners II, LLC, In the Alternative)

194. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

195. Aery transferred $875,750 to ACP II through the sixteen transfers identified for ACP II in Chart 1 and summarized in Chart 2, Category III. Those transfers were made within four years before the filing of this Complaint.

196. Aery received no reasonably equivalent value for the transfers to ACP II. ACP II did not own the leased aircraft when the lease was executed. The $200,000 transfer preceded the accrual of any rent under the lease and did not correspond to the stated monthly rent obligation. The post-Judgment transfers were made while Aery's counsel represented that Aery could not pay the Judgment.

197. At the time of each transfer, Aery was engaged in or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, believed it would incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

51

198. At the time of the transfers, Aery had already defaulted on obligations owed to Talentscale, later defaulted on its settlement obligations to Entegee, and continued making payments to insiders while non-insider creditors remained unpaid.

199. Talentscale is entitled to avoid the transfers to or for ACP II under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against ACP II under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT X
### CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(b)
### (Against Defendant Fast Bird, LLC, In the Alternative)

200. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

201. Aery transferred $238,448 in cash to Fast Bird through the two post-Judgment transfers identified for Fast Bird in Chart 1 and summarized in Chart 2, Category VI. Aery also transferred title to its 1990 Gulfstream G-IV, N307EW, to Fast Bird on July 19, 2023, while Aery's $600,000 lease deposit funded the reserve required for Independent Bank's $8,000,000 loan to Fast Bird secured by the aircraft.

202. Aery received no reasonably equivalent value for the transfers to Fast Bird. Aery transferred title to an essential operating asset, funded the

reserve supporting Fast Bird's acquisition financing, and then agreed to pay Fast Bird $132,000 per month for 60 months for use of the same aircraft while continuing to bear the operating costs.

203. At the time of each transfer, Aery was engaged in or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, believed it would incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

204. At the time of the transfers, Aery had already defaulted on obligations owed to Talentscale, later defaulted on its settlement obligations to Entegee, and continued making payments to insiders while non-insider creditors remained unpaid.

205. Talentscale is entitled to avoid the transfers to or for Fast Bird under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Fast Bird under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT XI
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.105(1)(b)
### (Against Defendant Aerodrome Properties, LLC, In the Alternative)

206. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

207. Talentscale pleads this Count only as to transfers to Aerodrome made within four years before the filing of this Complaint. Those transfers include rent and related transfers to Aerodrome's account between August 2024 and December 2024 totaling $447,451. Earlier Aerodrome transfers are pleaded under the actual fraudulent transfer count and as evidence of the overall insider-payment scheme.

208. Aery received no reasonably equivalent value for the transfers to or for Aerodrome. Aery's payments, guaranty of the Capital Bank construction loans, and subsequent rent payments funded, acquired, improved, or serviced real property titled to Aerodrome. Aery holds no ownership interest in Aerodrome.

209. At the time of each transfer, Aery was engaged in or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, believed it would incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

54

210. At the time of the transfers, Aery had already defaulted on obligations owed to Talentscale, later defaulted on its settlement obligations to Entegee, and continued making payments to insiders while non-insider creditors remained unpaid.

211. Talentscale is entitled to avoid the constructive fraudulent transfers to or for Aerodrome under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Aerodrome under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

**COUNT XII**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Scott Beale, In the Alternative)**

212. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

213. Talentscale's claim against Aery arose before each transfer to or for Beale. Talentscale's right to payment arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

214. Talentscale pleads this Count only as to transfers made or obligations incurred within four years before the filing of this Complaint. Earlier transfers are pleaded under the actual fraudulent transfer counts and

55

as evidence of the overall insider-payment scheme, subject to the discovery rule applicable to Fla. Stat. § 726.105(1)(a).

215. Talentscale pleads this Count only as to transfers to or for Beale made within four years before the filing of this Complaint. Those transfers include the $426,023 Bill.com distribution on July 20, 2023, the $25,000 transfer on August 30, 2024, the $25,000 transfer on September 30, 2024, the $5,000 Davis Law payment on November 5, 2024, and the $10,353 transfer on February 28, 2025, totaling $491,377.61.

216. Beale is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as a person in control of the debtor. Beale is Aery's 55% controlling member and participated in, approved, knew of, or benefited from the transfers to or for him.

217. Aery received no reasonably equivalent value for the transfers to or for Beale. The cash distributions and personal-benefit payments were made in addition to Beale's W-2 compensation, were not compensation for any identified service, and were not made on account of any antecedent obligation owed to Beale.

218. Aery was insolvent within the meaning of Fla. Stat. § 726.103(2) at the time of each transfer to or for Beale or became insolvent as a result of each transfer. Aery was generally not paying its debts as they became due, including Talentscale's past-due invoices and the unpaid Judgment.

219. Talentscale does not plead Fla. Stat. § 726.106(2) against Beale. The direct distributions and personal-benefit payments to Beale were not made on account of antecedent debt owed by Aery to Beale.

220. Talentscale is entitled to avoid the transfers to or for Beale under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Beale under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

### COUNT XIII
### CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.106(1)
### (Against Defendant Aviation Capital Partners, LLC, In the Alternative)

221. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

222. Talentscale's claim against Aery arose before each transfer to or for ACP. Talentscale's right to payment arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

223. Talentscale pleads this Count only as to transfers made or obligations incurred within four years before the filing of this Complaint. Earlier transfers are pleaded under the actual fraudulent transfer counts and as evidence of the overall insider-payment scheme, subject to the discovery rule applicable to Fla. Stat. § 726.105(1)(a).

224. Talentscale pleads this Count only as to transfers to ACP made within four years before the filing of this Complaint. Those transfers include the $150,000 transfer on June 15, 2022, the $125,000 transfer on November 14, 2022, and the $45,000 transfer on December 14, 2023, totaling $320,000. Earlier ACP transfers are pleaded under the actual fraudulent transfer count and as evidence of the overall insider-payment scheme.

225. ACP is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery and owns and controls ACP.

226. Aery received no reasonably equivalent value for the transfers to ACP. The amounts and timing of the transfers did not correspond to the stated monthly rent obligation. The December 14, 2023 transfer occurred after ACP had transferred ownership of the aircraft. Beale controlled Aery and owned ACP.

227. Aery was insolvent within the meaning of Fla. Stat. § 726.103(2) at the time of each transfer to or for ACP or became insolvent as a result of each transfer. Aery was generally not paying its debts as they became due, including Talentscale's past-due invoices and the unpaid Judgment.

228. Talentscale pleads this Count under Fla. Stat. § 726.106(1). To the extent Aery or ACP characterizes any transfer as payment of antecedent insider rent, Talentscale pleads that characterization as evidence of insider

58

priority, insolvency, lack of reasonably equivalent value, and actual intent under Fla. Stat. § 726.105(1)(a), and not as a standalone claim under Fla. Stat. § 726.106(2), unless timely under Fla. Stat. § 726.110(3).

229. Talentscale is entitled to avoid the transfers to or for ACP under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against ACP under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT XIV
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.106
### (Against Defendant Aviation Capital
### Partners II, LLC, In the Alternative)

230. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

231. Talentscale's claim against Aery arose before each transfer to or for ACP II. Talentscale's right to payment arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

232. Talentscale pleads this Count only as to transfers made or obligations incurred within four years before the filing of this Complaint. Earlier transfers are pleaded under the actual fraudulent transfer counts and as evidence of the overall insider-payment scheme, subject to the discovery rule applicable to Fla. Stat. § 726.105(1)(a).

233. Aery transferred $875,750 to ACP II through the sixteen transfers identified for ACP II in Chart 1 and summarized in Chart 2, Category III.

234. ACP II is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery, owns 50% of ACP II, and directed both sides of the November 1, 2023 lease and the subsequent payments.

235. Aery received no reasonably equivalent value for the transfers to ACP II. ACP II did not own the leased aircraft when the lease was executed. The $200,000 transfer preceded the accrual of any rent under the lease and did not correspond to the stated monthly rent obligation. The post-Judgment transfers were made while Aery's counsel represented that Aery could not pay the Judgment.

236. Aery was insolvent within the meaning of Fla. Stat. § 726.103(2) at the time of each transfer to or for ACP II or became insolvent as a result of each transfer. Aery was generally not paying its debts as they became due, including Talentscale's past-due invoices and the unpaid Judgment.

237. Through Beale's control of both Aery and ACP II, ACP II knew or should have known of Aery's financial condition, including Aery's failure to pay Talentscale and other non-insider creditors.

238. Talentscale pleads this Count under Fla. Stat. § 726.106(1). To the extent Aery or ACP II characterizes any transfer as payment of antecedent

insider rent, Talentscale pleads that characterization as evidence of insider priority, insolvency, lack of reasonably equivalent value, and actual intent under Fla. Stat. § 726.105(1)(a), and not as a standalone claim under Fla. Stat. § 726.106(2).

239.   Talentscale is entitled to avoid the transfers to or for ACP II under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against ACP II under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT XV
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.106
### (Against Defendant Fast Bird, LLC,
### In the Alternative)

240.   Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

241.   Talentscale's claim against Aery arose before each transfer to or for Fast Bird. Talentscale's right to payment arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

242.   Talentscale pleads this Count only as to transfers made or obligations incurred within four years before the filing of this Complaint. Earlier transfers are pleaded under the actual fraudulent transfer counts and

as evidence of the overall insider-payment scheme, subject to the discovery rule applicable to Fla. Stat. § 726.105(1)(a).

243.   Aery transferred $238,448 in cash to Fast Bird through the two post-Judgment transfers identified for Fast Bird in Chart 1 and summarized in Chart 2, Category VI. Aery also transferred title to its 1990 Gulfstream G-IV, N307EW, to Fast Bird on July 19, 2023, while Aery's $600,000 lease deposit funded the reserve required for Independent Bank's $8,000,000 loan to Fast Bird secured by the aircraft.

244.   Fast Bird is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery, owns 50% of Fast Bird, and participated in, approved, knew of, or benefited from the sale-leaseback and subsequent payments.

245.   Aery received no reasonably equivalent value for the transfers to Fast Bird. Aery transferred title to an essential operating asset, funded the reserve supporting Fast Bird's acquisition financing, and then agreed to pay Fast Bird $132,000 per month for 60 months for use of the same aircraft while continuing to bear the operating costs.

246.   Aery was insolvent within the meaning of Fla. Stat. § 726.103(2) at the time of each transfer to or for Fast Bird or became insolvent as a result of each transfer. Aery was generally not paying its debts as they became due, including Talentscale's past-due invoices and the unpaid Judgment.

62

247. Talentscale pleads this Count under Fla. Stat. § 726.106(1). To the extent Aery or Fast Bird characterizes any transfer as payment of antecedent insider lease obligations, Talentscale pleads that characterization as evidence of insider priority, insolvency, lack of reasonably equivalent value, and actual intent under Fla. Stat. § 726.105(1)(a), and not as a standalone claim under Fla. Stat. § 726.106(2).

248. Talentscale is entitled to avoid the transfers to or for Fast Bird under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Fast Bird under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT XVI
## CONSTRUCTIVE FRAUDULENT TRANSFER
### Fla. Stat. § 726.106
### (Against Defendant Aerodrome Properties, LLC,
### In the Alternative)

249. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

250. Talentscale's claim against Aery arose before each transfer to or for Aerodrome. Talentscale's right to payment arose upon execution of the staffing agreement in early January 2021. Talentscale's invoices became past due beginning March 8, 2021.

251. Talentscale pleads this Count only as to transfers made or obligations incurred within four years before the filing of this Complaint.

Earlier transfers are pleaded under the actual fraudulent transfer counts and as evidence of the overall insider-payment scheme, subject to the discovery rule applicable to Fla. Stat. § 726.105(1)(a).

252. Talentscale pleads this Count only as to transfers to Aerodrome made within four years before the filing of this Complaint. Those transfers include rent and related transfers to Aerodrome's account between August 2024 and December 2024 totaling $447,451. Earlier Aerodrome transfers are pleaded under the actual fraudulent transfer count and as evidence of the overall insider-payment scheme.

253. Aerodrome is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) as an affiliate under common ownership and control. Beale controls Aery and owns a 25% interest in Aerodrome. The same four-member ownership group controls both Aery and Aerodrome.

254. Aery received no reasonably equivalent value for the transfers to or for Aerodrome. Aery's payments, guaranty of the Capital Bank construction loans, and subsequent rent payments funded, acquired, improved, or serviced real property titled to Aerodrome. Aery holds no ownership interest in Aerodrome.

255. Aery was insolvent within the meaning of Fla. Stat. § 726.103(2) at the time of each transfer to or for Aerodrome or became insolvent as a result

of each transfer. Aery was generally not paying its debts as they became due, including Talentscale's past-due invoices and the unpaid Judgment.

256. Talentscale pleads this Count under Fla. Stat. § 726.106(1). To the extent Aery or Aerodrome characterizes any transfer as payment of antecedent insider obligations, construction obligations, or accrued rent, Talentscale pleads that characterization as evidence of insider priority, insolvency, lack of reasonably equivalent value, and actual intent under Fla. Stat. § 726.105(1)(a), and not as a standalone claim under Fla. Stat. § 726.106(2).

257. Talentscale is entitled to avoid the transfers to or for Aerodrome under Fla. Stat. § 726.108(1)(a), recover money judgments and ancillary relief against Aerodrome under Fla. Stat. §§ 726.108 and 726.109, and obtain such other relief authorized by law.

## COUNT XVII
## FRAUDULENT ASSET CONVERSION
### Fla. Stat. § 222.30
### (Against Defendant Beale)

258. Talentscale realleges and incorporates paragraphs 1 through 133 as though fully set forth herein.

259. Talentscale pleads this Count in the alternative and to the extent Beale, as the person for whose benefit Aery's avoidable transfers were made, converted proceeds traceable to Aery's nonexempt cash into property intended to qualify as exempt under Florida law.

260. The transferred proceeds include cash distributions Aery made to Beale and personal-benefit payments Aery made for Beale, including the Virginia personal income tax payment identified in Chart 1.

261. Beale used those proceeds, in whole or in part, to acquire or improve 127 Gulfport Court, Marco Island, Florida, and to acquire his interest in 8334 Rimini Way, Naples, Florida.

262. The timing and circumstances of those acquisitions support the inference that Beale converted nonexempt assets into property intended to qualify as exempt under Florida law, within the meaning of Fla. Stat. § 222.30.

263. Relevant facts include Beale's control of Aery, his receipt of insider distributions and personal-benefit payments while Talentscale remained unpaid, the temporal proximity between the $426,023 distribution and the Naples acquisition, and his sworn November 3, 2022 identification of an Ohio homestead.

264. Talentscale is entitled to avoidance, an equitable lien, a constructive trust, and other relief authorized by Fla. Stat. § 222.30 and this Court's equitable powers to the extent Aery's transferred funds are traceable into 127 Gulfport Court, Marco Island, Florida, and Beale's interest in 8334 Rimini Way, Naples, Florida.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Talentscale, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants and award the following relief:

(a) Money judgments against Beale and each entity Defendant, separately and jointly and severally only to the extent permitted by law, in amounts necessary to satisfy the Judgment, together with pre-judgment interest, post-judgment interest, costs, and fees to the extent permitted by law, and up to the value of the transfers received by or for the benefit of each Defendant under Fla. Stat. §§ 726.108 and 726.109 and Fla. Stat. § 222.30.

(b) Avoidance and setting aside of the transfers identified in Chart 1 to the extent necessary to satisfy Talentscale's claim pursuant to Fla. Stat. § 726.108(1)(a).

(c) An equitable lien and constructive trust on 127 Gulfport Court, Marco Island, Florida, and on Beale's interest in 8334 Rimini Way, Naples, Florida, to the extent acquired or improved with funds transferred by Aery to or for Beale and traceable thereto.

(d) A constructive trust on aircraft titled to GH Equipment, N307EW titled to Fast Bird, the Cirrus SF-50 Vision Jet (N324JR) titled to ACP II, Raytheon 390 N330AC if recoverable to ACP, and the hangar located at 1009

Providence Boulevard, Newport News, Virginia, to the extent the transfers identified in Chart 1 are traceable into those assets.

(e) A constructive trust on funds in the accounts of each entity Defendant to the extent the transfers identified in Chart 1 are traceable into those accounts.

(f) Authority for Talentscale to execute, levy upon, and foreclose against property subject to any equitable lien or constructive trust imposed by the Court until the Judgment is satisfied.

(g) An injunction under Fla. Stat. § 726.108(1)(c) prohibiting Defendants from selling, transferring, encumbering, or otherwise disposing of assets funded in whole or in part by the transfers identified in Chart 1 pending further order of the Court.

(h) An accounting requiring each entity Defendant to identify all payments received from Aery on or after January 1, 2021, and all subsequent disbursements of those funds.

(i) Appointment of a receiver under Fla. Stat. § 726.108(1)(c)3. over assets and proceeds traceable to the transfers identified in Chart 1 to prevent further dissipation.

(j) Reasonable attorneys' fees and costs to the extent permitted by applicable law.

(k) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:    */s/ Kenneth E. Chase*
       Kenneth E. Chase
       Florida Bar No. 17661
       Chase Law & Associates, P.A.
       951 Yamato Road, Suite 280
       Boca Raton, FL 33431
       Tel: (305) 402-9800
       Fax: (305) 402-2725
       Email: kchase@chaselaw.com

       *Counsel for Plaintiff*
       *Talentscale, Inc.*

69