UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TALENTSCALE, INC.,

Plaintiff,

v.

SCOTT BEALE, AVIATION CAPITAL PARTNERS, LLC, AVIATION CAPITAL PARTNERS II, LLC, FAST BIRD, LLC, GH EQUIPMENT, LLC, and AERODROME PROPERTIES, LLC,

Defendants.

Case No. 2:26-cv-01973

**PLAINTIFF'S OPPOSITION**
**<u>TO DEFENDANTS' RULE 12(B)(2) MOTION TO DISMISS</u>**

Plaintiff Talentscale, Inc. ("Talentscale") respectfully files this Opposition to the Rule 12(b)(2) Motion to Dismiss by Defendants Aviation Capital Partners, LLC ("ACP"), Aviation Capital Partners II, LLC ("ACP II"), Fast Bird, LLC ("Fast Bird"), GH Equipment, LLC ("GH Equipment"), and Aerodrome Properties, LLC ("Aerodrome") (together, the "Entity Defendants") (ECF No. 17), and states as follows.

## INTRODUCTION

The motion should be denied. This is a fraudulent-transfer action arising from a scheme allegedly directed by Scott Beale, Aery Aviation, LLC's ("Aery") Florida-domiciled controlling member. Talentscale holds a $1,142,467 federal judgment against Aery, which has paid nothing despite reporting more than $151 million in gross income from 2022 through 2024. When asked what prevented him from directing Aery to prioritize payment, Beale testified, "It's not that I couldn't, I just wouldn't."

While Talentscale's debt and later the Judgment remained unpaid, Aery made 51 transfers totaling $9,867,423 to Beale and entities he owned or controlled. The Complaint alleges that Beale controlled Aery, owned or controlled each Entity Defendant, and directed, approved, knew of, or benefited from the transfers. It further alleges entity-specific aircraft-leasing, sale-leaseback, aircraft-acquisition, hangar-financing, and rent arrangements through which the Entity Defendants received assets or payments from Aery. Talentscale seeks recovery of those exact transfers.

The Entity Defendants submit no affidavit, declaration, or other evidence contesting any jurisdictional allegation. Their challenge is facial. The Complaint alleges a prima facie basis for specific jurisdiction under Florida's business-venture provision because each Entity Defendant allegedly engaged, through Beale, in a profit-seeking arrangement with Aery and Talentscale's

claims arise directly from the transfers produced by those arrangements. Dismissal would fragment one integrated dispute concerning the same transferor, controlling actor, transfers, and evidence. The motion should be denied. Alternatively, Talentscale requests targeted jurisdictional discovery and leave to amend.

## FACTUAL BACKGROUND

On October 9, 2024, the Eastern District of Virginia entered final judgment in Talentscale's favor and against Aery for $1,142,467.20. ECF No. 1 ¶ 21. Aery has paid nothing. *Id.* ¶ 23. Talentscale registered the Judgment in the Northern District of Florida on January 13, 2025. Talentscale, Inc. v. Aery Aviation, LLC, 807 F. Supp. 3d 1354, 1357 (N.D. Fla. 2025). In the ensuing collection proceeding, Aery forfeited its personal-jurisdiction objection and was ordered to complete a Florida Form 1.977 Fact Information Sheet. *Id.* at 1361-62.

The Complaint alleges that Beale owns 55% of Aery and controls it. ECF No. 1 ¶¶ 25-26. He wholly owns ACP, owns 50% of ACP II and Fast Bird, and owns 25% of Aerodrome. *Id.* ¶ 26. Aery wholly owns GH Equipment. *Id.* ¶ 60. The Complaint alleges that Beale used this network of insider entities to hold assets on which Aery depended and that Aery made the challenged transfers at Beale's direction, with his approval, with his knowledge, or for his direct or indirect benefit. *Id.* ¶¶ 27-28, 88.

The Complaint identifies 51 transfers totaling $9,867,423 to Beale and the Entity Defendants. *Id.* ¶ 86 & Chart 1. It alleges that the transfers arose from the entities' arrangements with Aery, including aircraft leases with ACP and ACP II, Fast Bird's sale-leaseback transaction, aircraft purchases titled to GH Equipment, and Aerodrome's hangar construction and rent structure. *Id.* ¶¶ 39-69. Thirty-five transfers were drawn on Aery accounts maintained through Cogent, which has described itself as a Florida-chartered bank headquartered and located in Florida. *Id.* ¶ 86; Chase Decl. Ex. 2. The Complaint also alleges that distributions and personal-benefit payments to Beale were used in material part to acquire or improve Florida residences. ECF No. 1 ¶¶ 109-11.

## LEGAL STANDARD

A federal court sitting in diversity may exercise personal jurisdiction only if Florida's long-arm statute authorizes jurisdiction and the exercise of jurisdiction comports with due process. Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999). Talentscale asserts specific jurisdiction, not general jurisdiction.

Section 48.193(1)(a)(1) reaches a defendant who, personally or through an agent, operates, conducts, engages in, or carries on a business or business venture in Florida, as to a claim arising from that activity. A single profit-seeking transaction may constitute a business venture, and the defendant need

not maintain a Florida office, employees, or permanent physical presence. Kapila v. RJPT, Ltd., 357 So. 3d 241, 246-48 (Fla. 2d DCA 2023). The claim need only have a direct affiliation, nexus, or substantial connection to the Florida activity. *Id.* at 249.

Talentscale bears the initial burden to allege a prima facie basis for jurisdiction. Posner, 178 F.3d at 1214. Because the Entity Defendants submitted no affidavit or other competent evidence contesting jurisdictional facts, the Court accepts Talentscale's well-pleaded jurisdictional allegations as true and resolves reasonable inferences in its favor. Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989); Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013). Due process requires relatedness, purposeful availment, and fair play and substantial justice. Louis Vuitton, 736 F.3d at 1355.

## ARGUMENT

### I. THE ENTITY DEFENDANTS' FACIAL CHALLENGE LEAVES TALENTSCALE'S JURISDICTIONAL ALLEGATIONS UNCONTROVERTED.

The Entity Defendants submitted no affidavit, declaration, or other evidence controverting Talentscale's jurisdictional allegations. Their motion therefore presents a facial challenge to the legal sufficiency of the pleading. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). At this stage, the Court accepts Talentscale's well-pleaded jurisdictional facts as true

and construes reasonable inferences in its favor. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274-75 (11th Cir. 2009); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). When a defendant supports a jurisdictional challenge with competent evidence, the burden returns to the plaintiff to produce evidence supporting a prima facie case. *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1341-42 (11th Cir. 2025). Where, as here, defendants submit no such evidence, the Court assesses the legal sufficiency of Talentscale's well-pleaded jurisdictional allegations.

The Complaint satisfies Talentscale's initial burden. Paragraph 17 invokes Fla. Stat. § 48.193 as to each Entity Defendant and alleges that each "received or retained Aery funds through transactions directed, controlled, approved, or benefited by Beale, a Florida resident." ECF No. 1 ¶ 17. The Complaint further alleges that each Entity Defendant could reasonably anticipate being haled into court in Florida on claims arising from those "Florida-directed insider transfers," and pleads the entity-specific arrangements and transfers supporting that allegation. *Id.* Talentscale then pleads the ownership, business arrangements, and challenged transfers separately for ACP, ACP II, Fast Bird, GH Equipment, and Aerodrome. *Id.* ¶¶ 25-30, 39-69, 86-88. The motion disputes the legal significance of those allegations but supplies no evidence contradicting them.

Nor does Talentscale rely on a jurisdictional theory first raised in opposition. In *Sandelman v. Sandelman*, the operative complaint's sole jurisdictional allegation expressly relied on the defendant's commission of "fraudulent and tortious actions" in Florida, and the plaintiff first asserted the business-venture provision only after the defendant moved to dismiss. The Third District held that a plaintiff who changes jurisdictional theories must amend the complaint to allege facts supporting the new theory and the required connexity. No. 3D24-2253, slip op. at 3-6 (Fla. 3d DCA Nov. 12, 2025). The decision recognizes that the operative complaint must allege facts that fit within the applicable long-arm provision and establish the required connexity. *Id.* at 3-6.

This case is different. The Complaint invokes section 48.193 as to each Entity Defendant, expressly alleges "Florida-directed" transactions through Beale, and pleads the leasing, sale-leaseback, aircraft-holding, financing, and real-estate arrangements in detail. ECF No. 1 ¶¶ 17, 25-30, 39-69, 86-88. Talentscale relies on the same operative facts alleged before the Entity Defendants filed their motion. Section 48.193(1)(a)(1) supplies the applicable statutory basis for those pleaded facts. Talentscale does not introduce a new transaction, arrangement, or jurisdictional fact through this opposition.

## II. FLORIDA'S LONG-ARM STATUTE REACHES EACH ENTITY DEFENDANT UNDER SECTION 48.193(1)(A)(1).

### A. *Kapila* Provides the Governing Framework.

Section 48.193(1)(a)(1) applies to a defendant who, "personally or through an agent," operates, conducts, engages in, or carries on a business or business venture in Florida when the claim arises from that activity. A "business venture" requires less activity than operating an entire business. *Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 246-48 (Fla. 2d DCA 2023). A single profit-seeking transaction may suffice, and the defendant need not maintain a Florida office, employees, lease, or permanent physical presence. *Id.*

*Kapila* is particularly instructive because it also involved claims seeking recovery of allegedly fraudulent transfers. A Texas investment entity argued that Florida lacked jurisdiction because it was merely a passive recipient of distributions. The Second District rejected that characterization. The entity had deliberately engaged in profit-seeking transactions involving a Florida company and received distributions as the economic fruits of those transactions. 357 So. 3d at 247-50. The court held that the investment constituted a business venture and that the fraudulent-transfer claims arose from that venture because the challenged distributions had a direct nexus to it. *Id.* at 249-50. And the court expressly rejected the argument that decisions holding a fraudulent transfer is not itself a "tortious act" under §

48.193(1)(a)(2) defeated jurisdiction under the separate business-venture provision. *Id.* at 249 n.2.

The same principle applies here. Talentscale does not seek jurisdiction merely because Beale owns interests in the Entity Defendants. Talentscale alleges that each Entity Defendant participated in a consummated, profit-seeking arrangement with Aery; that Beale, a Florida resident who owned or controlled each recipient, participated in, executed, controlled, approved, or benefited from those arrangements; and that Talentscale's claims seek recovery of the transfers arising from those very arrangements. ECF No. 1 ¶¶ 17, 26-28, 39-69, 86-88. The relevant venture is not Aery's ordinary Virginia flight operations. It is each Entity Defendant's profit-seeking arrangement with Aery through which it acquired aircraft, a hangar interest, lease revenue, financing support, or other transferred value. The jurisdictional issue is whether each Entity Defendant's alleged arrangement with Aery, implemented through Beale as its alleged operative participant, constituted a profit-seeking venture connected to Florida. At this facial stage, the Court accepts the Complaint's allegation that the challenged transfers were Florida-directed and evaluates that allegation together with the entity-specific transaction facts.

### B. Talentscale Alleges a Business Venture as to Each Entity Defendant.

**ACP.** Beale wholly owns ACP. ECF No. 1 ¶ 26. ACP has "no employees, no operations independent of Beale, and no income other than the payments it receives from Aery." *Id.* ¶ 39. Aery operates the aircraft titled to ACP, and Aery transferred $356,545 to ACP through five wires arising from that relationship. *Id.* ¶¶ 39-44. The Complaint alleges that Beale participated in ACP's lease arrangements with Aery and caused or benefited from Aery's payments to ACP. *Id.* ¶ 17. At this stage, those allegations permit the inference that ACP's profit-seeking arrangement with Aery was conducted through Beale, ACP's sole member and alleged operative principal.

**ACP II.** Beale owns 50% of ACP II, which was formed during Talentscale's arbitration. *Id.* ¶¶ 10, 45. Its only purported asset is a Cirrus SF-50 Vision Jet, and its only purported business is leasing that aircraft to Aery. *Id.* ¶ 46. Most significantly, "Beale signed for ACP II while controlling Aery on the other side of the transaction." *Id.* ¶ 47. Aery then transferred $875,750 to ACP II through 16 wires. *Id.* ¶ 49. This is not passive ownership. Beale acted for ACP II in the very transaction that generated the transfers Talentscale challenges.

**Fast Bird.** Beale owns 50% of Fast Bird and participated in the Aery-to-Fast-Bird sale-leaseback. *Id.* ¶¶ 11, 17, 53-58. Aery transferred its Gulfstream

G-IV to Fast Bird, funded the reserve supporting Fast Bird's acquisition financing, and then agreed to pay Fast Bird $132,000 per month while continuing to bear the aircraft's operating costs. *Id.* ¶¶ 54-57. Beale personally guaranteed part of Fast Bird's financing and pledged his Fast Bird interest as collateral. *Id.* ¶ 58. Aery later transferred another $238,448 to Fast Bird after entry of the Judgment. *Id.* ¶ 59.

**GH Equipment.** GH Equipment is wholly owned by Aery, whose 55% controlling member is Beale. ECF No. 1 ¶¶ 25-26, 60. The Complaint permits the inference that Beale, as Aery's controlling member, directed or approved Aery's decision to use Aery funds to acquire aircraft titled to GH Equipment. *Id.* ¶¶ 25-26, 60-61, 88. It further alleges that Aery's own related-party memorandum stated that GH Equipment was created to acquire aircraft "from incumbent in order to avoid Aery" being identified as the acquirer. *Id.* ¶ 60. GH Equipment has no employees, conducts no flight operations, and generates no operating income from aircraft. *Id.* Aery transferred $4,784,495 to acquire aircraft titled to GH Equipment while Aery remained the operator. *Id.* ¶¶ 60-61.

**Aerodrome.** Beale and the other three Aery members own Aerodrome, 25% each. ECF No. 1 ¶¶ 13, 62. Although Beale owns 25% of Aerodrome, the Complaint alleges that he was Aery's controlling member and that Aery made the challenged transfers at his direction, with his approval, with his

knowledge, or for his direct or indirect benefit. *Id.* ¶¶ 25-26, 62, 88. The Complaint therefore permits the inference that Beale directed, approved, knew of, or benefited from Aery's challenged construction, financing, and rent payments to Aerodrome. *Id.* ¶¶ 62-69, 88. Aery guaranteed approximately $12.6 million in construction financing for Aerodrome's hangar, funded construction and financing costs, and then paid Aerodrome rent for the facility from which Aery operated. *Id.* ¶¶ 63-69. Aery's auditor classified Aerodrome as a Variable Interest Entity consolidated with Aery. *Id.* ¶ 63. Talentscale alleges $793,572 in challenged transfers to or for Aerodrome. *Id.* ¶ 64.

These are not ownership interests "in the abstract." The Complaint alleges consummated economic arrangements through which the Entity Defendants acquired aircraft, a hangar interest, lease revenue, financing support, or other value from Aery. At the facial stage, the Court must evaluate the Complaint's allegation that the transfers were "Florida-directed insider transfers" through Beale together with the transaction-specific allegations above. ECF No. 1 ¶¶ 17, 88.

**C. Talentscale's Claims Arise Directly from those Ventures.**

The connexity requirement is particularly straightforward. Section 48.193(1)(a)(1)'s phrase "arising from" is broad. It requires only a "direct affiliation," "nexus," or "substantial connection" between the claim and the business activity, not proximate causation. *Kapila*, 357 So. 3d at 249.

Here, the claims are not collateral to the Entity Defendants' business arrangements with Aery. Talentscale seeks to avoid and recover the very payments and asset transfers resulting from those arrangements: the ACP and ACP II lease payments, the Fast Bird sale-leaseback and payments, the aircraft acquisitions for GH Equipment, and the construction, financing, and rent payments for Aerodrome. ECF No. 1 ¶¶ 39-69. That is at least as direct a nexus as *Kapila*, where the plaintiff sought recovery of distributions generated by the defendant's investment. 357 So. 3d at 249-50. Talentscale has therefore pleaded a prima facie basis for specific jurisdiction under section 48.193(1)(a)(1).

## III. EXERCISING SPECIFIC JURISDICTION COMPORTS WITH DUE PROCESS.

### A. Talentscale's Claims Arise Out of or Relate to the Entity Defendants' Forum Contacts.

The first due-process requirement largely follows from the connexity analysis. The Eleventh Circuit asks whether the claims "arise out of or relate to" at least one forum contact. *Louis Vuitton*, 736 F.3d at 1355. Here, Talentscale seeks recovery of the same transfers arising from the arrangements that supply the asserted jurisdictional contacts. The Florida-connected conduct and Talentscale's claims concern the same arrangements and the same transfers.

### B. The Entity Defendants Purposefully Availed Themselves of Florida Through the Challenged Arrangements.

Purposeful availment requires contacts resulting from the defendant's own deliberate conduct rather than contacts that are random, fortuitous, attenuated, or created solely by another party. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Physical presence is unnecessary, particularly where a commercial actor deliberately creates continuing business obligations connected to the forum. *Id.* at 476; *Kapila*, 357 So. 3d at 251-52. Talentscale does not contend that Beale's Florida domicile, standing alone, establishes jurisdiction over the Entity Defendants. Rather, the Complaint alleges that Beale was the operative participant through whom the Entity Defendants entered, implemented, and benefited from the challenged arrangements with Aery. The Complaint further alleges that the challenged transfers were directed, controlled, approved, or benefited by Beale and were Florida-directed. ECF No. 1 ¶¶ 17, 26-28, 88.

Talentscale alleges deliberate conduct, not happenstance. The Complaint alleges that the Entity Defendants entered into or maintained economic arrangements with Aery through Beale, whom Talentscale identifies as Aery's controlling member and the person who participated in, directed, approved, knew of, or benefited from the challenged transactions. ECF No. 1 ¶¶ 17, 26-28, 88. ACP's operations depend on Beale and Aery; Beale signed

ACP II's lease while controlling Aery on the other side; Beale participated in and personally guaranteed obligations associated with Fast Bird's transaction; GH Equipment exists within the Aery-controlled structure; and Aerodrome is owned by the same four Aery members and received Aery-funded construction and rent payments. *Id.* ¶¶ 39-69. Those arrangements generated repeated transfers over several years. Many were drawn on Aery accounts maintained through Cogent, which Cogent has described as a Florida-chartered bank headquartered and located in Florida. ECF No. 1 ¶ 86; Chase Decl. Ex. 2.

This case therefore does not depend on contacts created by Talentscale. *Walden v. Fiore*, 571 U.S. 277 (2014), involved a Georgia defendant whose relevant conduct occurred in Georgia and whose only connection to Nevada was the plaintiffs' presence there. *Id.* at 289-91. Likewise, in *ECB USA*, the asserted Florida contacts arose substantially from the buyers' unilateral decision to hire Florida counsel and move the acquired business to Florida. 148 F.4th 1332. Here, Talentscale is a Nevada corporation. It did not choose Beale's Florida domicile, create his ownership and control of the Entity Defendants, arrange the transactions with Aery, or select Cogent as Aery's Florida bank. Accepting the pleaded facts as true, the relevant Florida connections arise from Defendants' alleged business structure, Beale's alleged operative role in the challenged arrangements, and the alleged Florida-directed transfers, not from Talentscale's unilateral activity.

### C. Exercising Jurisdiction is Fair and Permits Efficient Resolution of One Integrated Dispute.

Once purposeful minimum contacts are established, the Entity Defendants must make a "compelling case" that exercising jurisdiction would nevertheless be unreasonable. *Burger King*, 471 U.S. at 477. Relevant considerations include the burden on the defendants, Florida's interest, Talentscale's interest in effective relief, and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Kapila*, 357 So. 3d at 251.

Those considerations favor a single proceeding here. Beale, the person Talentscale alleges directed or participated in the 51 challenged transfers, resides in this District and does not contest jurisdiction. The Complaint alleges that ACP has no employees, no operations independent of Beale, and no income apart from Aery's payments. It similarly alleges that GH Equipment has no employees or flight operations and that Aerodrome has no income other than Aery's rent. ECF No. 1 ¶¶ 39, 60, 69. Florida has a legitimate interest in providing a forum to adjudicate claims under its fraudulent-transfer statutes involving an alleged scheme implemented through a Florida-domiciled controlling actor and alleged conversion of proceeds into Florida real property.

Efficiency weighs heavily in the same direction. If the Entity Defendants were dismissed, Talentscale would be required to pursue the same 51 transfers, the same alleged badges of fraud, and substantially the same witnesses and documents in separate proceedings against entities organized in Delaware, Ohio, and Virginia, while its claims against Beale proceeded here. Multiple courts would address the same transferor, the same alleged scheme, and many of the same transactions, creating duplicative discovery and motion practice and a risk of inconsistent adjudications. The Eleventh Circuit recognizes the interstate judicial system's efficient use of resources as part of the fairness inquiry. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996). On the pleaded facts, due process does not require that fragmentation.

Nor have the Entity Defendants identified any comparable practical burden. Modern transportation and communication diminish the burden associated with litigating outside a defendant's organizational home, *Robinson*, 74 F.3d at 259, and the central individual witness and alleged decisionmaker already resides here. On the pleaded facts, exercising jurisdiction accords with fair play and substantial justice.

## IV. DEFENDANTS' RELIANCE ON THE PRIOR NORTHERN DISTRICT DECISION IS MISPLACED.

The Entity Defendants misread *Talentscale, Inc. v. Aery Aviation, LLC*, 807 F. Supp. 3d 1354 (N.D. Fla. 2025). That case involved a Rule 69 post-judgment discovery dispute with Aery, not a fraudulent-transfer action against alleged transferees. Talentscale there asserted general jurisdiction over Aery based on Beale's Florida citizenship. The court held only that Beale's citizenship, standing alone, did not render Aery "at home" in Florida. *Id.* at 1359-60.

Talentscale does not assert general jurisdiction here, and it does not rely on Beale's ownership interests standing alone. It asserts specific jurisdiction over alleged transferees based on their alleged profit-seeking arrangements with Aery and the transfers arising from those arrangements. The Complaint alleges that those arrangements were implemented through Beale, Aery's Florida-domiciled controlling member, whom Talentscale identifies as participating in, directing, approving, knowing of, or benefiting from the challenged transactions. ECF No. 1 ¶¶ 17, 26-28, 39-69, 88.

The Northern District did not decide that issue. After addressing Talentscale's general-jurisdiction argument, it held that Aery forfeited its personal-jurisdiction objection through its litigation conduct and ordered Aery to complete a Florida Form 1.977 Fact Information Sheet. *Talentscale*, 807 F.

Supp. 3d at 1360-62. The decision does not hold that specific jurisdiction is unavailable over alleged transferees in a later action seeking recovery of alleged fraudulent transfers.

Alternatively, if the Court concludes that the Complaint requires further allegations or evidence concerning Beale's transaction-related decisionmaking, agency, the Entity Defendants' Florida-directed conduct, or the location of relevant acts, the Court should deny dismissal without prejudice, permit targeted jurisdictional discovery, and grant Talentscale leave to amend.

## CONCLUSION

Talentscale has pleaded a prima facie basis for specific personal jurisdiction over each Entity Defendant under section 48.193(1)(a)(1), and exercising jurisdiction accords with due process. The Entity Defendants submitted no evidence controverting Talentscale's jurisdictional allegations. The Court should deny their Rule 12(b)(2) motion. Alternatively, the Court should permit targeted jurisdictional discovery and allow Talentscale leave to amend.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By: *<u>/s/ Kenneth E. Chase</u>*

Kenneth E. Chase
Florida Bar No. 17661
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
Fax: (305) 402-2725
Email: kchase@chaselaw.com

*Counsel for Plaintiff*
*Talentscale, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Kenneth E. Chase, hereby certify that I served the foregoing via the CM/ECF system on August 13, 2026, which automatically sends notice of an electronic filing to all counsel and registered users of record.

By: *<u>/s/ Kenneth E. Chase</u>*
Kenneth E. Chase