**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| **TALENTSCALE, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SCOTT BEALE,**<br>**AVIATION CAPITAL PARTNERS, LLC,**<br>**AVIATION CAPITAL PARTNERS II, LLC,**<br>**FAST BIRD, LLC,**<br>**GH EQUIPMENT, LLC, and**<br>**AERODROME PROPERTIES, LLC,**<br><br>**Defendants.** | ) | **Case No. 2:26-CV-1973** |

**ENTITY DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING THE ADP, MESHPAY, AND BILL.COM SUBPOENAS AND INCORPORATED MEMORANDUM**

Defendants Aviation Capital Partners, LLC ("ACP"), Aviation Capital Partners II, LLC ("ACP II"), Fast Bird, LLC, GH Equipment, LLC, and Aerodrome Properties, LLC (collectively, the "Entity Defendants") move under Rule 26(c) for a protective order prohibiting Talentscale from obtaining records or information concerning them under its September 25, 2026, subpoenas to Automatic Data Processing, Inc. ("ADP"), Meshpay US, Inc. ("Meshpay"), and Bill.com, LLC ("Bill.com"), attached as Exhibit 1.[1] The Entity Defendants

[1] Talentscale also filed subpoenas to the same three recipients in the related proceeding, *Talentscale, Inc. v. Aery Aviation LLC*, No. 6:25-mc-00003-CEM-RMN (M.D. Fla.). Those subpoenas bear the same September 25, 2026 issuance date, command production on the same October 9, 2026 deadline, and contain identical

request that the Court decline to enforce any of the three subpoenas because the pervasive overbreadth cannot be cured through discrete limitations.

The Entity Defendants maintain the personal-jurisdiction objection asserted in ECF No. 17 and addressed in ECF No. 35. They seek only discovery protection, not a decision on liability, and do not consent to personal jurisdiction.[2]

## MEMORANDUM IN SUPPORT

Talentscale's fraudulent-transfer allegations do not justify unrestricted access to years of financial, personnel, and account records. This action concerns allegedly improper transfers from Aery Aviation, LLC ("Aery") to Beale and the Entity Defendants. Yet the ADP, Meshpay, and Bill.com subpoenas demand sweeping records of payroll, banking, spending, financing, and account administration, and extend those demands to additional accounts based on shared users or funding sources. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7. Their overbreadth permeates the demands and would require wholesale redrafting, rather than discrete limitations, to connect the requested production to the issues in this action.

---

document demands, including demands for the Entity Defendants' records. Talentscale is thus pursuing the same discovery simultaneously in both proceedings. The affected parties are also filing a motion for protective orders in the related proceeding.

[2] The Entity Defendants intend to file a separate motion for protective order addressing discovery as a whole pending resolution of their jurisdictional motion.

The Entity Defendants seek protection against that overreach. The Court should prohibit Talentscale from obtaining records or information concerning the Entity Defendants under the subpoenas as drafted, leaving Talentscale to formulate properly tailored requests. The possibility that some responsive records may be relevant does not supply workable limits for the demands as written.

## BACKGROUND RELEVANT TO THE SUBPOENAS

Talentscale obtained a $1,142,467 judgment against Aery on October 9, 2024, arising from unpaid staffing invoices. ECF No. 1 ¶¶ 1, 21. Aery is not a party to this separate action, in which Talentscale seeks relief against Beale and the Entity Defendants as alleged recipients or beneficiaries of fraudulent transfers. *Id.* ¶¶ 2–6, 19. The Complaint identifies 51 alleged transfers totaling $9,867,423 between January 2021 and June 2025, organized by date, amount, source, recipient, and description. *Id.* ¶ 86 & Charts 1–2.

The allegations against ACP and ACP II concern aircraft-lease payments that allegedly preceded ownership or accrued rent, exceeded stated rent, or continued after disposition of an aircraft. *Id.* ¶¶ 39–52. The allegations against Fast Bird concern an aircraft sale-leaseback, Aery's funding of a related deposit, and subsequent payments. Id. ¶¶ 53–59. As to GH Equipment, Talentscale challenges Aery's funding of aircraft purchases in which title was placed in GH Equipment. *Id.* ¶¶ 60–61. As to Aerodrome, it challenges

construction expenditures, a loan commitment fee, and rent and related payments concerning the hangar Aery occupies. *Id.* ¶¶ 62–69. The claims against Beale concern distributions and personal-benefit payments, including funds allegedly used to acquire or improve Florida residences. *Id.* ¶¶ 30–37, 258–264.

On September 25, 2026, Talentscale issued subpoenas to ADP, Meshpay, and Bill.com requiring production on October 9, 2026. Copies are attached as Exhibit 1.

All three seek records from January 1, 2021, to the present for accounts in the names of the five Entity Defendants and Aery. The ADP subpoena requests payroll registers and journals; employee earnings, direct-deposit, and pay-card records; employee master files; timecards and punch-edit histories; tax returns and filings; garnishment records; payroll funding and bank-account information; user and administrator access histories; and related agreements, invoices, and correspondence. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–6.

The Meshpay subpoena requests account-opening and ownership records; linked bank accounts and funding histories; credit applications, financing agreements, and repayment records; all card, vendor, subscription, and bill-payment transactions and supporting documents; spending policies and approval histories; audit logs and accounting-system connections; and

company correspondence and Meshpay's internal communications. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–6.

The Bill.com subpoena requests account-opening and ownership records; user and administrator access histories; linked bank accounts and funding records; complete transaction, payment, vendor, receivables, and card records; uploaded bills, invoices, and approval histories; financing records; audit logs and connected-system information; agreements, correspondence, and internal communications; credits and refunds; and tax and payroll records. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–6.

Each subpoena further extends its demands to additional accounts identified through shared authorized users, administrators, or specified funding sources, and requires responsive documents in both native format and Bates-numbered PDFs. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A, introductory directive & ¶ 7.

## STANDARD

Rule 26(c)(1) permits the Entity Defendants to seek protection in this Court. *Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005), confirms that parties may seek protection from irrelevant discovery directed to a nonparty: "[a]s parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information." *Id.* at 429. A party may seek that protection as to its

own interests, but cannot invoke oppression or undue-burden objections belonging to a nonparty that has not raised them. *Davis v. State Farm Mut. Auto. Ins. Co.*, 347 F.R.D. 370, 373 (M.D. Fla. 2024); *Auto-Owners*, 231 F.R.D. at 429.

The party seeking a protective order bears the burden of demonstrating good cause, which requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"; blanket or unsubstantiated assertions of overbreadth or undue burden do not suffice. *Auto-Owners*, 231 F.R.D. at 430. The court must also be satisfied that, on balance, the interests of the party seeking protection outweigh those of the opposing party. *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989).

Rule 26(b)(1) limits subpoena discovery to nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). On a showing of good cause, the Court may enter a protective order against overbroad, irrelevant third-party discovery while permitting a more narrowly tailored subpoena focused on relevant issues. *Auto-Owners*, 231 F.R.D. at 430.

## ARGUMENT

## I. THE SUBPOENAS ARE OVERBROAD AND SHOULD NOT BE ENFORCED

### A. The ADP Subpoena

The alleged transfers do not justify the ADP subpoena's demand for every employee's deposit instructions, pay-card enrollment, timecards, punch-edit history, and garnishment records. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–5(H)–(M), (P). The Complaint identifies the transfers Talentscale contends were fraudulent and the alleged recipients. Yet the subpoena does not limit itself to those transactions or recipients. Instead, it reaches the Entity Defendants' payroll, funding, and personnel records, including employee banking instructions and timekeeping information unrelated to the challenged transactions.

The Complaint does not identify ADP as the means by which any transfer in Chart 1 occurred. Nor does the subpoena connect payroll administration or funding to those transfers. For each Entity Defendant, ADP must produce direct-deposit registers identifying the routing and account number receiving each deposit; pay-card enrollment, cardholder identities, and load histories; employee master files containing addresses, employment dates, and pay-rate histories; timecards and punch-edit histories; and garnishment and lien payment records. Ex. 1, ADP Subpoena, Ex. A ¶¶ 1–5(I), (K)–(M), (P).

These demands concern the workforce generally, without identifying an employee, payroll payment, or withholding obligation connected to the challenged transfers.

Whatever discovery may properly bear on the challenged transactions, Rule 26 does not permit Talentscale to use the alleged transfers as a gateway to wholesale discovery of unrelated employees' private financial and personnel records without a demonstrated connection to the claims at issue. Protecting the unrelated records while leaving Talentscale free to serve a properly tailored subpoena preserves its legitimate discovery interests without authorizing the indiscriminate disclosure demanded here.

**B. The Meshpay Subpoena**

Meshpay presents a different overbreadth problem. Subparagraphs (K), (L), and (N) request complete card-transaction histories, vendor, subscription, and bill-payment records, and supporting documents for each transaction. Subparagraphs (T) and (U) demand correspondence with the companies or their users and Meshpay's internal communications concerning the companies. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(K)–(L), (N), (T)–(U). These requests encompass ordinary expenditures and communications without limiting the production to transfers from Aery, disposition of their proceeds, consideration received, or another issue raised by the fraudulent-transfer claims. The financing request likewise seeks applications, credit decisions, guarantees,

security agreements, and repayment histories for every covered account without distinguishing financing connected to the challenged transactions from unrelated financing. *Id.* ¶¶ 1–5(H).

Notwithstanding the overbreadth described above, the demands extend even further. Meshpay must disclose every issued card, vendor bank-routing and account numbers, credit applications and credit decisions, account-change audit logs, connected accounting and personnel systems, and internal communications among customer-success, compliance, finance, and credit-risk personnel. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(H), (J), (L), (P)–(Q), (U). These requests reconstruct the Entity Defendants' spending, credit, and administrative relationships without identifying how those records explain the aircraft, hangar, or other transfers alleged in the Complaint.

Subparagraph (M) does not cure that disconnect. It requests every payment to Beale, any member of his family, and affiliated entities without connecting those payments to a challenged transfer. Ex. 1, Meshpay Subpoena, Ex. A ¶¶ 1–5(M). The Complaint does not identify Meshpay as the platform through which any transfer in Chart 1 occurred. ECF No. 1, Chart 1. Naming potential recipients does not establish the relevance of every payment involving them, much less justify complete spending and financing histories and unrestricted communications concerning the companies.

The Entity Defendants' interest is in preventing disclosure of their unrelated financial and business records, not in asserting Meshpay's production burden. That interest outweighs the unsupported request for their complete account histories, while a properly tailored new subpoena would preserve Talentscale's ability to obtain relevant transaction and tracing evidence.

**C. The Bill.com Subpoena**

The Bill.com subpoena demands complete transaction and payment histories; vendor and payee records, including tax-identification and bank-account information; uploaded bills, invoices, and approval histories; receivables records; and complete card-transaction histories for every covered account. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5, subparts (E)–(F), (H)–(J). It also seeks financing records, company and user correspondence, Bill.com's internal communications concerning each company, and any tax and payroll records it maintains. *Id.* ¶¶ 1–5, subparts (K), (O)–(P), (R)–(S). These demands reach ordinary business receipts, expenses, and communications without distinguishing records connected to transfers from Aery or the disposition of their proceeds from unrelated transactions and communications.

Chart 1 specifically identifies Bill.com payments to W.M. Jordan for Aerodrome and distributions to Beale. ECF No. 1, Chart 1, transfers 8, 11, 17–19, 23. Those allegations permit requests directed to identified payments and

the records explaining them; they do not justify disclosure of the Entity Defendants' complete vendor, receivables, financing, payroll, and account-administration histories.

For example, the subpoena demands every vendor's and payee's tax-identification number, W-9, and banking information; all invoices issued and payments received through the account; every card's complete transaction history; and any payroll registers, earnings statements, and employment-tax forms maintained by Bill.com. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5(F), (I)–(J), (S). Those demands encompass unrelated suppliers, customers, employees, and operating activity. They are not limited to the identified payments to W.M. Jordan or Beale, their supporting documents, or the source or disposition of those funds. Subparagraph (G)'s separate demand for every payment to Beale, any family member, or an affiliated entity also supplies no transaction-specific limit. Ex. 1, Bill.com Subpoena, Ex. A ¶¶ 1–5(G).

The Entity Defendants seek protection for their unrelated financial and business records, not relief based on Bill.com's production burden. The Court should prohibit enforcement of the Bill.com subpoena as to records or information concerning the Entity Defendants, without prejudice to a properly tailored new subpoena that preserves Talentscale's ability to obtain relevant transaction and tracing evidence.

**D. Defects Common to All Three Subpoenas**

Paragraph 7 of each subpoena extends the full demands to every account on which Sean Boyd, Scott Beale, Patty Nelson, or any other officer, member, manager, or employee of the six companies is or was an authorized user or administrator. It also reaches every account funded from any bank account that also funded an account of Aery or Aerodrome. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶ 7. Those connections do not, without more, make an account's entire payroll, transaction, financing, or administrative history relevant. Yet each subpoena uses the connection alone to demand the same broad categories of underlying records for every additional account, without requiring any link to an alleged transfer or other issue in this action. This expansion compounds the overbreadth and supplies no workable stopping point for the production.

In *Prime Insurance*, certain discovery requests concerned an allegedly fraudulent policy amendment, but the subpoenas demanded every document concerning the policy from its inception, regardless of relevance. The court held that the presence of relevant materials did not justify blanket demands and entered a Rule 26(c) protective order prohibiting enforcement of the subpoenas as they were overbroad, unduly burdensome, and disproportionate. *Prime Insurance Co. v. Medicab Transportation, LLC,* No. 2:24-cv-421-SPC-KCD, 2024 WL 4695876, at *2-3 (M.D. Fla. Nov. 6, 2024).

The ADP, Meshpay, and Bill.com subpoenas suffer from the same defect. ADP is asked to produce years of employee banking, payroll, timekeeping, and account-administration records, while Meshpay is asked to produce complete spending and financing histories, supporting documents, and broad categories of external and internal communications. Bill.com is asked to produce complete payment, vendor, receivables, financing, tax, and payroll records, together with broad correspondence and internal communications. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7.

The overbreadth is not confined to an isolated category or an excessive date range that the Court could readily sever. It extends across the subjects, persons, accounts, transactions, and time periods covered by the demands. Each applies the same January 1, 2021, starting date to every category of requested information, including employee timekeeping, direct-deposit, garnishment, and account-access records under ADP, and transaction, financing, and correspondence records under Meshpay and Bill.com. Ex. 1, ADP, Meshpay, and Bill.com Subpoenas, Ex. A ¶¶ 1–7. Although the Complaint alleges certain transfers dating back to 2021, those allegations do not justify demanding nearly six years of otherwise unrelated employee, business, and administrative records. The temporal scope of each request should be tied to the information sought and its relevance to the claims and

defenses, rather than a blanket historical production merely because some challenged transfers occurred in 2021. Fed. R. Civ. P. 26(b)(1), (c)(1)(D).

However, shortening the period would leave the same unrestricted categories in place, and deleting a category would not resolve the demands for every additional account under paragraph 7. Curing these defects would require Talentscale to reformulate the requests around the challenged transactions and other identified issues, rather than merely shorten a date range or delete an isolated category. The Entity Defendants therefore request protection against obtaining records or information concerning them under the subpoenas as drafted, without prejudice to properly tailored new requests.

WHEREFORE, the Entity Defendants respectfully request that the Court enter a protective order under Rule 26(c) prohibiting Talentscale from enforcing the ADP, Meshpay, and Bill.com subpoenas in their entirety as to records or information concerning the Entity Defendants, without prejudice to properly tailored new requests. The pervasive overbreadth cannot be cured by discrete subject-matter or temporal limitations. They seek the relief requested here without waiving their personal-jurisdiction objection or requesting any adjudication of liability.

**LOCAL RULE 3.01(g) CERTIFICATE**

Counsel for the Entity Defendants attempted to resolve this dispute by email with Kenneth E. Chase on October 7 and 8, 2026. Mr. Chase declined to withdraw the ADP and Meshpay subpoenas but offered to discuss limitations. Counsel provided further objections and requested a production hold. As of filing, no response to that follow-up or agreement has been received. Counsel also attempted to reach Mr. Chase by telephone but has not been able to complete a conference. Because production is scheduled for October 9, 2026, the Entity Defendants are filing this motion before disclosure occurs. Counsel will continue diligently attempting to confer for three days after filing and will promptly supplement this certificate following contact or expiration of that period, as required by Local Rule 3.01(g)(3).

Respectfully submitted,

AVIATION CAPITAL PARTNERS, LLC
AVIATION CAPITAL PARTNERS II, LLC
FAST BIRD, LLC
GH EQUIPMENT, LLC
AERODROME PROPERTIES, LLC

By: /s/Rachel L.T. Rodriguez
Of Counsel

Rachel L.T. Rodriguez
FL Bar No. 110425
Vires Law Group, PLLC
515 N. Flagler Dr., Suite 350
West Palm Beach, FL 33401
Tel: (561) 370-7383
rrodriguez@vireslaw.group
*Counsel for Defendants*

By: /s/Justin R. Burch
Of Counsel

Justin R. Burch (VSB No. 92135)
Jeff Lascara (VSB No. 96418)
*PRO HAC VICE*
Davis, Burch & Abrams
555 Belaire Ave, Suite 340
Chesapeake, VA 23320
Tel: (757) 410-2293
justin.burch@davisba.com
*Counsel for GH Equipment, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October 2026, a true and accurate copy of the foregoing was electronically filed via the Court's CM/ECF system, which will send notification of such filing to the following:

Kenneth E. Chase
CHASE LAW & ASSOCIATES, PA
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: 305-402-9800
kchase@chaselaw.com
*Counsel for Plaintiff*

By: /s/ *Justin R. Burch*