UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TALENTSCALE, INC.,

Plaintiff,

v.

SCOTT BEALE, AVIATION CAPITAL PARTNERS, LLC, AVIATION CAPITAL PARTNERS II, LLC, FAST BIRD, LLC, GH EQUIPMENT, LLC, and AERODROME PROPERTIES, LLC,

Defendants.

Case 2:26-cv-01973-SPC-NPM

**FIRST AMENDED COMPLAINT**

Plaintiff Talentscale, Inc. ("Talentscale") files this First Amended Complaint against Defendants Scott Beale, Aviation Capital Partners, LLC ("ACP"), Aviation Capital Partners II, LLC ("ACP II"), Fast Bird, LLC ("Fast Bird"), Aerodrome Properties, LLC ("Aerodrome"), and GH Equipment, LLC ("GH Equipment") and alleges as follows.

**INTRODUCTION**

1. This is an action under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101-726.112, and Fla. Stat. § 222.30 to avoid and recover

transfers that nonparty Aery Aviation, LLC ("Aery") made to Beale and to five companies that Beale or Aery owns or manages.

2. Talentscale is a judgment creditor of Aery. On October 9, 2024, the United States District Court for the Eastern District of Virginia entered a final judgment for Talentscale and against Aery for $1,142,467.20 (the "Judgment"). Aery has paid nothing on the Judgment.

3. Beale owns 55% of Aery. Beale is the sole member and manager of ACP, an owner of ACP II, one of the two managing members of Fast Bird, and the sole Manager of Aerodrome. Aery is the sole member of GH Equipment.

4. Between July 23, 2020 and December 23, 2025, Aery made 119 transfers of money totaling $14,381,678.32 to Defendants or for their benefit. Aery also transferred title to a Gulfstream G-IV aircraft to Fast Bird. Talentscale lists the transfers by recipient in Table 1.

5. Talentscale counts as one transfer the five payments of Beale's state income taxes that Aery made from October 18 through November 14, 2022, because Talentscale has the total of those payments and not the amount of each. The 119 transfers are therefore 119 entries in Tables 3-9 that represent 123 payments.

**Table 1. Transfers from Aery, by recipient**

| Recipient | Transfers | Amount | Period |
|---|---|---|---|
| Beale, including 37 wires to Morgan Stanley, four of them for ACP | 48 | $3,918,295.07 | January 19, 2021 to December 23, 2025 |
| ACP | 15 | $2,158,752.44 | July 23, 2020 to December 12, 2025 |
| ACP II | 27 | $1,387,689.44 | November 15, 2023 to December 1, 2025 |
| Fast Bird | 11, plus aircraft N307EW | $1,239,805.12 | July 19, 2023 to May 27, 2025 |
| Aerodrome | 13 | $2,069,986.71 | February 5, 2021 to November 27, 2024 |
| GH Equipment | 5 | $3,607,149.54 | August 23, 2021 to October 1, 2021 |
| **Total** | **119** | **$14,381,678.32** | |

6. Aery made 49 of the 119 transfers, totaling $2,287,063.29, after the court entered the Judgment. That total is more than twice the amount of the Judgment.

7. Aery repeatedly promised Talentscale payment in full. On May 25, 2022, Beale wrote to Talentscale that Aery "is committed to Talent Scale and retirement of the outstanding invoices." On February 8, 2023, Aery's Chief Executive Officer wrote to Talentscale, "you are our top priority and first-in-line vendor."

8. Aery reported to the Internal Revenue Service that it sold three Gulfstream G-IV aircraft in 2023 for $13,040,000. Aery paid Talentscale

$82,416.52 on January 20, 2023, the day after the first sale, and has paid Talentscale nothing since.

9. After the Judgment, Aery moved to quash Talentscale's subpoenas and opposed disclosure of its bank accounts and financial records until a federal court compelled the disclosure on October 27, 2025.

10. On May 23, 2025, Aery's counsel told a federal court in Florida, "[I]t's not lack of desire to pay a debt. It's lack of ability to do so." That afternoon, Aery's Chief Financial Officer asked Cogent Bank to wire $200,000 to Fast Bird. Fifteen days earlier, Aery had wired $45,000 to one of the two law firms that appeared for it at that hearing.

11. On November 10, 2025, counsel for Talentscale asked Beale what stopped him from asking Aery's Chief Financial Officer to prioritize payment of the Judgment. Beale testified, "It's not that I couldn't, I just wouldn't."

12. After Beale gave that testimony, Aery made five more transfers to Beale, ACP, and ACP II, totaling $326,721.61, by December 23, 2025.

13. Beale lives in Collier County, Florida and operates ACP, ACP II, Fast Bird, and Aerodrome from Collier County. Cogent Bank, a bank located only in Florida, collects Aery's receipts in Florida and funds Aery's payments from Florida. Aery drew 95 of the 119 transfers on its accounts at Cogent Bank. GH Equipment borrowed from Cogent Bank and agreed with Cogent Bank in writing to the jurisdiction of the courts in this District.

14. Talentscale pleads a claim for actual fraudulent transfer under Fla. Stat. § 726.105(1)(a) against each Defendant, claims for constructive fraudulent transfer under Fla. Stat. §§ 726.105(1)(b) and 726.106(1) against each Defendant other than GH Equipment, claims under Fla. Stat. § 726.106(2) against Beale, ACP, and ACP II for the transfers that Aery made to them as insiders on or after June 12, 2025, and a claim for fraudulent asset conversion under Fla. Stat. § 222.30 against Beale.

15. Talentscale seeks avoidance of the transfers to the extent necessary to satisfy its claim, a money judgment against each Defendant under Fla. Stat. § 726.109(2), and the equitable relief requested below.

16. Talentscale files this First Amended Complaint under the Court's Order of October 9, 2026. (Doc. 40.) Talentscale pleads the facts that support personal jurisdiction over each Defendant in Section IV, the facts common to the Counts in Section V, and the facts specific to each Defendant in Section VI. Talentscale incorporates into each Count only the paragraphs that concern the Defendant and the claim in that Count.

## PARTIES

17. Talentscale is a Nevada corporation with its principal place of business in Nevada. Talentscale is a citizen of Nevada.

18. Aery is a Virginia limited liability company with its principal office at 1009 Providence Boulevard, Newport News, Virginia 23602. Aery's members

are Beale, Leslie Steven Walton, Joshua Walton, and Robert Dynan. Sean Boyd is Aery's Chief Financial Officer. Aery is the judgment debtor on the Judgment and is not a party to this action.

19. Beale is a natural person who resides at 127 Gulfport Court, Marco Island, Florida 34145, in Collier County. Beale is a citizen of Florida.

20. ACP is a Delaware limited liability company. Beale is the sole member of ACP. ACP is a citizen of Florida.

21. ACP II is an Ohio limited liability company. Beale testified that he and Paul Rubis own ACP II. Rubis is a citizen of Virginia. ACP II is a citizen of Florida and Virginia.

22. Fast Bird is a Delaware limited liability company. The members of Fast Bird are Beale and Rubis, and each holds 50 of its 100 membership units. Fast Bird is a citizen of Florida and Virginia.

23. Aerodrome is a Virginia limited liability company. The members of Aerodrome are Beale, Walton, Joshua Walton, and Dynan. Walton, Joshua Walton, and Dynan are citizens of Virginia. Aerodrome is a citizen of Florida and Virginia.

24. GH Equipment is a Delaware limited liability company. Aery is the sole member of GH Equipment. GH Equipment is a citizen of Florida and Virginia.

## SUBJECT MATTER JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Talentscale is a citizen of Nevada. Each Defendant is a citizen of Florida or of Florida and Virginia. The amount in controversy exceeds $75,000, exclusive of interest and costs.

26. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2). Beale resides in this District, and each other Defendant resides in this District because it is subject to personal jurisdiction here with respect to this action.

27. The United States District Court for the Eastern District of Virginia fixed Aery's liability to Talentscale in the Judgment. Talentscale seeks relief against the transferees and beneficiaries of Aery's transfers and seeks no relief against Aery.

28. Talentscale has satisfied every condition precedent to this action.

## PERSONAL JURISDICTION

29. This Court has general personal jurisdiction over Beale because Beale is domiciled in this District.

30. This Court has specific personal jurisdiction over each of ACP, ACP II, Fast Bird, Aerodrome, and GH Equipment under Fla. Stat. § 48.193(1)(a)(1). Under that subsection, a defendant submits to the jurisdiction of the courts of Florida when the defendant, personally or through an agent,

operates, conducts, engages in, or carries on a business or business venture in Florida, or has an office or agency in Florida, for a cause of action that arises from those acts.

31. Each of those five Defendants carried on the Florida business alleged below itself or through a manager or agent who acted for it.

32. For each of those five Defendants, Talentscale pleads below the business or business venture that the Defendant carries on in Florida, the acts that the Defendant took in Florida, the capacity in which Beale acted for the Defendant where Beale acted, and the connection between those acts and the transfers that Talentscale challenges.

33. Talentscale summarizes in Table 2 the Florida contacts of those five Defendants and pleads them in subsections C-G.

**Table 2. The Florida contacts of each company Defendant**

| Defendant | Business or venture | Acts in Florida | Paragraphs |
|---|---|---|---|
| ACP | Leases aircraft to Aery | Beale, its sole member and manager, directs ACP from his residence in Collier County, which is ACP's office and where he signs for ACP, decides whether ACP will enforce its leases, and controls the accounts that receive its money. Aery made six direct payments to ACP from Cogent Bank and sent four more wires from Cogent Bank to Beale's Morgan Stanley account that Aery recorded as payments to ACP. | 76-93 |
| ACP II | Leases a Cirrus Vision Jet to Aery | Beale negotiated the lease for ACP II from Collier County and administers it from Collier County. ACP II planned for the aircraft to spend time in Naples. ACP II received all 27 transfers under that lease, each from Cogent Bank. | 94-108 |
| Fast Bird | Bought a Gulfstream G-IV aircraft from Aery and leases it back to Aery | Beale, one of its two managing members, makes his decisions for Fast Bird under the lease from Collier County, including the decisions to accept partial payments and to declare no default. Fast Bird received all 11 transfers of money after August 4, 2023, each from Cogent Bank. | 109-123 |

| Defendant | Business or venture | Acts in Florida | Paragraphs |
|---|---|---|---|
| Aerodrome | Leases a hangar to Aery | Aerodrome holds an account at Cogent Bank and received its rent in that account. Beale, its sole Manager, manages Aerodrome from Collier County, where he proposed the terms on which Aerodrome would repay him the $1,399,414.51 that Talentscale challenges. | 124-137 |
| GH Equipment | Borrows from Cogent Bank with Aery | GH Equipment joined Aery's credit facility at Cogent Bank on July 9, 2021, pledged its aircraft to Cogent Bank under Florida law, and agreed with Cogent Bank in writing to the jurisdiction of the courts in this District. Aery then paid for the aircraft with five transfers from Cogent Bank. | 138-150 |

## A. Beale resides in Collier County, Florida and operates his companies from Collier County.

34. In his Answer to the original Complaint, Beale admitted that he resides at 127 Gulfport Court, Marco Island, Florida and that he is a citizen of Florida. (Doc. 11 ¶ 8.)

35. On March 10, 2022, Beale signed a letter to a mortgage lender. Beale wrote that he was purchasing land and building a house in Florida for completion in mid-2023, that he then lived in Ohio, and that he and his wife intended to relocate their residency to Florida when the house was complete.

36. In the same letter, Beale wrote that Florida residency "will actually improve my net earnings due to no state income tax versus my current arrangement in Ohio."

37. Beale also wrote that his responsibilities at Aery "as well as my other businesses are sales and general business development," that "[t]hese functions are done over the phone, email and video teleconferences," and that "[n]one of my business entities have bricks and mortar locations that require onsite presence."

38. By warranty deed dated March 19, 2022 and recorded April 18, 2022, Beale acquired 127 Gulfport Court, Marco Island, Florida for $1,250,000. Beale built a residence on the property.

39. On August 4, 2023, the State of Florida issued Beale a driver license at 1235 Wildwood Lakes Boulevard, Naples, Florida.

40. The Ohio Bureau of Motor Vehicles reports as cancelled the Ohio driver license that Beale renewed on August 21, 2021 at an address in Gates Mills, Ohio.

41. By warranty deed dated September 27, 2023 and recorded September 29, 2023, Beale took title to 8334 Rimini Way, Naples, Florida as a tenant in common with Christine Renee Lannon. The deed shows the Wildwood Lakes Boulevard address in Naples as Beale's post office address.

42. In an Amended and Restated Guaranty effective May 5, 2025, Beale gave Cogent Bank his address as 127 Gulfport Court, Marco Island, Florida.

43. In its federal income tax return for 2024, Aery reported Beale's address to the Internal Revenue Service as 127 Gulfport Court, Marco Island, Florida. Aery reported the same address for Beale in its 2024 tax filings in California, Michigan, North Carolina, Ohio, and Virginia.

44. Beale resided in Collier County, Florida on June 12, 2026, when Talentscale filed this action.

45. Since no later than August 4, 2023, Beale has conducted ACP's leasing business and managed Aerodrome's affairs from Collier County, Florida. In October and November 2023, Beale negotiated the ACP II Lease for ACP II from Collier County, and he has administered that lease from Collier County since then.

46. Beale has also taken part from Collier County in Fast Bird's decisions to accept late and partial payments from Aery and to declare no default and, as Aerodrome's Manager, proposed the terms for repayment of the $1,399,414.51 alleged below. Beale does that work by telephone, email, and video conference.

47. Beale conducts the business of those companies from his residence in Collier County. Counsel for Talentscale asked Aery's CFO Sean Boyd on

October 6, 2025 what hours Beale is in Aery's office in Newport News, Virginia, and Boyd testified, "I can't answer that." Counsel asked whether Beale works from home, and Boyd testified, "Periodically."

48. Beale acted as the manager and agent of the company in each of those acts. Each of those acts that Beale took from Collier County was an act of that company in Florida.

**B. Cogent Bank collects Aery's receipts in Florida and funded 95 of the 119 transfers from Florida.**

49. Cogent Bank is a bank chartered by the State of Florida with its main office at 420 South Orange Avenue, Orlando, Florida. Cogent Bank told the United States District Court for the Eastern District of Virginia that it is "established, headquartered, and located only in Florida."

50. Cogent Bank lists 12 locations on its website. All 12 are in Florida, and two of them, Fort Myers and Naples, are in the Fort Myers Division of this District.

51. On May 23, 2025, the United States District Court for the Northern District of Florida asked about a proceeding in the Middle District of Florida, "Is that where Cogent is located?" Cogent Bank's counsel answered, "Yes, Your Honor."

52. On June 23, 2021, Aery and three affiliates entered into a Business Loan Agreement with Cogent Bank for a revolving line of credit of $9,000,000. Beale signed the agreement as Guarantor.

53. In Section 10.06 of the Business Loan Agreement, each Loan Party agreed that the agreement “is made and delivered in the State of Florida and shall be governed by and construed in accordance with the laws thereof.”

54. In the same section, each Loan Party agreed that it “irrevocably submits and consents to the exclusive personal jurisdiction and venue of any state or federal court in Florida located in the same judicial district as the office of Bank.” The office of Cogent Bank specified in the agreement is in Orange City, Florida, in this District.

55. In paragraph 25 of his guaranty effective June 23, 2021, Beale agreed that the guaranty “has been delivered in the State of Florida” and that “Guarantor, whether or not a Florida resident, hereby waives any plea or claim of lack of personal jurisdiction” in Florida.

56. Aery keeps its operating account ending in 0213, its payroll account ending in 0296, and its air medical account ending in 6824 at Cogent Bank.

57. Cogent Bank holds an account ending in 0189 under the name “COGENT BANK FBO AERY AVIATION LLC” (the “Blocked Account”).

Cogent Bank stated on November 24, 2025, in a response to a subpoena, that the account "is titled in Cogent's name."

58. Abbey Henderson is a Senior Vice President of Cogent Bank and its Managing Director of Specialty Lending. Gina Medlock is a Senior Vice President of Cogent Bank who reports to Henderson. Each gives her office address in her emails as 400 Colonial Center Parkway, Lake Mary, Florida, in this District.

59. Henderson testified as the designee of Cogent Bank on September 22, 2025. Henderson testified that she oversees Cogent Bank's relationship with Aery.

60. Henderson testified that "all proceeds, all receivables, were directed to Cogent Bank's blocked account from consummation of our loan agreement in 2021."

61. In Section 2.01(f) of an Amended and Restated Business Loan Agreement dated May 5, 2025, Aery agreed that it "will cause all collections with respect to its Accounts and any other rights to payment to be sent" directly to a blocked account at Cogent Bank.

62. Henderson testified that "every day we apply what is collected to the balance that is outstanding on the loan."

63. Henderson testified, "The operating account is a zero-balance account. So it would look to the availability on the line."

64. Cogent Bank's statements for the account ending in 0213 show entries titled "LOAN ADVANCE" that return the balance of the account to zero after Aery's wires post. Cogent Bank funds Aery's wires from that account with advances on Aery's line of credit.

65. On February 2, 2024, Medlock wrote to Boyd that Cogent Bank had shut off the automatic sweep and that "we will move the necessary funds daily to cover the debits coming through the accounts." Medlock wrote, "I will reach out each morning with the items that are coming through and verify the transfer with you."

66. On the same day, Henderson asked Boyd about a payment of $1,651.99 and wrote, "We need to decision this one before 2pm." Boyd copied Beale on his reply.

67. Henderson testified that "Cogent Bank does have oversight over what payments are made because of the very limited dollar amount available to them."

68. Aery asks Cogent Bank's officers in Lake Mary, Florida to send its wires. On May 23, 2025, Boyd sent Medlock a list of wires to send that day, and Medlock answered, "Ok...I will submit now." On June 4, 2025, Medlock answered another request from Boyd, "Good to send."

69. Boyd testified on October 6, 2025 about Aery's dealings with Cogent Bank, "we talk to them on a very frequent daily basis."

70. On May 6, 2025, Medlock wrote that Cogent Bank was "not able to release any additional payments until the increase is booked." Later that day, Cogent Bank sent Aery's wires of $30,000.00 to the Morgan Stanley account ending in 1172 and $45,000.00 to ACP II.

71. Aery drew 95 of the 119 transfers alleged in this Complaint on its accounts at Cogent Bank. Talentscale identifies the source account of each transfer in Tables 3-9. Talentscale has Cogent Bank's statements for those accounts through December 31, 2025.

72. Aery drew 74 of those transfers, totaling $3,516,032.98, on or after February 2, 2024.

73. Beale deals with Cogent Bank's officers in Florida for Aery. On April 22, 2025, Beale wrote to Henderson and Medlock to ask that Aery "utilize the expanded LOC, up to $500K." On May 5, 2025, Beale wrote to Medlock that he had reviewed an agreement for the increase of Aery's credit facility and gave her two corrections.

74. On June 17, 2025, Henderson wrote to Boyd and Beale under the subject "Urgent Discussion on Cash Management Concerns."

75. Beale owns 55% of Aery, has served as its Chief Operating Officer and its President, and guaranteed its credit facility at Cogent Bank. Beale is also the manager of ACP and Aerodrome, a managing member of Fast Bird,

and an owner of ACP II, each of which received transfers that Aery drew on its accounts at Cogent Bank.

### C. ACP carries on its business from an office in Florida, the residence of Beale, its sole member and manager.

76. This Court has personal jurisdiction over ACP under Fla. Stat. § 48.193(1)(a)(1) and, in the alternative, under Fla. Stat. § 48.193(2).

77. ACP leases aircraft to Aery. ACP leases a Beechcraft Premier aircraft, registration N972PF, to Aery under a lease that Beale signed for ACP as Managing Member.

78. Beale has been the sole member and manager of ACP since its formation. Beale has signed for ACP as “Manager” since March 26, 2018 and as “Managing Member” since 2021.

79. ACP acts only through Beale. Beale, as the sole member and manager of ACP, conducts all of its affairs.

80. ACP has no office other than the place where Beale conducts his business. Beale wrote on March 10, 2022 that none of his business entities has a bricks and mortar location, as alleged in paragraph 37.

81. ACP and the other four company Defendants identified no office of ACP in any state in their motion to dismiss the original Complaint or in their reply. (Docs. 17, 35.)

82. Beale is a citizen of Florida who lives in Collier County and conducts his business from his residence there, which is now 127 Gulfport Court, Marco Island, Florida. Since no later than August 4, 2023, Beale has conducted ACP's business from Collier County by telephone, email, and video conference.

83. ACP therefore carries on its business in Florida through Beale, its sole member and manager, and ACP has an office in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(1). Beale's residence in Collier County is ACP's office.

84. ACP's principal place of business is in Collier County, Florida. Beale directs and controls ACP from Collier County, where he signs its contracts, decides whether ACP will enforce its leases, and controls the accounts that receive its money.

85. Aery sent payments for ACP to an account at Morgan Stanley that Beale holds and to an account at U.S. Bank that Beale described as the account of "Scott Beale d/b/a Aviation Capital Partners, LLC."

86. After August 4, 2023, the date of Beale's Florida driver license, ACP received $51,550.42 from Aery on August 4, 2023, $480,995.82 on September 1, 2023, $45,000.00 on December 14, 2023, $36,007.50 on July 16, 2025, and $16,031.84 on December 12, 2025.

87. Aery sent the payments of August 4, 2023, September 1, 2023, and December 12, 2025 from its operating account at Cogent Bank in Florida.

88. Aery's records identify ACP as the payee of four wires that Aery sent from its accounts at Cogent Bank in Florida to an account at Morgan Stanley on February 9, 2024, February 28, 2024, April 2, 2024, and December 27, 2024.

89. The title company's file for Beale's purchase of 8334 Rimini Way, Naples, Florida shows a wire from ACP on August 29, 2023.

90. Beale testified that the companies in which he is personally involved chose to work with Aery on its late lease payments and took no action to place Aery in default. Beale made that choice for ACP from Collier County, Florida.

91. Talentscale's claims against ACP arise from that business. Talentscale seeks to avoid and recover the payments that ACP received from Aery, including the payments that ACP received after August 4, 2023.

92. ACP's activity in Florida through its sole manager is substantial and not isolated within the meaning of Fla. Stat. § 48.193(2). ACP is at home in Florida, and this Court has jurisdiction over ACP for each ACP Transfer, including the transfers that Aery made before August 4, 2023.

93. The exercise of jurisdiction over ACP comports with due process. ACP carries on its business from an office in this District through its sole

member and manager and accepted payments drawn on a Florida bank. Talentscale's claims arise from those payments.

**D. ACP II carried on a business venture in Florida through Beale, who negotiated its aircraft lease to Aery.**

94. This Court has personal jurisdiction over ACP II under Fla. Stat. § 48.193(1)(a)(1).

95. ACP II filed its articles of organization in Ohio on September 28, 2023, 55 days after the date of Beale's Florida driver license and one day after the date of Beale's deed to 8334 Rimini Way, Naples, Florida.

96. On October 17, 2025, the Ohio Secretary of State cancelled ACP II's articles of organization for failure to maintain a statutory agent.

97. ACP II owns a Cirrus SF50 Vision Jet, serial number 0399 (the "Vision Jet"). ACP II registered the Vision Jet on November 7, 2023 under registration N324JR. The Vision Jet now carries registration N331SB.

98. ACP II leases the Vision Jet to Aery under a dry lease dated November 1, 2023 (the "ACP II Lease"). The ACP II Lease is the business venture from which Talentscale's claims against ACP II arise.

99. Beale testified that he negotiated the ACP II Lease for ACP II, that he did not negotiate for Aery because he was acting for ACP II, and that he was involved in the key terms of the lease.

100. Beale negotiated the ACP II Lease for ACP II in October and November 2023 from Collier County, Florida and has administered the lease for ACP II from Collier County since then.

101. On October 10, 2023, Beale wrote to Independent Financial and an aircraft title agent that the lease rate for the Vision Jet "is bumped to $45,000."

102. Beale wrote to the manufacturer of the Vision Jet that the aircraft "will be based at BKL and spend time at PHF and APF." BKL, PHF, and APF are the airport identifiers for Cleveland, Ohio, Newport News, Virginia, and Naples, Florida.

103. ACP II charges Aery $605 for each flight hour of the Vision Jet under the ACP II Lease.

104. Flight tracking data show the Vision Jet at Naples Municipal Airport in Collier County, Florida on May 10, 2025, May 23, 2026, May 24, 2026, and May 28, 2026.

105. Aery drew each of the 27 transfers to ACP II on its accounts ending in 0213 and 6824 at Cogent Bank in Florida. ACP II received each of those transfers from a Florida bank.

106. On February 5, 2025, the United States District Court for the Middle District of Florida issued a writ of garnishment to Cogent Bank in No. 6:25-mc-00003. Cogent Bank answered the writ on March 26, 2025. ACP II

received 14 transfers from Aery's account at Cogent Bank after the court issued the writ.

107. Talentscale's claims against ACP II arise from the ACP II Lease. Beale negotiated that lease for ACP II from Collier County, and ACP II received each of the 27 payments while Beale administered the lease for ACP II from Collier County. Talentscale seeks to avoid and recover those 27 payments.

108. The exercise of jurisdiction over ACP II comports with due process. ACP II entered into the ACP II Lease through a member who negotiated the lease from this District, planned for its aircraft to spend time in Naples, Florida, charged Aery for flight hours that include flights to Naples, and received each of the 27 transfers from a Florida bank.

**E. Fast Bird carries on its leasing business in Florida through Beale, one of its two managing members.**

109. This Court has personal jurisdiction over Fast Bird under Fla. Stat. § 48.193(1)(a)(1).

110. Beale and Rubis formed Fast Bird for "the ownership and leasing (as lessor) of executive model aircraft."

111. In Section 10 of Fast Bird's operating agreement, Beale and Rubis vested "[t]he management of the Company" in its two members and required their unanimous approval of any action. Fast Bird cannot act without Beale.

112. Fast Bird leases a Gulfstream G-IV aircraft, registration N307EW, to Aery under a lease dated as of July 2023 (the "N307EW Lease"). The N307EW Lease is the business venture from which Talentscale's claims against Fast Bird arise.

113. In the N307EW Lease, Fast Bird designated "Scott A. Beale, Managing Member" as its notice party and gave Beale's personal telephone number and email address for notices.

114. Aery's monthly payments to Fast Bird under the N307EW Lease began to come due on August 1, 2023.

115. Beale testified that he and Rubis, as the members of Fast Bird, could declare Aery in default and repossess the aircraft and that they decided not to do so.

116. Since no later than August 4, 2023, Beale has made his decisions for Fast Bird under the N307EW Lease from Collier County, Florida, including the decisions to accept partial payments from Aery and to leave the aircraft with Aery.

117. Beale testified that he knew that Aery made the payment of $200,000.00 to Fast Bird on May 27, 2025.

118. On May 23, 2025, Boyd asked Medlock at Cogent Bank's office in Lake Mary, Florida to send "FastBird - G4 payments - $200,000." Medlock

answered, “Ok...I will submit now.” Cogent Bank sent the wire of $200,000.00 to Fast Bird on May 27, 2025.

119. Aery drew each of the 11 transfers of money to Fast Bird on its operating account at Cogent Bank in Florida.

120. Fast Bird distributes money to Beale. On March 15, 2022, Beale wrote to a mortgage lender that a deposit of $40,000 from Fast Bird “was an Owner Distribution.”

121. Talentscale’s claims against Fast Bird arise from the N307EW Lease. Aery’s transfer of N307EW to Fast Bird on July 19, 2023 and the 11 payments that Fast Bird received from Aery are parts of one sale and leaseback.

122. Fast Bird received each of the 11 payments between September 11, 2023 and May 27, 2025, while Beale made his decisions for Fast Bird under the lease from Collier County. Talentscale seeks to avoid the transfer of the aircraft and to recover the 11 payments.

123. The exercise of jurisdiction over Fast Bird comports with due process. Fast Bird acts only with the approval of a managing member who acts for it from this District, has carried on its leaseback with Aery through that managing member from this District since no later than August 4, 2023, and received every payment at issue from a Florida bank.

### F. Aerodrome banks in Florida and acts through Beale, its sole Manager.

124. This Court has personal jurisdiction over Aerodrome under Fla. Stat. § 48.193(1)(a)(1).

125. Aerodrome owns a hangar in Newport News, Virginia that it leases to Aery. The transfers of money and other property and the lease of the hangar to Aery are the business from which Talentscale's claims against Aerodrome arise.

126. Aerodrome is a limited liability company managed by a manager. In Section 6.1 of Aerodrome's operating agreement, its members agreed that "[m]anagement of the Company is vested in Scott Beale."

127. Beale signed for Aerodrome as Manager on its hangar lease dated March 29, 2022, on its loan documents with Capital Bank dated as of May 31, 2022, and on its settlement statements of May 31, 2022.

128. Since no later than August 4, 2023, Beale has managed Aerodrome from Collier County, Florida.

129. On October 23 and 24, 2023, Beale, acting as Aerodrome's Manager from Collier County, wrote to Aerodrome's counsel and to Aerodrome's other members about the $1,399,414.51 that Capital Bank credited to Aerodrome on June 21, 2022. Beale proposed that Aerodrome repay that amount to him at

$16,940.97 per month and that Aerodrome pass those payments to Aery for payment, as alleged in paragraphs 388-390.

130. Talentscale challenges that transfer of $1,399,414.51 in this action.

131. Aerodrome holds an account ending in 1683 at Cogent Bank in Florida.

132. Aery paid rent to Aerodrome into the account ending in 1683 on August 30, 2024 ($80,742.22), September 30, 2024 ($82,866.30), October 31, 2024 ($78,400.00), and November 27, 2024 ($77,442.99). Aerodrome received those payments in Florida.

133. Aery transferred $5,000.00 into the account ending in 1683 on November 5, 2024 under the memo "DAVIS LAW LEGAL FEE."

134. On December 2, 2024, Aery transferred $250,000.00 from its air medical account and $128,000.00 from its operating account into the account ending in 1683 under the memo "TEMP TRANSFER."

135. Aery transferred $145,858.74 more from the account ending in 0189 at Cogent Bank into the account ending in 1683 on December 6 and 9, 2024. Between December 5 and December 10, 2024, Aery transferred $611,188.63 from the account ending in 1683 back into its operating and payroll accounts.

136. Talentscale's claims against Aerodrome arise from Aerodrome's business with Aery. Talentscale seeks to avoid and recover the rent that Aerodrome received in its Florida account, the $1,399,414.51 for which Beale proposed repayment terms as Aerodrome's Manager from Collier County, and the other payments that Aery made to Aerodrome or for its benefit.

137. The exercise of jurisdiction over Aerodrome comports with due process. Aerodrome chose to bank in Florida, received its rent in Florida from a Florida bank, and acts through a Manager who manages it from this District and who dealt from this District with the repayment of the $1,399,414.51 that Talentscale challenges.

### G. GH Equipment borrowed from a Florida bank under Florida law before Aery paid for its aircraft with the five transfers.

138. This Court has personal jurisdiction over GH Equipment under Fla. Stat. § 48.193(1)(a)(1). Talentscale bases jurisdiction over GH Equipment on the contracts that GH Equipment itself made with a Florida bank.

139. GH Equipment holds title to Learjet aircraft that Aery operates. GH Equipment is a borrower with Aery under the credit facility with Cogent Bank, and GH Equipment pledged its aircraft to Cogent Bank. That borrowing is the business venture from which Talentscale's claims against GH Equipment arise.

140. By unanimous written consent effective July 8, 2021, GH Equipment resolved that it "is being added as a Borrower" to the credit facility with Cogent Bank, approved a Global Amendment to Loan Documents, and authorized a lien in favor of Cogent Bank on its personal property. Beale signed that consent on July 9, 2021.

141. Under the Global Amendment to Loan Documents dated as of July 9, 2021, GH Equipment became a Loan Party under the Business Loan Agreement dated June 23, 2021.

142. As a Loan Party, GH Equipment agreed that the Business Loan Agreement is made and delivered in Florida, that Florida law governs it, and that GH Equipment submits to the exclusive jurisdiction of the state and federal courts in this District, as alleged in paragraph 54.

143. Aery wired the five payments for GH Equipment's aircraft, totaling $3,607,149.54, from its operating account at Cogent Bank in Florida between August 23, 2021 and October 1, 2021, after GH Equipment joined the credit facility.

144. Cogent Bank's statements for the account ending in 0189 name GH Equipment together with Aery and three other affiliates of Aery.

145. On March 1, 2022, Aery moved $5,907,710.77 of the debt under the credit facility to a subnote that Cogent Bank designated SubNote B for the

Learjet aircraft titled to GH Equipment. During 2022, Aery paid Cogent Bank $773,628.89 on SubNote B.

146. On May 5, 2025, GH Equipment signed, as Borrower and Loan Party, an Amended and Restated Business Loan Agreement with Cogent Bank in which GH Equipment repeated its agreement to Section 10.06.

147. On the same date, GH Equipment signed, as a maker jointly and severally with Aery, a Renewal Revolving Line of Credit Promissory Note for $18,000,000. In that note, GH Equipment agreed to Florida law and agreed that it “irrevocably consents to and confers personal jurisdiction on the courts of the State of Florida or the United States located within the State of Florida.”

148. GH Equipment granted Cogent Bank a lien on all of its assets under a Second Amended and Restated Security Agreement that Florida law governs.

149. Talentscale’s claims against GH Equipment arise from that venture. GH Equipment joined the credit facility at Cogent Bank on July 9, 2021. Between August 23, 2021 and October 1, 2021, Aery paid for GH Equipment’s aircraft with five transfers from its account at Cogent Bank, and GH Equipment pledged those aircraft to Cogent Bank under Florida law. Talentscale seeks to avoid and recover those five transfers.

150. The exercise of jurisdiction over GH Equipment comports with due process. For four years, GH Equipment has borrowed from a Florida bank,

pledged its aircraft to that bank under Florida law, and agreed with that bank in writing to litigate in the courts in this District.

## FACTS COMMON TO ALL COUNTS

### A. Talentscale holds an unpaid judgment against Aery.

151. In January 2021, Talentscale and Aery entered into a staffing agreement.

152. From January 30, 2021 through December 10, 2022, Talentscale supplied Aery with a skilled workforce of 96 people.

153. Aery paid Talentscale late from the start. Aery did not pay Talentscale's second weekly invoice when it came due on March 8, 2021.

154. Talentscale sent Aery 102 invoices for the period from January 30, 2021 through December 10, 2022. Aery did not pay 96 of those invoices when they came due.

155. Of the 25 invoices that came due before August 23, 2021, Aery did not pay 20 when they came due.

156. On November 9, 2021, Talentscale wrote to Aery under the subject "Past Due Invoices - Urgent" and listed three past due invoices.

157. Aery remained in arrears to Talentscale through December 10, 2022, the last day on which Talentscale supplied its workforce.

158. Aery's accounts payable aging at December 31, 2021 shows $1,120,279.25 owed to Talentscale.

159. Aery's accounts payable aging at December 31, 2022 shows $857,947.35 owed to Talentscale, of which $256,519.75 was more than 90 days past due.

160. Talentscale arbitrated its claim against Aery. On October 9, 2024, the United States District Court for the Eastern District of Virginia confirmed the arbitration award and entered the Judgment for $1,142,467.20 in *Talentscale, Inc. v. Aery Aviation, LLC*, No. 4:24-cv-00033 (E.D. Va.). Aery did not appeal.

161. Talentscale registered the Judgment in the United States District Court for the Northern District of Florida, No. 5:25-mc-00001, in this District, No. 6:25-mc-00003, and in the United States District Court for the District of Columbia, No. 1:25-mc-00117.

162. Aery has paid nothing on the Judgment.

163. Talentscale is a creditor of Aery within the meaning of Fla. Stat. § 726.102(5), and Aery is a debtor within the meaning of Fla. Stat. § 726.102(7). Talentscale has held a claim against Aery within the meaning of Fla. Stat. § 726.102(4) since January 2021.

**B. Beale controls Aery.**

164. Beale owns 55% of Aery. Walton owns 30%, Joshua Walton owns 10%, and Dynan owns 5%. Walton is the Manager and Chief Executive Officer of Aery.

165. Beale served as Aery's Executive Vice President and Chief Operating Officer until 2025. Boyd testified on October 6, 2025 that Beale's title is now President and that Aery had no President before Beale.

166. Aery's federal income tax returns for 2023 and 2024 list Beale as an officer who owns 55% of Aery and devotes 100% of his time to its business.

167. In Section 6.01(e) of an Amended and Restated Business Loan Agreement with Cogent Bank dated May 5, 2025, Aery agreed that it would not, without Cogent Bank's approval, permit "any event where Guarantor cease to be in control of the management of the Borrower." Beale is the Guarantor under that agreement.

168. In a Personal Financial Statement that Beale gave Independent Financial on November 3, 2022, Beale described himself as Aery's "President / Majority Owner."

169. In a resolution dated February 2, 2024, which Boyd signed as Chief Financial Officer, Aery named Beale as an authorized signer "acting alone" on Aery's account at Bank of America.

170. Beale testified on November 10, 2025 that he has access to Aery's bank balances and accounting system.

171. Beale testified that Boyd raises payments above a threshold of between $50,000 and $100,000 with Aery's members, including Beale, before Aery makes them.

172. Boyd testified on October 6, 2025 that he reports to an executive committee of Beale, Walton, and Boyd.

173. Walton testified on November 13, 2025 that he did not negotiate the transactions between Aery and the companies that Aery's members own and that Beale was in charge of those negotiations.

174. Walton testified that Beale conducts the discussions between Aery and those companies and that he suspects that Beale does so "on both sides."

175. Walton testified that he could identify no formal policy of Aery that governs related party transactions.

176. Aery has identified no conflict review, independent valuation, member vote, or written consent that approved any transaction with Beale or with a company that Beale owns or manages, other than a consent dated March 15, 2021 that approved distributions of $3,000,000.

**C. Aery did not pay its debts as they became due.**

177. On August 18, 2022, Walton wrote to Talentscale that a problem with a foreign customer "has impacted our operational cashflow for more than 6 quarters."

178. At December 31, 2022, $2,963,819.39 of Aery's $6,888,396.29 in accounts payable was more than 90 days past due.

179. Cogent Bank's statements show that Aery overdrew its operating account in June, October, November, and December 2022.

180. On July 3, 2025, Entegee, Inc., a staffing firm, sued Aery in the United States District Court for the Eastern District of Virginia, No. 4:25-cv-00073. Entegee, Inc. alleges that Aery owed it $1,716,198.29 as of October 5, 2023, signed a settlement agreement and a promissory note on that date, paid $150,000, and then defaulted, and then apparently made some payment.

181. Cogent Bank's statement for December 4, 2023 showed a balance of negative $1,000,291.49 in Aery's operating account.

182. On January 17, 2024, Boyd wrote to Cogent Bank that without a loan "and the nearly $500k injected by Scott and Steve, we would still be in a large overdraft position."

183. Cogent Bank assessed a late charge on Aery's line of credit in each month from January 2024 through May 2025.

184. Aery's profit and loss statement for 2024 reports a net loss of $6,009,600.39 on revenue of $29,143,109.81.

185. Aery's federal income tax return for 2024 reports an ordinary business loss of $8,893,490.

186. In Section 5.12 of its loan agreements with Cogent Bank, Aery agreed to maintain an operating account that "shall at all times have a minimum average daily cash balance of $500,000."

187. Cogent Bank's monthly statements show a negative balance in Aery's operating account for each month from December 2024 through September 2025.

188. On February 25, 2025, Boyd wrote to Cogent Bank that "Aery is not in a position to shell out $400-500k."

189. On March 3, 2025, Beale wrote to The Cleveland Clinic Foundation (the "Clinic"), a customer of Aery, that "Aery has absorbed significant financial strain" and "We need a resolution to our financial losses on this program."

190. Walton testified on November 13, 2025 that before Cogent Bank increased Aery's credit facility in May 2025, "we had consumed all of the available credit."

191. Walton testified on November 13, 2025 that Aery is financially challenged and that its financial condition has been the same since COVID-19 restrictions took effect, about a year before March 2021.

192. Beale testified on November 10, 2025 that Aery had missed payments to ACP since 2021, that Aery was then $300,000 to $400,000 behind on its payments to ACP and behind by roughly the same amount on its payments to ACP II, and that Aery was also behind on its payments to Fast Bird and Aerodrome.

193. Henderson testified on September 22, 2025 that Cogent Bank increased Aery's credit limit in May 2025 "because of Aery's lack of liquidity" and "to be able to keep Aery in my opinion from having to close its doors."

194. Henderson testified that Aery raised with Cogent Bank its concern that, if Cogent Bank declined the increase, "its alternative would be to file bankruptcy."

195. Henderson testified, "There has been default according to our loan agreement. However, the bank has not formally defaulted Aery."

196. Henderson testified that if Cogent Bank and Aery's other secured lenders had not deferred payments, "I do believe that Aery would not exist today or we would be fighting through a bankruptcy court."

197. On May 23, 2025, Aery's counsel told the United States District Court for the Northern District of Florida that "Aery is definitely toeing the line at this point of potentially restructuring." Aery's counsel told the court that Aery had "been kind of trying to stay afloat" for "a couple of years now."

198. On June 17, 2025, Henderson wrote to Boyd and Beale, "It's troubling to now see the company in an overdrawn position once again."

199. Boyd testified on October 6, 2025 that Aery violated "the debt service coverage covenant" in its loan agreement with Cogent Bank and that "our revenues are often and have been often less than what our expenses are."

200. Boyd testified that creditors other than Talentscale hold judgments against Aery, including a judgment "for approximately $100,000" and another of less than $100,000.

201. Beale testified on November 10, 2025 that Aery had been insolvent during the preceding six to 12 months. Beale admitted that testimony in his Answer to the original Complaint. (Doc. 11 ¶ 126.)

202. Aery was generally not paying its debts as they became due from 2021 through the date of the last transfer alleged in this Complaint.

**D. Aery repeatedly promised to pay Talentscale in full.**

203. On March 16, 2022, Aery's Vice President of Finance wrote to Talentscale, with a copy to Beale, "We are working on increased funding availability to reduce our outstanding balance that should come to fruition by early to mid-April."

204. On April 22, 2022, Talentscale's Chief Executive Officer wrote to Beale and Walton that Talentscale was "on the brink of defaulting on payroll" because Aery had not paid its invoices.

205. Walton answered that day, "You have in fact become an (unwilling) investor in Aery," and wrote, "Aery will get through this bottleneck."

206. On April 27, 2022, Beale wrote to Talentscale that Aery faced "a cash flow squeeze." Beale wrote, "As committed during the telecon, we believe

we can stay current on the weekly invoices and additionally begin to retire the existing backlog."

207. Aery had paid $91,000.00 of Beale's state income taxes on April 19 and April 20, 2022.

208. On May 25, 2022, Beale wrote to Talentscale, "I want to emphasize that Aery Aviation is committed to Talent Scale and retirement of the outstanding invoices."

209. On August 18, 2022, after Talentscale sent Aery a stop work order notice, Walton wrote to Talentscale that he expected "subsequent funds to Talentscale" and wrote, "Our business is quite strong."

210. On August 31, 2022, Aery's Vice President of Finance wrote to Talentscale, "We are also working through some aircraft refinancing. That will help accelerate the repayment."

211. Later that day, Talentscale's Chief Financial Officer answered Walton and Aery's Vice President of Finance that Talentscale expected "a separate payment from Steve of $400k" from "the Gulfstream refinance."

212. On September 14, 2022, Walton wrote to Talentscale that "[t]he refinance of the 2ea GIV aircraft is still underway" and that Aery had "a 3rd GIV that we have elected to sell." Walton wrote that the sale, the refinance, and cash from a new program "are providing a path to resolve the current AP bottleneck."

213. In the same email, Walton wrote that a recapitalization "will allow Aery to retire all of its past due AP." Later that day, Walton wrote to Talentscale, "We are intent on getting this account current."

214. Between October 18 and November 14, 2022, Aery paid $144,656.00 of Beale's state income taxes and wired $125,000.00 to ACP.

215. Aery's Vice President of Finance wrote to Talentscale on December 8, 2022, "I would like to commit to chipping away at the balance starting end December." He wrote again on January 4, 2023, "You are on our list for sure."

216. Walton sent Talentscale a letter on February 8, 2023 in which Aery acknowledged an accounts payable balance of $760,319.20 owed to Talentscale. Walton described the letter as "a written commitment to satisfying all debts owed to Talentscale, Inc."

217. In the same letter, Walton wrote that "we are solvent but currently struggling with cash-flow" and that "you are our top priority and first-in-line vendor."

218. Walton testified that the letter "was a commitment to follow through on the payment of AP."

219. Aery's amended federal income tax return for 2023 reports that Aery sold one Gulfstream G-IV aircraft on January 19, 2023 for $3,240,000 and two more on July 19, 2023 for $5,390,000 and $4,410,000.

220. On January 20, 2023, the day after the first of those sales, Aery sent Talentscale $82,416.52.

221. On February 15, 2023, Talentscale's Chief Financial Officer wrote to Aery's Vice President of Finance that Talentscale was "disappointed in only the $82k" from the sale of the first aircraft. Aery's Vice President of Finance answered, "So many bills to pay, it was gone in 5 minutes."

222. On July 20, 2023, Aery wired $426,023.92 to ACP.

223. Aery has made no payment to Talentscale since January 20, 2023.

**E. Aery withheld its financial records from Talentscale until a federal court compelled Aery to disclose them.**

224. On May 4, 2022, Beale and Walton agreed to send Aery's financial statements to Talentscale's lender. On May 11, 2022, the lender wrote to Talentscale that Aery "never sent us the requested financials despite several follow-up requests."

225. Talentscale registered the Judgment in the United States District Court for the Northern District of Florida on January 13, 2025 and sought discovery in aid of execution in that court.

226. Aery moved to quash two of Talentscale's subpoenas to nonparties on April 24, 2025 and a third on May 2, 2025. On August 25, 2025, Aery moved for a protective order against a fourth subpoena.

227. Talentscale moved to compel Aery to complete Florida Form 1.977, the Fact Information Sheet in which a judgment debtor discloses its bank accounts, assets, and financial records. Aery opposed the motion on September 9, 2025.

228. On October 27, 2025, the court granted the motion and ordered Aery to complete the Fact Information Sheet by November 17, 2025.

229. Aery served its Fact Information Sheet, with the bank statements, tax returns, and resolutions that the form requires, after that order.

230. Aery listed one bank account in its Fact Information Sheet, the account ending in 0213 at Cogent Bank. Aery's bank statements show accounts ending in 0296 and 6824 at Cogent Bank and accounts at Bank of America, Capital Bank, TowneBank, and Truist.

**F. After the Judgment, Aery paid Defendants $2,287,063.29, and Beale testified that he would not ask Aery to prioritize the Judgment.**

231. Aery's federal income tax returns for 2022 through 2024 report gross receipts of $151,105,474.

232. In 2023, Aery distributed $874,537 in cash to its members, including $480,995 to Beale. Boyd confirmed those amounts under oath.

233. Aery's balance sheet as of December 31, 2024 lists $3,202,463.05 in a money market account at Capital Bank.

234. The same balance sheet, which Cogent Bank produced to Talentscale, lists Talentscale under "Contingent Liabilities" at $753,563.50. The court had entered the Judgment for $1,142,467.20 on October 9, 2024.

235. Capital Bank stated in its answer to a writ of garnishment in the United States District Court for the District of Columbia that it held $3,106,949.17 in Aery's account. Aery opposed Talentscale's garnishment of that account.

236. On November 27, 2024, Talentscale moved the United States District Court for the Eastern District of Virginia for a writ of garnishment to Cogent Bank.

237. On December 2, 2024, Boyd wrote to the Clinic, which paid Aery's invoices by deposit into Aery's account ending in 6824, "we need to make a change to the bank account the Clinic remits payment to." Boyd wrote, "If we could implement the account change before any further remittances are made, that would be great."

238. On December 13, 2024, Boyd wrote to the Clinic that its latest payment "was sent to the old account which is now closed" and asked the Clinic to "begin using the FBO account." The FBO account is the Blocked Account that Cogent Bank holds in its own name.

239. Cogent Bank answered the writ on January 9, 2025. Cogent Bank stated that Aery's account ending in 0213 held $945.22 and identified no other account.

240. On May 5, 2025, Aery and Cogent Bank increased Aery's revolving credit facility from $15,000,000 to $18,000,000.

241. In Section 5.08 of the loan agreement for that increase, Aery and its affiliated borrowers agreed that they "shall pay and discharge at or before maturity, all of their respective obligations and liabilities … before the same shall become delinquent or in default."

242. In Section 2.01(d) of that agreement, Aery and Cogent Bank agreed that Aery would use the line of credit to "[p]rovide ongoing working capital to support current and future contracts."

243. In an exhibit to the loan agreement for that increase, Aery and Beale listed "Talent Scale, Inc. vs. Aery Aviation, LLC" as pending litigation. The court had entered the Judgment almost seven months earlier.

244. On May 8, 2025, Boyd asked Cogent Bank to wire $45,000 to Aery's lawyers and wrote, "Part of the $45 is for refiling our countersuit against TalentScale." Cogent Bank sent the wire that day.

245. On May 23, 2025, at a hearing on writs of garnishment in the United States District Court for the Northern District of Florida, the court

asked why Aery had not paid the Judgment. Aery's counsel answered that "Aery just doesn't have it."

246. Aery's counsel told the court, "[I]t's not lack of desire to pay a debt. It's lack of ability to do so."

247. Two law firms appeared for Aery at that hearing. On May 8, 2025, 15 days before the hearing, Aery wired $45,000.00 from its operating account at Cogent Bank to one of them, Davis, Burch & Abrams. Boyd wrote to Cogent Bank that day that "we need to send $45k to Davis Law" and that "[p]art of the $45 is for refiling our countersuit against TalentScale."

248. Cogent Bank's statements show five more payments totaling $146,561.23 from that account to that law firm between August 11, 2025 and December 9, 2025.

249. Aery did not disclose to the court that it had increased its credit facility 18 days earlier.

250. At 1:29 p.m. that day, Boyd asked Cogent Bank to wire $200,000 to Fast Bird. Cogent Bank sent the wire on May 27, 2025.

251. On August 1, 2025, Boyd wrote to Cogent Bank about the proceeds of a new contract with the United States Coast Guard. Boyd wrote, "I like the idea of a Contract account owned/controlled by Cogent held at Citizens which takes Aery out of any control." Boyd wrote, "Resolves any potential issues with TalentScale too."

252. Henderson testified for Cogent Bank on September 22, 2025 that Cogent Bank has never told Aery which vendors to pay.

253. Henderson testified, "I would say that the loan agreement does contemplate payment of judgments."

254. Henderson testified, "We have not been presented with a request to increase Aery's credit exposure to pay an unsecured judgment."

255. Boyd testified on October 6, 2025, as Aery's designee under Fed. R. Civ. P. 30(b)(6), that Aery had "approximate availability of $529,000" on its line of credit.

256. Counsel for Talentscale asked Boyd how much of that amount Aery would allocate to the Judgment. Boyd testified, "Zero."

257. Counsel for Talentscale asked Boyd why Aery had not paid the Judgment. Boyd testified, "It just hasn't reached the priority, I suppose."

258. Boyd testified about the Judgment, "we have not written a check, we have not authorized a payment." Boyd testified, "I don't have to ask Cogent, you know, which obligations I can pay and which I can't pay."

259. Three days after Boyd gave that testimony, Aery wired $22,733.14 to ACP II. Aery wired another $45,000.00 to ACP II on October 21, 2025.

260. After the court entered the Judgment, Aery made 49 transfers totaling $2,287,063.29 to Defendants or for their benefit. That total is more than twice the amount of the Judgment.

261. On November 10, 2025, counsel for Talentscale asked Beale what stopped him from asking Boyd to prioritize payment of the Judgment. Beale testified, "It's not that I couldn't, I just wouldn't." Beale admitted that testimony in his Answer to the original Complaint. (Doc. 11 ¶¶ 3, 84.)

262. On the day of that testimony, Aery wired $30,000.00 to Beale's account ending in 1172 at Morgan Stanley and $45,000.00 to ACP II.

263. After that testimony, Aery made five more transfers to Beale, ACP, and ACP II, totaling $326,721.61, by December 23, 2025. Aery wired $156,232.17 to Beale's account at Morgan Stanley on November 26, 2025.

264. Cogent Bank's statement for Aery's line of credit shows available credit of $3,961,661.93 on November 28, 2025.

265. On December 23, 2025, the United States District Court for the Northern District of Florida issued a writ of garnishment to Cogent Bank at Talentscale's request. On the same day, Aery wired $79,457.60 to Beale's account at Morgan Stanley.

## FACTS SPECIFIC TO EACH DEFENDANT

### A. Aery and Beale fixed Beale's compensation in a written agreement.

266. In an Executive Employment Agreement effective January 12, 2017, which Beale signed on June 12, 2017, Aery and Beale fixed Beale's compensation as a membership interest of up to 55%, a salary of $125,000 "paid

in accordance with Company internal payroll policies and procedures," and reimbursement of expenses.

267. Aery and Beale agreed that "[o]ther than the Compensation described herein, Employee will not be entitled to, and Company shall have no duty to pay or provide, any other benefits or remuneration to Employee."

268. In Sections 17, 18, and 23 of the agreement, Aery and Beale agreed that it is the entire agreement, that it replaced all prior agreements, and that the parties may amend it only "by a writing signed by the Party to be bound."

269. In an Amendment to Employment Agreement effective April 5, 2021, which Walton signed on April 15, 2021 and Beale signed on April 19, 2021, Aery raised Beale's salary to $158,125 "plus a commission based on the value and duration of contracts won through the Executive's efforts, paid in accordance with Company internal payroll policies and procedures."

270. Aery and Beale set no commission rate in the amendment.

271. Aery has produced no agreement and no consent of its members that entitled Beale to a commission before April 5, 2021. Aery has produced no agreement that entitled ACP to a commission at any time.

272. Aery paid Beale a salary of $168,994 in 2021 and $206,223 in 2022 and reported officer compensation to Beale of $179,164 for 2023.

273. In his Personal Financial Statement dated November 3, 2022, Beale listed a "Commission/ Bonus" of $325,000 for 2022 and projected a "Commission/ Bonus" of $400,000 for 2023.

**B. Aery made 11 transfers totaling $2,304,449.96 to Beale or for his benefit.**

274. Talentscale lists in Table 3 the 11 transfers that Aery made to Beale or for his benefit (the "Beale Transfers").

**Table 3. The Beale Transfers**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 1/19/2021 | $143,000.00 | Bank of America x8049 | Distribution to Beale |
| 2 | 3/12/2021 | $1,650,000.00 | Truist x9959 | Distribution to Beale |
| 3 | 4/16/2021 | $184,334.00 | Bank of America x8049 | Payment of Beale's Virginia income tax |
| 4 | 4/19/2022 | $11,000.00 | Aery general ledger | Beale's share of a North Carolina income tax payment |
| 5 | 4/20/2022 | $80,000.00 | Aery general ledger | Payment of Beale's Virginia income tax |
| 6 | 10/18/2022 to 11/14/2022 | $82,962.00 | Aery general ledger | Five payments of Beale's state income taxes |
| 7 | 10/19/2022 | $61,694.00 | Aery general ledger | Payment of Beale's Virginia income tax |
| 8 | 8/30/2024 | $25,000.00 | Cogent Bank x0213 | Wire to Beale |
| 9 | 9/30/2024 | $25,000.00 | Cogent Bank x0213 | Wire to Beale |
| 10 | 2/28/2025 | $10,353.71 | Cogent Bank x0213 | Wire to Beale |
| 11 | 8/15/2025 | $31,106.25 | Cogent Bank x0213 | Wire to "SCOTT BEALE / AVIATION CAPITAL PART" |
| | **Total** | **$2,304,449.96** | | **11 transfers** |

275. Aery paid the distribution of $1,650,000.00 on March 12, 2021. Aery's members signed a consent that approved distributions of $3,000,000 on March 15, 2021.

276. With the payments of April 16, 2021, April 19, 2022, April 20, 2022, October 19, 2022, and October 18 through November 14, 2022, Aery paid Beale's personal income taxes to Virginia, North Carolina, Michigan, Ohio, and California.

277. On March 15, 2022, Beale wrote to a mortgage lender to explain deposits into an account at U.S. Bank that he described as "Scott Beale d/b/a Aviation Capital Partners, LLC." Beale wrote that a deposit of $44,011.11 "was a tax refund from VA" that "resulted from an over-payment from 2021 state taxes in Virginia from Aery Aviation."

278. On June 30, 2021, Aery reclassified the payment of $184,334.00 to an account titled "Due from Employees." On December 31, 2021, Aery eliminated that balance under the entry "Apply due from Beale accrual against commissions."

279. Aery applied $182,114.28 of that payment against a commission balance of $288,305.28 that Aery then carried on its books for Beale and ACP.

280. In 2022, Aery charged the payments of April 19, April 20, and October 19, 2022, totaling $152,694.00, against the same commission balance.

281. Aery recorded the five payments of October 18 through November 14, 2022, totaling $82,962.00, as distributions to Beale and reported them on Beale's Schedule K-1 for 2022. Talentscale has the total of those five payments and not the amount of each. Talentscale lists them as entry No. 6 in Table 3 and counts them as one transfer in each total in this Complaint, so that the 119 transfers represent 123 payments.

282. Aery's ledgers for 2021 and 2022 show no new commission accrual for Beale after June 30, 2021. On June 30, 2021, Aery reversed $371,673.92 of the commissions that it had accrued for Beale in 2021.

283. Aery has produced no consent of its members that authorized Aery to pay Beale's income taxes.

284. Walton testified on November 13, 2025 that, as he recalled, Aery paid the income taxes of its members only once, in March 2021.

285. Aery recorded no obligation of Beale to repay any Beale Transfer other than the entry alleged in paragraph 278.

286. Aery made two of the Beale Transfers, totaling $41,459.96, after the court entered the Judgment.

287. Aery made six of the Beale Transfers, totaling $236,115.96, on or after June 12, 2022. Aery made the other five, totaling $2,068,334.00, before that date.

288. Beale is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Beale owns 55% of the membership interests in Aery, served as its officer, and controls it.

**C. Aery sent 37 wires totaling $1,613,845.11 to an account at Morgan Stanley for Beale and ACP.**

289. Talentscale lists in Table 4 the 37 wires that Aery sent from its accounts at Cogent Bank to an account at Morgan Stanley that Aery's wire records identify as ending in 1172 (the "Morgan Stanley Wires").

**Table 4. The Morgan Stanley Wires**

| No. | Date | Amount | Payee in Aery's records | No. | Date | Amount | Payee in Aery's records |
|---|---|---|---|---|---|---|---|
| 1 | 12/1/2022 | $7,800.00 | | 20 | 12/27/2024 | $24,807.00 | ACP |
| 2 | 1/12/2023 | $84,450.00 | | 21 | 12/30/2024 | $25,000.00 | |
| 3 | 6/2/2023 | $100,000.00 | | 22 | 2/5/2025 | $30,000.00 | |
| 4 | 6/9/2023 | $75,000.00 | | 23 | 3/4/2025 | $30,000.00 | |
| 5 | 6/27/2023 | $40,000.00 | | 24 | 4/1/2025 | $30,000.00 | |
| 6 | 9/6/2023 | $25,000.00 | | 25 | 5/6/2025 | $30,000.00 | |
| 7 | 10/6/2023 | $25,000.00 | | 26 | 6/2/2025 | $30,000.00 | |
| 8 | 2/9/2024 | $94,372.67 | ACP | 27 | 7/7/2025 | $30,000.00 | |
| 9 | 2/28/2024 | $103,371.61 | ACP | 28 | 7/16/2025 | $35,000.00 | |
| 10 | 4/2/2024 | $25,000.00 | ACP | 29 | 8/4/2025 | $30,000.00 | |
| 11 | 4/8/2024 | $25,096.00 | | 30 | 8/19/2025 | $77,583.17 | |
| 12 | 5/31/2024 | $25,000.00 | | 31 | 9/3/2025 | $30,000.00 | |
| 13 | 7/1/2024 | $25,000.00 | | 32 | 9/16/2025 | $78,878.00 | |
| 14 | 8/1/2024 | $25,000.00 | | 33 | 10/2/2025 | $30,000.00 | |
| 15 | 8/6/2024 | $19,271.00 | | 34 | 11/10/2025 | $30,000.00 | |
| 16 | 9/3/2024 | $25,000.00 | | 35 | 11/26/2025 | $156,232.17 | |
| 17 | 10/1/2024 | $32,525.89 | | 36 | 12/1/2025 | $30,000.00 | |

| No. | Date | Amount | Payee in Aery's records | No. | Date | Amount | Payee in Aery's records |
|---|---|---|---|---|---|---|---|
| 18 | 11/4/2024 | $25,000.00 | | 37 | 12/23/2025 | $79,457.60 | |
| 19 | 12/3/2024 | $25,000.00 | | | | | |
| | | | | | **Total** | **$1,613,845.11** | **37 wires** |

290. Aery sent wires Nos. 8-11 from its account ending in 6824 at Cogent Bank and the other 33 wires from its account ending in 0213 at Cogent Bank.

291. Cogent Bank's statements name no beneficiary of the Morgan Stanley Wires other than Morgan Stanley.

292. Cogent Bank's wire records show the account ending in 1172 as the beneficiary account of the Morgan Stanley Wires that Aery sent between April 1, 2025 and November 10, 2025.

293. In its general ledger for 2022, Aery coded the wire of December 1, 2022 to the payee "Scott Beale" under the memo "Inv pd by ACP Scott Beale."

294. On February 23, 2024, Aery sent $103,371.61 by ACH to the Morgan Stanley account on file for ACP. On February 27, 2024, Cogent Bank credited the returned ACH under the description "MORGAN STANLEY SCOTT BEALE." Aery sent the payment again by wire on February 28, 2024.

295. In Bill.com, Aery coded the wires of February 9, 2024 and February 28, 2024 as payments to ACP.

296. Aery's Controller and Chief Financial Officer described the wires of April 2, 2024 and December 27, 2024 to Cogent Bank as wires to "Aviation Capital."

297. Aery's records thus identify ACP as the payee of four of the Morgan Stanley Wires, totaling $247,551.28 (the "ACP Morgan Stanley Wires"). Talentscale marks those four wires in Table 4.

298. In his Personal Financial Statement dated November 3, 2022, Beale listed Morgan Stanley as the bank for his personal accounts and as the primary bank of ACP.

299. Beale holds the Morgan Stanley account ending in 1172. The other 33 Morgan Stanley Wires, totaling $1,366,293.83, were transfers to Beale.

300. Aery sent the ACP Morgan Stanley Wires to the Morgan Stanley account that Aery kept on file for ACP. Beale holds that account.

301. Beale testified on November 10, 2025 that the monthly lease payment to ACP is $30,000. Aery sent 11 of the Morgan Stanley Wires in the amount of $30,000.00 and 10 in the amount of $25,000.00.

302. Aery's federal income tax returns for 2022, 2023, and 2024 report no loans from shareholders, and the Schedules K-1 that Aery issued to Beale for those years report no loans from Beale.

303. In Section 4.20 of the loan agreement dated May 5, 2025, Aery and Beale represented to Cogent Bank that "None of the Insiders have made any

loan(s) to the Borrower" other than under a revolving line of credit note that Aery gave ACP on December 31, 2017.

304. In Section 18 of his Amended and Restated Guaranty dated May 5, 2025, Beale agreed that until Aery paid Cogent Bank in full he "shall not demand or accept any payment of principal or interest from" Aery on any debt that Aery owed him.

305. Aery's amended federal income tax return for 2023 reports compensation of $179,164 and distributions of $480,995 for Beale. In 2023, Aery sent six wires totaling $349,450.00 to Beale's account at Morgan Stanley.

306. Aery's federal income tax return for 2024 reports no distributions to shareholders and reports the same balance of related party loans, $404,362, at the beginning and the end of the year. In 2024, Aery sent 12 wires totaling $301,892.89 to Beale and sent the four ACP Morgan Stanley Wires, totaling $247,551.28.

307. Aery's amended federal income tax return for 2023 reports an adjustment to shareholders' equity of $6,105,893 that the return describes as "PRIOR PERIOD GAAP ADJUSTMENT - COMMISSIONS ACCRUAL."

308. Aery sent 20 of the Morgan Stanley Wires, totaling $856,957.94, after the court entered the Judgment. Aery's records identify ACP as the payee of one of those 20 wires, in the amount of $24,807.00.

309. Aery sent every Morgan Stanley Wire on or after June 12, 2022.

**D. Aery made 15 transfers totaling $2,158,752.44 to ACP.**

310. Beale signed leases of two aircraft, registrations N330AC and N972PF, from ACP to Aery as the Managing Member of ACP. ACP and Aery set rent at $25,000 per month in each lease.

311. Aery signed a revolving line of credit note in favor of ACP dated December 31, 2017. In a Business Loan Agreement dated June 23, 2021, Aery and Beale represented to Cogent Bank that the note was for $1,000,000.00 and that "Nothing is currently drawn down on the Note."

312. Aery and Beale described the note to Cogent Bank in that agreement, and again on May 5, 2025, as an "Essential part of Mr. Beale's ownership interest in Aery." On May 5, 2025, they stated the amount of the note as $4,000,000.00 and identified it as Aery's only insider debt.

313. Talentscale lists in Table 5 the 15 transfers that Aery made to ACP (the "ACP Transfers").

**Table 5. The ACP Transfers**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 7/23/2020 | $139,807.39 | Bank of America x8049 | Payment of ACP invoice 2020-001 for "commission" on four Aery projects |
| 2 | 11/19/2020 | $213,390.55 | Bank of America x8049 | Wire to ACP, ledger memo "to pay Beale 3Q 2020 commissions" |
| 3 | 2/4/2022 | $50,000.00 | Bill.com | Payment recorded in Bill.com for the ACP bill "September 2021" |

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 4 | 2/4/2022 | $150,000.00 | Bill.com | Payment recorded in Bill.com for four ACP bills |
| 5 | 3/4/2022 | $199,900.00 | Bill.com | Payment of seven ACP bills |
| 6 | 6/1/2022 | $25,045.00 | Bill.com | Payment of ACP bill 1030 |
| 7 | 6/15/2022 | $150,000.00 | Bill.com | Payment of six ACP bills of $25,000.00 each |
| 8 | 11/14/2022 | $125,000.00 | Cogent Bank x0213 | Wire to ACP, booked to accrued expenses |
| 9 | 6/15/2023 | $50,000.00 | Cogent Bank x0213 | Wire to ACP |
| 10 | 7/20/2023 | $426,023.92 | Cogent Bank x0213 | Wire to ACP, booked as payment of 12 bills of vendor "Scott Beale-V" |
| 11 | 8/4/2023 | $51,550.42 | Cogent Bank x0213 | Wire to ACP |
| 12 | 9/1/2023 | $480,995.82 | Cogent Bank x0213 | Wire to "SCOTT AVIATION CAPITAL PARTNERS LLC" |
| 13 | 12/14/2023 | $45,000.00 | Bank of America x8049 | Wire to ACP at U.S. Bank, memo "VISION JET LEASE" |
| 14 | 7/16/2025 | $36,007.50 | Bill.com | Payment of ACP bill 1084 |
| 15 | 12/12/2025 | $16,031.84 | Cogent Bank x0213 | Wire to "SCOTT AVIATION CAPITAL PARTNERS LLC" |
| | **Total** | **$2,158,752.44** | | **15 transfers** |

314. In 2020, Aery accrued $566,503.22 of "commissions" for Beale on its ledger and paid $353,197.94 of that amount to ACP from its account at Bank of America.

315. Aery paid ACP $139,807.39 on July 23, 2020 against ACP invoice 2020-001 and $213,390.55 on November 19, 2020 under the ledger memo "to pay Beale 3Q 2020 commissions."

316. In October 2021, Aery's diligence accountants wrote that "these commission amounts are not paid to Mr. Beale through payroll. They are paid to Aviation Capital Partners, a related party owned by Mr. Beale."

317. The accountants asked Aery to "confirm Scott's commissions didn't begin until Q3 2020." Aery's Vice President of Finance answered, "I recall we paid his 2nd Qtr commissions in Q3 (7/23)," and "The Commissions were paid to Aviation Capital Partners."

318. Aery has produced no document that identifies who at Aery approved the payments of July 23, 2020 and November 19, 2020.

319. Aery's payment records in Bill.com show five payments to ACP between February 4, 2022 and June 15, 2022, totaling $574,945.00.

320. With the payment of June 15, 2022, Aery paid six bills from ACP of $25,000.00 each.

321. Aery booked the wire of November 14, 2022 to accrued expenses without identifying what the wire paid.

322. Aery booked the wire of July 20, 2023 in Bill.com as payment of 12 bills of the vendor "Scott Beale-V" and sent the money to ACP's bank account.

323. Aery sent the wire of September 1, 2023 to a beneficiary that appears in the wire record as "SCOTT AVIATION CAPITAL PARTNERS LLC." Boyd testified on October 6, 2025 that Beale's share of a "one-time tax

distribution to the four principals" in 2023 was $480,995.82, the amount of that wire. Aery reported a distribution of $480,995 on Beale's Schedule K-1 for 2023.

324. Aery sent the wire of December 14, 2023 to an account ending in 1941 at U.S. Bank that Beale and ACP share. Aery sent the wire under the memo "VISION JET LEASE." ACP II, and not ACP, leases the Vision Jet to Aery.

325. On March 15, 2022, Beale described ACP's account at U.S. Bank to a mortgage lender as the account of "Scott Beale d/b/a Aviation Capital Partners, LLC."

326. Aery's vendor record in Bill.com for ACP II lists "Aviation Capital Partners, LLC" as the name on its checks.

327. With the payment of July 16, 2025, Aery paid ACP $36,007.50 for two items that ACP billed as "Augusta Aviation 6/29/22" and "Dodson International Parts 1/7/22." Aery's ledger for 2022 shows that Aery paid ACP $25,045.00 for the Dodson item on June 1, 2022.

328. On December 12, 2025, Aery wired $16,031.84 from its operating account at Cogent Bank to the beneficiary "SCOTT AVIATION CAPITAL PARTNERS LLC."

329. Aery made the ACP Transfers of July 16, 2025 and December 12, 2025 after the court entered the Judgment.

330. Aery made nine of the ACP Transfers, totaling $1,380,609.50, on or after June 12, 2022. Aery made the other six, totaling $778,142.94, before that date.

331. ACP is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Beale, who owns 55% of Aery and controls it, owns and manages ACP.

**E. Aery made 27 transfers totaling $1,387,689.44 to ACP II.**

332. Under the ACP II Lease, Aery agreed to pay ACP II $45,000 per month and $605 per flight hour and to pay the program, hangar, and operating costs of the Vision Jet.

333. ACP II kept title to the Vision Jet, its residual value, the right to use the Vision Jet at cost, and the right to terminate the lease on 60 days' notice.

334. ACP II and Aery dated the ACP II Lease November 1, 2023, 34 days after ACP II filed its articles of organization.

335. Talentscale lists in Table 6 the 27 transfers that Aery made to ACP II (the "ACP II Transfers").

**Table 6. The ACP II Transfers**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 11/15/2023 | $200,000.00 | Cogent Bank x0213 | Wire 14 days after the date of the lease |
| 2 | 3/29/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 3 | 4/22/2024 | $45,000.00 | Cogent Bank x6824 | Monthly wire |
| 4 | 5/1/2024 | $25,000.00 | Cogent Bank x6824 | Wire |
| 5 | 5/31/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 6 | 7/1/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 7 | 8/1/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 8 | 9/3/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 9 | 10/1/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire, eight days before the Judgment |
| 10 | 11/4/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the Judgment |
| 11 | 12/3/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the Judgment |
| 12 | 12/30/2024 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the Judgment |
| 13 | 2/5/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the Judgment |
| 14 | 2/12/2025 | $45,750.00 | Cogent Bank x0213 | Wire after the writ of garnishment |
| 15 | 3/4/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the writ of garnishment |
| 16 | 4/1/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the writ of garnishment |
| 17 | 5/6/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the writ of garnishment |
| 18 | 6/2/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire after the writ of garnishment |
| 19 | 7/7/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 20 | 7/8/2025 | $99,206.30 | Cogent Bank x0213 | Wire |
| 21 | 8/4/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 22 | 8/22/2025 | $50,000.00 | Cogent Bank x0213 | Wire |
| 23 | 9/3/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire |

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 24 | 10/9/2025 | $22,733.14 | Cogent Bank x0213 | Wire three days after Boyd's deposition |
| 25 | 10/21/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| 26 | 11/10/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire on the day of Beale's deposition |
| 27 | 12/1/2025 | $45,000.00 | Cogent Bank x0213 | Monthly wire |
| | **Total** | **$1,387,689.44** | | **27 transfers** |

336. Aery made the first ACP II Transfer, $200,000.00, on November 15, 2023, 14 days after the date of the lease. The amount exceeds four months of rent under the lease.

337. Aery's records in Bill.com show 16 bills from ACP II, totaling $336,378.30, for a "Cirrus Jetstream Concierge Program." Aery had paid none of those bills as of July 24, 2025.

338. None of the ACP II Transfers matches the amount of any bill from ACP II in Aery's records in Bill.com.

339. Aery made 18 of the ACP II Transfers, totaling $847,689.44, after the court entered the Judgment.

340. Aery made the five ACP II Transfers of July 7, 2025 through September 3, 2025 in months for which Cogent Bank's statements show a negative balance in Aery's operating account.

341. Aery made every ACP II Transfer on or after June 12, 2022.

342. ACP II is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Beale, who owns 55% of Aery and controls it, owns ACP II directly or through ACP, and Aery operates ACP II's aircraft under the ACP II Lease.

### F. Aery transferred a Gulfstream G-IV aircraft and $1,239,805.12 to Fast Bird.

343. On July 19, 2023, Aery transferred title to its 1988 Gulfstream G-IV aircraft, registration N307EW, to Fast Bird.

344. Insured Aircraft Title Service, LLC served as escrow agent for the closing. Fast Bird acquired a second Gulfstream G-IV aircraft, registration N432HC, at the same closing.

345. Aery's amended federal income tax return for 2023 identifies N432HC as an aircraft that Aery acquired on September 1, 2020 and sold on July 19, 2023.

346. The same return reports gross sales prices of $5,390,000 and $4,410,000 for the two Gulfstream G-IV aircraft that Aery sold on July 19, 2023, a total of $9,800,000.

347. Independent Bank financed Fast Bird's purchase of both aircraft with closing wires that totaled $8,006,000.00. Talentscale does not allege that the difference between that amount and the reported sales prices measures a shortfall in what Fast Bird paid.

348. Beale testified on November 10, 2025 that the aircraft carried debt and that he did not recall the flow of funds from the closing. The escrow agent holds the records of how it disbursed the purchase price and how much of it Aery received.

349. On July 18, 2023, Beale, writing as Aery's Executive Vice President and Chief Operating Officer, told the lender that "Aery Aviation owes a deposit as part of the lease in the amount of $600,000" and asked that the escrow agent "disburse $600,000 to IBTX at closing for the lease deposits which would meet the reserve requirement of $400,000."

350. On July 19, 2023, Beale proposed that the escrow agent debit a closing shortfall of $53,895.37 "from our Fast Bird account at IBTX."

351. Under the N307EW Lease, Aery agreed to pay Fast Bird $132,000 per month for 60 months beginning August 1, 2023, a total of $7,920,000. Aery bears the operating costs of the aircraft.

352. Aery uses N307EW to perform its contract with the Naval Air Warfare Center.

353. Boyd testified on October 6, 2025 that "Fast Bird is an aircraft leasing entity that Scott Beale is a principal" and that Aery "sold and leased those aircraft back."

354. On September 14, 2022, Walton had written to Talentscale that the refinance of two Gulfstream G-IV aircraft and the sale of a third "are

providing a path to resolve the current AP bottleneck." Aery has paid Talentscale nothing since January 20, 2023.

355. Talentscale lists in Table 7 the 11 transfers of money that Aery made to Fast Bird (together with the transfer of N307EW, the "Fast Bird Transfers").

**Table 7. The Fast Bird Transfers of money**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 9/11/2023 | $200,000.00 | Cogent Bank x0213 | Wire to Fast Bird |
| 2 | 10/6/2023 | $200,000.00 | Cogent Bank x0213 | Wire to Fast Bird |
| 3 | 12/4/2023 | $200,000.00 | Cogent Bank x0213 | Wire to Fast Bird |
| 4 | 3/8/2024 | $164,172.72 | Cogent Bank x0213 | Wire to Fast Bird |
| 5 | 5/31/2024 | $49,857.00 | Cogent Bank x0213 | Wire to Fast Bird |
| 6 | 7/1/2024 | $49,857.00 | Cogent Bank x0213 | Wire to Fast Bird |
| 7 | 9/23/2024 | $47,844.78 | Cogent Bank x0213 | Wire to Fast Bird |
| 8 | 10/18/2024 | $45,659.85 | Cogent Bank x0213 | Wire to Fast Bird after the Judgment |
| 9 | 2/7/2025 | $43,965.24 | Cogent Bank x0213 | Wire to Fast Bird after the Judgment |
| 10 | 3/31/2025 | $38,448.53 | Cogent Bank x0213 | Wire to Fast Bird 20 days after Fast Bird's subpoena response |
| 11 | 5/27/2025 | $200,000.00 | Cogent Bank x0213 | Wire to Fast Bird four days after the hearing of May 23, 2025 |
| | **Total** | **$1,239,805.12** | | **11 transfers** |

356. Aery created Fast Bird as a vendor in Bill.com on September 12, 2023, the day after the first wire of $200,000.00. Aery has produced no invoice from Fast Bird for any of the 11 wires.

357. On March 11, 2025, Fast Bird served written responses to a subpoena that Talentscale issued in the United States District Court for the Northern District of Florida. Fast Bird stated that it "does not have any records of wire transfers, ACH transfers, or any other funds involving accounts held by or for the benefit of Aery Aviation, LLC" and "does not have any loans or financing arrangements between it and Aery Aviation, LLC."

358. By March 11, 2025, Fast Bird had received nine wires from Aery's account at Cogent Bank.

359. Fast Bird received $38,448.53 from Aery on March 31, 2025, 20 days after Fast Bird served its responses.

360. Fast Bird received $200,000.00 from Aery on May 27, 2025, four days after Aery's counsel told the United States District Court for the Northern District of Florida that "Aery just doesn't have it." Cogent Bank's statement shows that Aery's operating account was overdrawn by $225,000.00 after that wire.

361. Boyd asked Cogent Bank to send that $200,000.00 to Fast Bird on May 23, 2025, the day of the hearing.

362. Aery made four of the transfers of money to Fast Bird, totaling $328,073.62, after the court entered the Judgment.

363. Aery made each Fast Bird Transfer on or after June 12, 2022.

364. Fast Bird is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Beale, who owns 55% of Aery and controls it, owns 50% of Fast Bird and is one of its two managing members.

## G. Aery made 13 transfers totaling $2,069,986.71 to Aerodrome or for its benefit.

365. Aerodrome holds title to a hangar of 60,000 square feet at 1009 Providence Boulevard, Newport News, Virginia (the "Hangar").

366. Aerodrome's members authorized Beale, as Manager, to borrow $7,703,000 and $4,864,000 from Capital Bank for the Hangar. Aery guaranteed those loans.

367. Beale signed the hangar lease dated March 29, 2022 for Aerodrome as Manager, and Walton signed it for Aery. Under Section 3 of the lease, Aery's rent "is limited to and calculated as follows" and consists of Aerodrome's debt service to Capital Bank and the Small Business Administration plus taxes, association fees, utilities, insurance, and reserves.

368. Aery is Aerodrome's only tenant. Aerodrome has no income other than from Aery.

369. Talentscale lists in Table 8 the 13 transfers that Aery made to Aerodrome or for its benefit (the "Aerodrome Transfers").

**Table 8. The Aerodrome Transfers**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 2/5/2021 | $12,500.00 | Bank of America x8049 | Payment to W.M. Jordan, Aerodrome's contractor for the Hangar |
| 2 | 5/3/2021 | $39,984.29 | Bank of America x8049 | Payment to W.M. Jordan |
| 3 | 7/20/2021 | $80,419.34 | Bill.com | Payment to W.M. Jordan |
| 4 | 7/28/2021 | $50,000.00 | Bank of America x8049 | Capital Bank loan commitment fee for Aerodrome |
| 5 | 8/27/2021 | $76,648.87 | Bill.com | Payment to W.M. Jordan |
| 6 | 10/26/2021 | $12,400.54 | Bank of America x8049 | Payment to W.M. Jordan |
| 7 | 1/13/2022 | $74,167.65 | Bill.com | Payment to W.M. Jordan |
| 8 | 6/21/2022 | $1,399,414.51 | Capital Bank x7587 (credit) | Credit to Aerodrome's account ending in 7587 at Capital Bank |
| 9 | 8/30/2024 | $80,742.22 | Cogent Bank x0213 | August rent to Aerodrome's account ending in 1683 at Cogent Bank |
| 10 | 9/30/2024 | $82,866.30 | Cogent Bank x0213 | September rent to the account ending in 1683 |
| 11 | 10/31/2024 | $78,400.00 | Cogent Bank x0213 | Rent after the Judgment, memo "RENT FOR PHF HQ" |
| 12 | 11/5/2024 | $5,000.00 | Cogent Bank x0213 | Transfer to the account ending in 1683 after the Judgment, memo "DAVIS LAW LEGAL FEE" |
| 13 | 11/27/2024 | $77,442.99 | Cogent Bank x0213 | December rent after the Judgment |
| | **Total** | **$2,069,986.71** | | **13 transfers** |

370. Aery paid $296,120.69 to W.M. Jordan, Aerodrome's contractor for the Hangar, through six of the Aerodrome Transfers.

371. On January 1, 2023, Beale described those payments to Capital Bank as "prepaid construction costs that Aery Aviation made in advance."

372. Aery paid a loan commitment fee of $50,000.00 to Capital Bank for Aerodrome on July 28, 2021.

373. With each payment to W.M. Jordan and to Capital Bank, Aery paid an obligation that Aerodrome owed as the owner of the Hangar and the borrower on the construction loans.

374. Aery paid rent of $319,451.51 into Aerodrome's account ending in 1683 at Cogent Bank through four of the Aerodrome Transfers between August 30, 2024 and November 27, 2024.

375. Boyd testified on October 6, 2025 that Aerodrome is a "Single purpose entity" that "owns a real estate building that Aery leases."

376. Aery's federal income tax returns list a receivable described as "DUE FROM AERODROME" of $456,734 at the end of 2021, $508,554 at the end of 2022, and $549,500 at the end of 2023.

377. Aery's balance sheet as of December 31, 2024 lists $476,507.42 as "Due From Aerodrome Properties."

378. Aery made three of the Aerodrome Transfers, totaling $160,842.99, after the court entered the Judgment.

379. Aery made six of the Aerodrome Transfers, totaling $1,723,866.02, on or after June 12, 2022. Aery made the other seven, totaling $346,120.69, before that date.

380. Aerodrome is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Beale owns 25% of Aerodrome and manages it, the four members of Aery own Aerodrome, and Aery is Aerodrome's only tenant.

### H. At Beale's request, Prudent Capital III, LP released $1,399,414.51 from Aery's account to Aerodrome.

381. On June 21, 2022, at Beale's request, Prudent Capital III, LP released $2,229,388.71 from Aery's account ending in 9918 at Capital Bank to Fast Bird.

382. Aery booked the payment as a receivable from Fast Bird under the memo "Record transfer to Fast Bird from Prudent Capital."

383. On the same day, Fast Bird, Rubis, and Beale directed $829,974.20 of that money to Independent Financial to pay off Fast Bird's loan on a Citation X aircraft, registration N513JB.

384. On the same day, Capital Bank credited the other $1,399,414.51 to Aerodrome's account ending in 7587 (the "Aerodrome Equity Transfer"). The Aerodrome Equity Transfer is No. 8 in Table 8.

385. On June 22, 2022, Aerodrome wired $1,346,300.00 to the settlement agent for its loans on the Hangar toward the equity contribution of $1,396,300.00 that the Small Business Administration required.

386. On March 16, 2023, Beale wrote to Prudent Capital III, LP that the "Aery Reserve Account Loan" of $2,229,388.71 had gone "(829,974.20) Amount t Payoff IBTX debt / ($1,399,414.51) To Capital Bank for Equity on hangar."

387. Aerodrome booked the $1,399,414.51 as "Note Payable Scott Beale."

388. On October 23, 2023, Beale wrote to Aerodrome's counsel that "Steven Schwartz allowed Aerodrome to use $1.4M from the cash reserve account at Capital Bank. I / Fast bird signed a Promissory Note in exchange."

389. On October 24, 2023, Beale wrote to Aerodrome's other members that "we never executed the Aerodrome Properties, LLC loan documents as intended last May (2022)" and asked for "your immediate and swift action to resolve the lack of signatures."

390. In the same email, Beale proposed that Aerodrome pay him "$16,940.97 monthly (8% over 10 years, fully amortizing)" beginning January 1, 2024 and wrote that "Aerodrome will pass those loan payments to Aery for payment."

391. On December 21, 2023, Beale described the money to Aery's auditors as "my personal $1.4 million in equity to Aerodrome properties on May 31, 2022."

392. Neither Beale nor Aerodrome has produced an executed note between them.

393. Fast Bird repaid the $2,229,388.71 on March 20, 2023 from the proceeds of its sale of N513JB.

394. Beale is the person for whose benefit Aery made the Aerodrome Equity Transfer because Aerodrome booked the money as a debt that it owes to Beale.

## I. Aery paid $3,607,149.54 for aircraft that GH Equipment holds in its own name.

395. Aery and Greg Holloway formed GH Equipment on June 22, 2021 as "a single purpose entity organized for the sole purpose of acquiring the assets of Flight International Aviation, LLC."

396. Aery held 93.458% of GH Equipment at formation. Aery became the sole member of GH Equipment under a First Amendment to its operating agreement dated October 11, 2021.

397. GH Equipment holds title to Learjet aircraft that Aery operates. GH Equipment has no employees and conducts no flight operations.

398. A summary of related party transactions in Aery's audit records shows GH Equipment's aircraft as "purchased with debt on behalf of Aery Aviation" and as "purchased from incumbent in order to avoid Aery."

399. Talentscale lists in Table 9 the five payments that Aery recorded in its general ledger for 2021 to the title company for the aircraft (the "GH Equipment Transfers").

**Table 9. The GH Equipment Transfers**

| No. | Date | Amount | Source | Description |
|---|---|---|---|---|
| 1 | 8/23/2021 | $280,135.63 | Cogent Bank x0213 | Wire to the title company for aircraft titled to GH Equipment |
| 2 | 9/17/2021 | $1,098,357.01 | Cogent Bank x0213 | Wire to the title company for aircraft titled to GH Equipment |
| 3 | 9/23/2021 | $906,003.32 | Cogent Bank x0213 | Wire to the title company for aircraft titled to GH Equipment |
| 4 | 10/1/2021 | $322,653.58 | Cogent Bank x0213 | Wire to the title company for aircraft titled to GH Equipment |
| 5 | 10/1/2021 | $1,000,000.00 | Cogent Bank x0213 | Wire to the title company for aircraft titled to GH Equipment |
| | **Total** | **$3,607,149.54** | | **Five transfers** |

400. Aery paid the purchase price of the aircraft, and GH Equipment took title to the aircraft in its own name.

401. Aery has produced no promissory note from GH Equipment for the money that Aery paid.

402. GH Equipment signed the loan documents with Cogent Bank as a borrower separate from Aery and pledged the aircraft to Cogent Bank.

403. Aery made each GH Equipment Transfer before June 12, 2022.

404. GH Equipment is an insider of Aery within the meaning of Fla. Stat. § 726.102(8) because Aery owns GH Equipment and operates its aircraft.

### J. Beale acquired and improved two Florida properties while Aery made the transfers.

405. In his Personal Financial Statement dated November 3, 2022, Beale identified his homestead as 6674 Gates Mills Boulevard, Gates Mills, Ohio and listed 127 Gulfport Court as other real estate with a cost of $2,100,000 and a value of $3,200,000.

406. Beale purchased 127 Gulfport Court for $1,250,000, received a deed dated March 19, 2022, and built a residence on that property. The cost that Beale reported on November 3, 2022 is $850,000 more than that price.

407. Beale paid for the improvements to 127 Gulfport Court in part with money that Aery transferred to him and to ACP.

408. Beale wrote on March 10, 2022 that he expected to complete the residence in mid-2023, as alleged in paragraph 35. By May 5, 2025, Beale gave 127 Gulfport Court to Cogent Bank as his address.

409. Between June 12, 2022 and December 31, 2024, Aery made 32 transfers totaling $2,379,920.33 to Beale and ACP, which Talentscale lists in

Tables 3, 4, and 5. That money was available to Beale while he built the residence and after he completed it. Talentscale does not allege that Beale spent all of that money on the residence.

410. Beale, his lender, and his builder hold the records of the date, amount, and source of each payment for those improvements.

411. Beale paid $550,000 for his interest in 8334 Rimini Way, Naples, Florida under the deed dated September 27, 2023.

412. Beale took that deed 69 days after Aery's wire of $426,023.92 to ACP on July 20, 2023 and 26 days after Aery's wire of $480,995.82 to "SCOTT AVIATION CAPITAL PARTNERS LLC" on September 1, 2023.

413. The title company's file for the purchase of 8334 Rimini Way shows a wire from ACP on August 29, 2023.

414. Beale paid for his interest in 8334 Rimini Way in part with money that Aery transferred to ACP.

415. Aery received no interest in either property.

416. Beale resides at 127 Gulfport Court. Florida law exempts a homestead from forced sale by creditors. Fla. Const. art. X, § 4(a)(1).

## K. Talentscale learned of the transfers that Aery made before June 12, 2022 through discovery in aid of execution in 2025.

417. Talentscale filed its original Complaint in this action on June 12, 2026.

418. Aery and Defendants did not disclose to Talentscale the transfers that Aery made before June 12, 2022.

419. Aery served its Fact Information Sheet and the records that the form requires after the order of October 27, 2025, as alleged in paragraphs 224-230.

420. On June 27, 2025, Talentscale issued a subpoena to Bill.com, LLC. Bill.com, LLC produced Aery's payment records in response.

421. Talentscale deposed Boyd on October 6, 2025 and Beale on November 10, 2025. At those depositions, Aery's officers first explained the entries in Aery's records of the transfers.

422. Talentscale did not discover the transfers that Aery made before June 12, 2022, and could not reasonably have discovered them, until Talentscale obtained and reviewed those records and that testimony.

**COUNT I**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Scott Beale)**

423. Talentscale incorporates as if fully set forth herein paragraphs 1-19, 151-309, 381-394, and 405-422.

424. Aery made the Beale Transfers, the Morgan Stanley Wires, and the Aerodrome Equity Transfer to Beale or for his benefit. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

425. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

426. Beale is an insider of Aery. Fla. Stat. § 726.105(2)(a).

427. Aery received no reasonably equivalent value for those transfers. Aery made them as distributions, as payments of Beale's personal income taxes, as wires for which Aery has produced no invoice or agreement, and as equity that Aerodrome booked as a debt to Beale. Aery reported no loans from Beale in its tax returns for 2022 through 2024. Fla. Stat. § 726.105(2)(h).

428. Aery made 22 of those transfers after Talentscale obtained the Judgment. Fla. Stat. § 726.105(2)(d).

429. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

430. Aery promised Talentscale payment in full on May 25, 2022 and February 8, 2023 and has paid Talentscale nothing since January 20, 2023, while Aery continued to make transfers to Beale.

431. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Five days after Talentscale moved for a writ of garnishment to Cogent Bank,

Aery asked a customer to send its payments to an account that Cogent Bank holds in its own name, as alleged in paragraph 237. Fla. Stat. § 726.105(2)(g).

432. Beale, who owns 55% of Aery, testified that he would not ask Aery's Chief Financial Officer to prioritize payment of the Judgment, as alleged in paragraph 261. Aery made five more transfers to Beale, ACP, and ACP II after that testimony.

433. Talentscale brings this Count within four years after Aery made each transfer that Aery made on or after June 12, 2022, and within one year after Talentscale discovered or could reasonably have discovered each transfer that Aery made before that date. Fla. Stat. § 726.110(1).

434. Beale is the first transferee of each of those transfers that Aery paid to Beale's own account, including each of the 37 Morgan Stanley Wires, which Aery sent to the account that Beale holds. Beale is the person for whose benefit Aery made each payment of Beale's income taxes and the Aerodrome Equity Transfer. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP and a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

435. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Beale under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT II**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(b)**
**(Against Defendant Scott Beale, in the Alternative)**

436. Talentscale incorporates as if fully set forth herein paragraphs 1-19, 151-163, 177-202, 266-309, and 381-394.

437. Talentscale pleads this Count in the alternative to Count I and only as to the six Beale Transfers that Aery made on or after June 12, 2022, totaling $236,115.96, the 37 Morgan Stanley Wires, totaling $1,613,845.11, and the Aerodrome Equity Transfer of $1,399,414.51. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

438. Aery made each of those transfers without receiving a reasonably equivalent value in exchange. Aery received no property in exchange for those transfers, and Aery paid Beale a salary for his services during the same period.

439. When Aery made each of those transfers, Aery was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Fla. Stat. § 726.105(1)(b).

440. Beale is the first transferee of each of those transfers that Aery paid to Beale's own account, including each of the 37 Morgan Stanley Wires, which Aery sent to the account that Beale holds. Beale is the person for whose benefit Aery made each payment of Beale's income taxes and the Aerodrome Equity Transfer. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP and a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

441. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Beale under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT III**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Scott Beale, in the Alternative)**

442. Talentscale incorporates as if fully set forth herein paragraphs 1-19, 151-163, 177-202, 266-309, and 381-394.

443. Talentscale pleads this Count in the alternative to Count I and only as to the six Beale Transfers that Aery made on or after June 12, 2022, totaling $236,115.96, the 37 Morgan Stanley Wires, totaling $1,613,845.11, and the Aerodrome Equity Transfer of $1,399,414.51. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

444. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers. Aery made each of those transfers without receiving a reasonably equivalent value in exchange.

445. Aery was insolvent when it made each of those transfers or became insolvent as a result. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2). Fla. Stat. § 726.106(1).

446. Beale is the first transferee of each of those transfers that Aery paid to Beale's own account, including each of the 37 Morgan Stanley Wires, which Aery sent to the account that Beale holds. Beale is the person for whose benefit Aery made each payment of Beale's income taxes and the Aerodrome Equity Transfer. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP and a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

447. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Beale under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT IV**
**Transfer to an Insider for an Antecedent Debt**
**Fla. Stat. § 726.106(2)**
**(Against Defendant Scott Beale, in the Alternative)**

448. Talentscale incorporates as if fully set forth herein paragraphs 1-19, 151-202, 266-274, 278-280, 282, 286, 288-312, 325, and 331.

449. Talentscale pleads this Count in the alternative to Count I and only as to the 12 transfers that Aery made to Beale on or after June 12, 2025, which are the wire of August 15, 2025 in Table 3 and the 11 Morgan Stanley Wires that Aery sent to Beale's account from July 7, 2025 through December 23, 2025, totaling $638,257.19. Aery made each of those transfers within one year before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(3).

450. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers.

451. Beale is an insider of Aery within the meaning of Fla. Stat. § 726.102(8).

452. In the alternative to its allegation that Aery received no reasonably equivalent value, Talentscale alleges that Aery made each of those transfers to Beale for an antecedent debt. Fla. Stat. § 726.106(2).

453. The antecedent debt is rent that Aery owed for the aircraft that it leases from ACP. Beale testified on November 10, 2025 that the monthly lease

payment to ACP is $30,000, that Aery had missed payments to ACP since 2021, and that Aery was then $300,000 to $400,000 behind on those payments, as alleged in paragraphs 192 and 301.

454. Aery sent six of those 12 transfers as wires of $30,000.00, the amount that Beale described as the monthly lease payment to ACP. Aery sent the other six in other amounts. Aery wired $35,000.00 on July 16, 2025, $31,106.25 on August 15, 2025, $77,583.17 on August 19, 2025, $78,878.00 on September 16, 2025, $156,232.17 on November 26, 2025, and $79,457.60 on December 23, 2025.

455. Aery sent the wire of August 15, 2025 to a beneficiary that the wire record names as "SCOTT BEALE / AVIATION CAPITAL PART" and sent the other 11 transfers to the Morgan Stanley account that Beale holds.

456. Beale received each of those transfers for ACP as its sole member and manager. The Morgan Stanley account that Beale holds is the account that Aery kept on file for ACP, as alleged in paragraph 300. Under this alternative, Beale is the insider to whom Aery made each transfer, and the rent that Aery owed ACP is the antecedent debt for which Aery made it.

457. In the further alternative, Aery made each of those transfers to Beale for a debt that Aery owed Beale himself, which is the commission that Aery agreed to pay Beale in the Amendment to Employment Agreement effective April 5, 2021. Beale listed a "Commission/ Bonus" of $325,000 for 2022

and projected $400,000 for 2023, as alleged in paragraph 273. Aery's ledgers for 2021 and 2022 show no new commission accrual for Beale after June 30, 2021.

458. Talentscale alleges no loan from Beale to Aery in this Count. Aery reported no loans from shareholders in its tax returns for 2022 through 2024, as alleged in paragraph 302.

459. Aery was insolvent when it made each of those transfers. Beale testified on November 10, 2025 that Aery had been insolvent during the preceding six to 12 months. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2).

460. Aery made each of the 12 transfers after the Judgment, and Aery made three of them after Beale testified that he would not ask Aery to prioritize the Judgment.

461. Beale had reasonable cause to believe that Aery was insolvent. Beale owned 55% of Aery, served as its Chief Operating Officer and its President, had access to its bank balances and accounting system, and received Henderson's email of June 17, 2025 about Aery's overdrawn account. Beale knew that Aery had missed payments to ACP since 2021, as alleged in paragraph 192.

462. Beale is the first transferee of each of those transfers. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Beale under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT V**
**Fraudulent Asset Conversion**
**Fla. Stat. § 222.30**
**(Against Defendant Scott Beale)**

463. Talentscale incorporates as if fully set forth herein paragraphs 1-19, 151-176, 203-223, 266-331, and 405-416.

464. Talentscale holds a claim against Beale for the transfers that Aery made to Beale or for his benefit, and Beale is a debtor of Talentscale under the definitions of chapter 726 that Fla. Stat. § 222.30(1) incorporates.

465. Beale received and controlled the money that Aery transferred to him and to ACP.

466. Beale converted part of that money into improvements to 127 Gulfport Court, Marco Island, Florida, the residence that Beale occupies. The money was not exempt from the claims of Beale's creditors, and Florida law exempts a homestead from forced sale by creditors. Fla. Const. art. X, § 4(a)(1).

467. Beale paid for those improvements after March 19, 2022, when he bought the property. Aery made 32 transfers totaling $2,379,920.33 to Beale

and ACP between June 12, 2022 and December 31, 2024, and that money was available to Beale to pay for the improvements.

468. Talentscale challenges in this Count each payment for those improvements that Beale made on or after June 12, 2022 with money that Aery transferred to him or to ACP. Talentscale does not allege that Beale spent all of that money on the residence. Beale, his lender, and his builder hold the records that identify each payment and its source.

469. Beale made each conversion with the intent to hinder, delay, or defraud Talentscale. Fla. Stat. § 222.30(2).

470. Beale controlled Aery, wrote to Talentscale about Aery's unpaid invoices on May 25, 2022, received the transfers while Aery left Talentscale unpaid, and identified an Ohio homestead on November 3, 2022 while he improved 127 Gulfport Court.

471. Talentscale is entitled to avoidance of each conversion to the extent necessary to satisfy its claim and to an equitable lien and a constructive trust on 127 Gulfport Court to the extent of the converted money. Fla. Stat. § 222.30(3).

**COUNT VI**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Aviation Capital Partners, LLC)**

472. Talentscale incorporates as if fully set forth herein paragraphs 1-20, 76-93, 151-273, 289-331, and 417-422.

473. Aery made the ACP Transfers to ACP and the ACP Morgan Stanley Wires for the benefit of ACP. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

474. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

475. Aery made the ACP Transfers of July 23, 2020 and November 19, 2020 before Talentscale and Aery entered into their staffing agreement in January 2021. Fla. Stat. § 726.105(1) reaches a transfer that a debtor made with actual intent to hinder, delay, or defraud any creditor, whether the claim of the creditor who sues arose before or after the transfer.

476. Aery made those two transfers with actual intent to hinder, delay, or defraud its creditors. Aery paid "commissions" for Beale to a company that Beale owns while the Executive Employment Agreement limited Beale's compensation to a membership interest, a salary, and reimbursement of expenses. Aery paid the money outside its payroll, and Aery has produced no document that identifies who approved the payments.

477. Walton testified that Aery has been financially challenged since COVID-19 restrictions took effect, as alleged in paragraph 191.

478. ACP is an insider of Aery. Fla. Stat. § 726.105(2)(a).

479. Aery received no reasonably equivalent value for those transfers. Aery paid "commissions" to ACP that no agreement entitled ACP to receive, paid 12 bills of the vendor "Scott Beale-V" to ACP, sent ACP a wire in the amount of Beale's distribution for 2023, sent ACP a wire under the memo "VISION JET LEASE" although ACP II leases the Vision Jet, paid ACP for an item that Aery's ledger shows Aery had already paid, and paid ACP $574,945.00 in 2022 under aircraft leases that Beale signed for ACP and for which Aery has identified no independent valuation. Fla. Stat. § 726.105(2)(h).

480. Aery made the ACP Transfers of July 16, 2025 and December 12, 2025 and the ACP Morgan Stanley Wire of December 27, 2024 after Talentscale obtained the Judgment. Fla. Stat. § 726.105(2)(d).

481. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

482. Aery promised Talentscale payment in full on May 25, 2022 and February 8, 2023 and has paid Talentscale nothing since January 20, 2023, while Aery continued to make transfers to ACP.

483. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Five days after Talentscale moved for a writ of garnishment to Cogent Bank, Aery asked a customer to send its payments to an account that Cogent Bank holds in its own name, as alleged in paragraph 237. Fla. Stat. § 726.105(2)(g).

484. Beale, who owns 55% of Aery, testified that he would not ask Aery's Chief Financial Officer to prioritize payment of the Judgment, as alleged in paragraph 261. Aery made five more transfers to Beale, ACP, and ACP II after that testimony.

485. Talentscale brings this Count within four years after Aery made each transfer that Aery made on or after June 12, 2022, and within one year after Talentscale discovered or could reasonably have discovered each transfer that Aery made before that date. Fla. Stat. § 726.110(1).

486. ACP is the first transferee of each ACP Transfer. ACP is the person for whose benefit Aery made each ACP Morgan Stanley Wire because Aery recorded each as a payment to ACP and sent it to the Morgan Stanley account that Aery kept on file for ACP, which Beale holds. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT VII**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(b)**
**(Against Defendant Aviation Capital Partners, LLC, in the Alternative)**

487. Talentscale incorporates as if fully set forth herein paragraphs 1-20, 76-93, 151-163, 177-202, 266-273, and 289-331.

488. Talentscale pleads this Count in the alternative to Count VI and only as to the nine ACP Transfers that Aery made on or after June 12, 2022, totaling $1,380,609.50, and the four ACP Morgan Stanley Wires, totaling $247,551.28. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

489. Aery made each of those transfers without receiving a reasonably equivalent value in exchange. Aery paid 12 bills of the vendor "Scott Beale-V" to ACP, sent ACP a wire in the amount of Beale's distribution for 2023, sent ACP a wire under the memo "VISION JET LEASE" although ACP II leases the Vision Jet, booked the wire of November 14, 2022 without identifying what the wire paid, paid ACP for an item that Aery's ledger shows Aery had already paid, and paid ACP $150,000.00 on June 15, 2022 under aircraft leases that Beale signed for ACP and for which Aery has identified no independent valuation.

490. When Aery made each of those transfers, Aery was engaged or was about to engage in a business or a transaction for which its remaining assets

were unreasonably small in relation to the business or transaction, or Aery intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Fla. Stat. § 726.105(1)(b).

491. ACP is the first transferee of each ACP Transfer. ACP is the person for whose benefit Aery made each ACP Morgan Stanley Wire because Aery recorded each as a payment to ACP and sent it to the Morgan Stanley account that Aery kept on file for ACP, which Beale holds. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT VIII**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Aviation Capital Partners, LLC, in the Alternative)**

492. Talentscale incorporates as if fully set forth herein paragraphs 1-20, 76-93, 151-163, 177-202, 266-273, and 289-331.

493. Talentscale pleads this Count in the alternative to Count VI and only as to the nine ACP Transfers that Aery made on or after June 12, 2022, totaling $1,380,609.50, and the four ACP Morgan Stanley Wires, totaling

$247,551.28. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

494. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers. Aery made each of those transfers without receiving a reasonably equivalent value in exchange.

495. Aery was insolvent when it made each of those transfers or became insolvent as a result. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2). Fla. Stat. § 726.106(1).

496. ACP is the first transferee of each ACP Transfer. ACP is the person for whose benefit Aery made each ACP Morgan Stanley Wire because Aery recorded each as a payment to ACP and sent it to the Morgan Stanley account that Aery kept on file for ACP, which Beale holds. Fla. Stat. § 726.109(2)(a). Talentscale seeks a single recovery of the ACP Morgan Stanley Wires from Beale and ACP. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT IX**
**Transfer to an Insider for an Antecedent Debt**
**Fla. Stat. § 726.106(2)**
**(Against Defendant Aviation Capital Partners, LLC, in the Alternative)**

497. Talentscale incorporates as if fully set forth herein paragraphs 1-20, 76-93, 151-202, and 310-331.

498. Talentscale pleads this Count in the alternative to Count VI and only as to the two ACP Transfers that Aery made on or after June 12, 2025, which are the payment of July 16, 2025 and the wire of December 12, 2025, totaling $52,039.34. Aery made each of those transfers within one year before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(3).

499. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers.

500. ACP is an insider of Aery within the meaning of Fla. Stat. § 726.102(8).

501. In the alternative to its allegation that Aery received no reasonably equivalent value, Talentscale alleges that Aery made each of those transfers on account of an antecedent debt that Aery owed ACP. On May 5, 2025, Aery and Beale identified a revolving line of credit note to ACP in the amount of $4,000,000.00 as Aery's insider debt. With the payment of July 16, 2025, Aery paid ACP for two items that ACP dated in 2022. Beale testified that

Aery was $300,000 to $400,000 behind on its payments to ACP, as alleged in paragraph 192. Fla. Stat. § 726.106(2).

502. Aery was insolvent when it made each of those transfers. Beale testified on November 10, 2025 that Aery had been insolvent during the preceding six to 12 months. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2).

503. Aery made both transfers after the Judgment, and Aery made the wire of December 12, 2025 after Beale testified that he would not ask Aery to prioritize the Judgment.

504. ACP had reasonable cause to believe that Aery was insolvent. ACP acts through Beale, its manager, who owned 55% of Aery, served as its Chief Operating Officer and its President, had access to its bank balances and accounting system, and received Henderson's email of June 17, 2025 about Aery's overdrawn account.

505. ACP is the first transferee of each of those transfers. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT X**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Aviation Capital Partners II, LLC)**

506. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 21, 94-108, 151-206, 208-213, 215-221, 223-265, and 332-342.

507. Aery made the ACP II Transfers to ACP II. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

508. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

509. ACP II is an insider of Aery. Fla. Stat. § 726.105(2)(a).

510. Aery retained possession and use of the Vision Jet while ACP II kept title to it. Fla. Stat. § 726.105(2)(b).

511. Aery received no reasonably equivalent value for those transfers. Aery paid $200,000.00 to ACP II 14 days after the date of the lease, and Aery made monthly payments under a lease that Beale negotiated for ACP II and that left ACP II with title, the residual value, and the right to use the Vision Jet. Fla. Stat. § 726.105(2)(h).

512. Aery made 18 of the ACP II Transfers after Talentscale obtained the Judgment and 14 of them after a federal court in Florida issued a writ of garnishment to Cogent Bank. Fla. Stat. § 726.105(2)(d).

513. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

514. Aery promised Talentscale payment in full on May 25, 2022 and February 8, 2023 and has paid Talentscale nothing since January 20, 2023, while Aery continued to make transfers to ACP II.

515. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Five days after Talentscale moved for a writ of garnishment to Cogent Bank, Aery asked a customer to send its payments to an account that Cogent Bank holds in its own name, as alleged in paragraph 237. Fla. Stat. § 726.105(2)(g).

516. Beale, who owns 55% of Aery, testified that he would not ask Aery's Chief Financial Officer to prioritize payment of the Judgment, as alleged in paragraph 261. Aery made five more transfers to Beale, ACP, and ACP II after that testimony.

517. Talentscale brings this Count within four years after Aery made each of those transfers. Fla. Stat. § 726.110(1).

518. ACP II is the first transferee of each ACP II Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent

necessary to satisfy its claim and to a money judgment against ACP II under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XI**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(b)**
**(Against Defendant Aviation Capital Partners II, LLC, in the Alternative)**

519. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 21, 94-108, 151-163, 177-202, and 332-342.

520. Talentscale pleads this Count in the alternative to Count X and only as to the 27 ACP II Transfers, totaling $1,387,689.44. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

521. Aery made each of those transfers without receiving a reasonably equivalent value in exchange. Aery paid $200,000.00 to ACP II 14 days after the date of the lease, and Aery made monthly payments under a lease that left ACP II with title, the residual value, and the right to use the Vision Jet.

522. When Aery made each of those transfers, Aery was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Fla. Stat. § 726.105(1)(b).

523. ACP II is the first transferee of each ACP II Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP II under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XII**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Aviation Capital Partners II, LLC, in the Alternative)**

524. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 21, 94-108, 151-163, 177-202, and 332-342.

525. Talentscale pleads this Count in the alternative to Count X and only as to the 27 ACP II Transfers, totaling $1,387,689.44. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

526. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers. Aery made each of those transfers without receiving a reasonably equivalent value in exchange.

527. Aery was insolvent when it made each of those transfers or became insolvent as a result. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2). Fla. Stat. § 726.106(1).

528. ACP II is the first transferee of each ACP II Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP II under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XIII**
**Transfer to an Insider for an Antecedent Debt**
**Fla. Stat. § 726.106(2)**
**(Against Defendant Aviation Capital Partners II, LLC, in the Alternative)**

529. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 21, 94-108, 151-202, and 332-342.

530. Talentscale pleads this Count in the alternative to Count X and only as to the nine ACP II Transfers that Aery made on or after June 12, 2025, totaling $441,939.44. Aery made each of those transfers within one year before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(3).

531. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers.

532. ACP II is an insider of Aery within the meaning of Fla. Stat. § 726.102(8).

533. In the alternative to its allegation that Aery received no reasonably equivalent value, Talentscale alleges that Aery made each of those transfers on account of an antecedent debt that Aery owed ACP II. Aery owed ACP II monthly payments under the ACP II Lease dated November 1, 2023,

and Beale testified that Aery was behind on those payments, as alleged in paragraph 192. Fla. Stat. § 726.106(2).

534. Aery was insolvent when it made each of those transfers. Beale testified on November 10, 2025 that Aery had been insolvent during the preceding six to 12 months. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2).

535. Three of those nine transfers were not monthly wires of $45,000.00. Aery wired ACP II $99,206.30 on July 8, 2025, $50,000.00 on August 22, 2025, and $22,733.14 on October 9, 2025.

536. Aery made each of the nine transfers after the Judgment, under a lease that Beale negotiated for ACP II while Beale controlled Aery.

537. ACP II had reasonable cause to believe that Aery was insolvent. ACP II acts through Beale, who negotiated the ACP II Lease for ACP II and who owned 55% of Aery, served as its Chief Operating Officer and its President, had access to its bank balances and accounting system, and received Henderson's email of June 17, 2025 about Aery's overdrawn account.

538. ACP II is the first transferee of each of those transfers. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against ACP II under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XIV**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Fast Bird, LLC)**

539. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 22, 109-123, 151-206, 208-213, 215-221, 223-265, and 343-364.

540. Aery made the Fast Bird Transfers to Fast Bird. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

541. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

542. Fast Bird is an insider of Aery. Fla. Stat. § 726.105(2)(a).

543. Aery told Talentscale on September 14, 2022 that the refinance and sale of its Gulfstream G-IV aircraft would provide a path to pay its unpaid accounts. Aery then transferred N307EW to Fast Bird on July 19, 2023 and paid Talentscale nothing from the sales of that day. Aery reported to the Internal Revenue Service that it sold three Gulfstream G-IV aircraft in 2023 for $13,040,000.

544. Aery retained possession and use of N307EW after Aery transferred title to Fast Bird. Fla. Stat. § 726.105(2)(b).

545. Fast Bird stated in its subpoena responses of March 11, 2025 that it had no records of transfers of funds with Aery. Fla. Stat. § 726.105(2)(c).

546. Aery did not receive a reasonably equivalent value for those transfers. Aery reported gross sales prices of $5,390,000 and $4,410,000 for the two aircraft that it sold on July 19, 2023. For N307EW alone, Aery agreed to pay Fast Bird $7,920,000 over 60 months to use an aircraft that Aery had owned and uses to perform its Navy contract, and Aery bears the operating costs. Aery sent Fast Bird 11 wires for which Aery has produced no invoice. Fla. Stat. § 726.105(2)(h).

547. Aery made four of the transfers of money after Talentscale obtained the Judgment. Fla. Stat. § 726.105(2)(d).

548. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

549. Aery promised Talentscale payment in full on May 25, 2022 and February 8, 2023 and has paid Talentscale nothing since January 20, 2023, while Aery continued to make transfers to Fast Bird.

550. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Five days after Talentscale moved for a writ of garnishment to Cogent Bank, Aery asked a customer to send its payments to an account that Cogent Bank holds in its own name, as alleged in paragraph 237. Fla. Stat. § 726.105(2)(g).

551. Beale, who owns 55% of Aery, testified that he would not ask Aery's Chief Financial Officer to prioritize payment of the Judgment, as alleged in paragraph 261. Aery made five more transfers to Beale, ACP, and ACP II after that testimony.

552. Talentscale brings this Count within four years after Aery made each of those transfers. Fla. Stat. § 726.110(1).

553. Fast Bird is the first transferee of each Fast Bird Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Fast Bird under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XV**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(b)**
**(Against Defendant Fast Bird, LLC, in the Alternative)**

554. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 22, 109-123, 151-163, 177-202, and 343-364.

555. Talentscale pleads this Count in the alternative to Count XIV and only as to the Fast Bird Transfers, which are the transfer of N307EW on July 19, 2023 and the 11 transfers of money totaling $1,239,805.12. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

556. Aery made each of those transfers without receiving a reasonably equivalent value in exchange. Aery reported gross sales prices of $5,390,000 and $4,410,000 for the two aircraft that it sold on July 19, 2023. For N307EW alone, Aery agreed to pay Fast Bird $7,920,000 over 60 months to use an aircraft that Aery had owned and uses to perform its Navy contract, and Aery bears the operating costs. Aery sent Fast Bird 11 wires for which Aery has produced no invoice.

557. When Aery made each of those transfers, Aery was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Fla. Stat. § 726.105(1)(b).

558. Fast Bird is the first transferee of each Fast Bird Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Fast Bird under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XVI**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Fast Bird, LLC, in the Alternative)**

559. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 22, 109-123, 151-163, 177-202, and 343-364.

560. Talentscale pleads this Count in the alternative to Count XIV and only as to the Fast Bird Transfers, which are the transfer of N307EW on July 19, 2023 and the 11 transfers of money totaling $1,239,805.12. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

561. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers. Aery made each of those transfers without receiving a reasonably equivalent value in exchange.

562. Aery was insolvent when it made each of those transfers or became insolvent as a result. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2). Fla. Stat. § 726.106(1).

563. Fast Bird is the first transferee of each Fast Bird Transfer. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Fast Bird under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XVII**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant Aerodrome Properties, LLC)**

564. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 23, 124-137, 151-206, 208-213, 215-221, 223-265, 365-394, and 417-422.

565. Aery made the Aerodrome Transfers to Aerodrome or for its benefit. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

566. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

567. Aerodrome is an insider of Aery. Fla. Stat. § 726.105(2)(a).

568. Aery retained possession and use of the Hangar that it paid to build while Aerodrome kept title to it. Fla. Stat. § 726.105(2)(b).

569. Aery received no reasonably equivalent value for those transfers. Aery paid to build a Hangar that Aerodrome owns, paid Aerodrome's loan commitment fee, supplied $1,399,414.51 that Aerodrome booked as a debt to Beale, and then paid rent calculated as Aerodrome's debt service. Fla. Stat. § 726.105(2)(h).

570. Aery made three of the Aerodrome Transfers after Talentscale obtained the Judgment. Fla. Stat. § 726.105(2)(d).

571. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in

Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

572. Aery promised Talentscale payment in full on May 25, 2022 and February 8, 2023 and has paid Talentscale nothing since January 20, 2023, while Aery continued to make transfers to Aerodrome.

573. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Five days after Talentscale moved for a writ of garnishment to Cogent Bank, Aery asked a customer to send its payments to an account that Cogent Bank holds in its own name, as alleged in paragraph 237. Fla. Stat. § 726.105(2)(g).

574. Beale, who owns 55% of Aery, testified that he would not ask Aery's Chief Financial Officer to prioritize payment of the Judgment, as alleged in paragraph 261. Aery made five more transfers to Beale, ACP, and ACP II after that testimony.

575. Talentscale brings this Count within four years after Aery made each transfer that Aery made on or after June 12, 2022, and within one year after Talentscale discovered or could reasonably have discovered each transfer that Aery made before that date. Fla. Stat. § 726.110(1).

576. Aerodrome is the first transferee of the four payments of rent and of the transfer of $5,000.00 that Aery made into Aerodrome's account ending in 1683. Aerodrome is the first transferee of the Aerodrome Equity Transfer

or, in the alternative, a subsequent transferee of it that did not take in good faith. Aerodrome is the person for whose benefit Aery made the seven payments to W.M. Jordan and Capital Bank. Fla. Stat. § 726.109(2). Talentscale seeks a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

577. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Aerodrome under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XVIII**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(b)**
**(Against Defendant Aerodrome Properties, LLC, in the Alternative)**

578. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 23, 124-137, 151-163, 177-202, and 365-394.

579. Talentscale pleads this Count in the alternative to Count XVII and only as to the six Aerodrome Transfers that Aery made on or after June 12, 2022, which are the Aerodrome Equity Transfer, the four payments of rent between August 30, 2024 and November 27, 2024, and the transfer of $5,000.00 on November 5, 2024, totaling $1,723,866.02. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

580. Aery made each of those transfers without receiving a reasonably equivalent value in exchange. Aery supplied $1,399,414.51 that Aerodrome

booked as a debt to Beale, and Aery paid rent calculated as Aerodrome's debt service on a Hangar that Aery paid to build.

581. When Aery made each of those transfers, Aery was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or Aery intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. Fla. Stat. § 726.105(1)(b).

582. Aerodrome is the first transferee of the four payments of rent and of the transfer of $5,000.00 that Aery made into Aerodrome's account ending in 1683. Aerodrome is the first transferee of the Aerodrome Equity Transfer or, in the alternative, a subsequent transferee of it that did not take in good faith. Fla. Stat. § 726.109(2). Talentscale seeks a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

583. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Aerodrome under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XIX**
**Constructive Fraudulent Transfer**
**Fla. Stat. § 726.106(1)**
**(Against Defendant Aerodrome Properties, LLC, in the Alternative)**

584. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 23, 124-137, 151-163, 177-202, and 365-394.

585. Talentscale pleads this Count in the alternative to Count XVII and only as to the six Aerodrome Transfers that Aery made on or after June 12, 2022, which are the Aerodrome Equity Transfer, the four payments of rent between August 30, 2024 and November 27, 2024, and the transfer of $5,000.00 on November 5, 2024, totaling $1,723,866.02. Aery made each of those transfers within four years before Talentscale filed this action on June 12, 2026. Fla. Stat. § 726.110(2).

586. Talentscale's claim against Aery arose in January 2021, before Aery made each of those transfers. Aery made each of those transfers without receiving a reasonably equivalent value in exchange.

587. Aery was insolvent when it made each of those transfers or became insolvent as a result. Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2). Fla. Stat. § 726.106(1).

588. Aerodrome is the first transferee of the four payments of rent and of the transfer of $5,000.00 that Aery made into Aerodrome's account ending

in 1683. Aerodrome is the first transferee of the Aerodrome Equity Transfer or, in the alternative, a subsequent transferee of it that did not take in good faith. Fla. Stat. § 726.109(2). Talentscale seeks a single recovery of the Aerodrome Equity Transfer from Beale and Aerodrome.

589. Talentscale is entitled to avoid those transfers to the extent necessary to satisfy its claim and to a money judgment against Aerodrome under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

**COUNT XX**
**Actual Fraudulent Transfer**
**Fla. Stat. § 726.105(1)(a)**
**(Against Defendant GH Equipment, LLC)**

590. Talentscale incorporates as if fully set forth herein paragraphs 1-18, 24, 138-179, 191-192, 202, 224-230, 395-404, and 417-422.

591. Aery made the GH Equipment Transfers for the benefit of GH Equipment, which took title to the aircraft that Aery purchased with them. Each is a transfer within the meaning of Fla. Stat. § 726.102(14).

592. Aery made each of those transfers with actual intent to hinder, delay, or defraud its creditors, including Talentscale. Fla. Stat. § 726.105(1)(a).

593. GH Equipment is an insider of Aery. Fla. Stat. § 726.105(2)(a).

594. Aery retained possession and use of the aircraft while GH Equipment held title to them. Fla. Stat. § 726.105(2)(b).

595. Aery's audit records show the aircraft as "purchased from incumbent in order to avoid Aery." Fla. Stat. § 726.105(2)(g).

596. Aery received no reasonably equivalent value for those transfers. Aery paid the purchase price of the aircraft, GH Equipment took title, and Aery has produced no note from GH Equipment. Fla. Stat. § 726.105(2)(h).

597. Aery made those transfers between August 23, 2021 and October 1, 2021, after Aery had failed to pay 20 of Talentscale's invoices when they came due, as alleged in paragraph 155. From 2021 forward, Aery was generally not paying its debts as they became due, and Talentscale invokes the presumption of insolvency in Fla. Stat. § 726.103(2) for each of those transfers that Aery made in that period. Fla. Stat. § 726.105(2)(i).

598. Aery opposed Talentscale's discovery of its finances and listed one bank account in its Fact Information Sheet, as alleged in paragraphs 224-230. Fla. Stat. § 726.105(2)(g).

599. Talentscale brings this Count within one year after Talentscale discovered or could reasonably have discovered the GH Equipment Transfers. Fla. Stat. § 726.110(1).

600. GH Equipment is the person for whose benefit Aery made each GH Equipment Transfer because Aery paid the purchase price of aircraft that GH Equipment acquired and holds in its own name. Fla. Stat. § 726.109(2)(a). Talentscale is entitled to avoid those transfers to the extent necessary to

satisfy its claim and to a money judgment against GH Equipment under Fla. Stat. §§ 726.108(1)(a) and 726.109(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Talentscale requests that the Court enter judgment in its favor and against Defendants and award the following relief.

(a) A money judgment against each Defendant under Fla. Stat. § 726.109(2) in the lesser of the value of the transfers that the Defendant received or benefited from or the amount necessary to satisfy Talentscale's claim, together with interest and costs.

(b) Avoidance of the transfers identified in Tables 3-9 and of the transfer of N307EW to the extent necessary to satisfy Talentscale's claim under Fla. Stat. § 726.108(1)(a).

(c) An equitable lien and a constructive trust on 127 Gulfport Court, Marco Island, Florida and on Beale's interest in 8334 Rimini Way, Naples, Florida to the extent that Beale acquired or improved them with money that Aery transferred to Beale or for his benefit.

(d) A constructive trust on the aircraft titled to GH Equipment, on N307EW, on the Vision Jet, on any aircraft or account of ACP, and on the Hangar to the extent that the transfers are traceable into them.

(e) A constructive trust on the money in the accounts of ACP, ACP II, Fast Bird, Aerodrome, and GH Equipment and in the Morgan Stanley account

ending in 1172 to the extent that the transfers are traceable into those accounts.

(f) Leave for Talentscale to levy execution on the assets transferred and their proceeds under Fla. Stat. § 726.108(2) and to foreclose any equitable lien or constructive trust that the Court imposes.

(g) An injunction under Fla. Stat. § 726.108(1)(c) that prohibits Defendants from selling, transferring, encumbering, or otherwise disposing of the assets transferred and their proceeds pending further order of the Court.

(h) An accounting by ACP, ACP II, Fast Bird, Aerodrome, and GH Equipment of all payments that each received from Aery on or after January 1, 2020 and of each later disbursement of that money.

(i) Appointment of a receiver under Fla. Stat. § 726.108(1)(c) over the assets transferred and their proceeds.

(j) Attorneys' fees to the extent that the law permits.

(k) Any other relief that the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By: _/s/ Kenneth E. Chase_
Kenneth E. Chase
Florida Bar No. 17661
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
Fax: (305) 402-2725
Email: kchase@chaselaw.com

*Counsel for Plaintiff*
*Talentscale, Inc.*

**CERTIFICATE OF SERVICE**

I, Kenneth E. Chase, hereby certify that I served the foregoing via the CM/ECF system on November 9, 2026, which automatically sends notice of an electronic filing to all counsel and registered users of record.

By: _/s/ Kenneth E. Chase_
Kenneth E. Chase